UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS SECURITIES LLC, and<br>UBS LOAN FINANCE LLC,<br><br>        Plaintiffs/Counter-Defendants<br><br>v.<br><br>THE FINISH LINE, INC.,<br><br>        Defendant/Counter-Plaintiff<br><br>and<br><br>GENESCO INC.,<br><br>        Defendant. | Civil Action No. 07 Civ. 10382 (LAP)<br><br>**ANSWER AND COUNTERCLAIMS OF DEFENDANT THE FINISH LINE, INC. TO PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY RELIEF** |

Defendant The Finish Line, Inc. ("Finish Line"), for its answer, affirmative defenses and counterclaims to the Amended Complaint for Declaratory Relief (the "Complaint") of Plaintiffs UBS Securities LLC and UBS Loan Finance LLC (collectively, "UBS") states as follows:

## ANSWER

1. Finish Line admits that, on June 17, 2007, Genesco and Finish Line entered into the Merger Agreement attached as Exhibit A to the Complaint. Finish Line further admits that, when the Merger Agreement was fully signed, the merger was commonly characterized as a $1.5 billion transaction. Finish Line denies all other allegations of Paragraph 1.

2. Admitted.

3. Admitted.

4. The allegation contained in Paragraph 4 does not require a response from Finish Line as it is a request for relief wrongly pleaded as a factual allegation. Nonetheless, Finish Line

admits that UBS seeks relief, but denies that UBS is entitled to the relief requested in Paragraph 4.

5. Denied. Further answering, Finish Line states that the Commitment Letter requires Finish Line to provide a solvency certificate for the combined Finish Line-Genesco entity (the "Combined Entity") at closing, as UBS shall reasonably request. No closing has been scheduled and UBS has made no such reasonable request, therefore no conditions of closing have failed. Moreover, the Merger Agreement includes provisions allowing for certain terms to be changed, if necessary, to allow for all conditions to be satisfied.

6. Finish Line admits that the court in the Tennessee litigation ("Tennessee Court") found that Genesco has experienced a material adverse effect and that the "overall earnings potential" of Genesco has been adversely affected "in a durationally-significant manner." Finish Line further admits that it expressed doubt during the Tennessee litigation that the Combined Entity would be solvent following the merger at the current purchase price. Finish Line denies all remaining allegations of Paragraph 6.

7. Finish Line admits that Genesco stock has traded below a $54.50 per Genesco share merger price. Finish Line denies all remaining allegations of Paragraph 7.

8. Finish Line is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 8.

9. Finish Line is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 9.

10. Admitted.

11. Admitted.

12. The allegations contained in Paragraph 12 state conclusions of law as to which no response is required from Finish Line.

13. The allegations contained in Paragraph 13 state conclusions of law as to which no response is required from Finish Line.

14. If this action presents a justiciable case or controversy, Finish Line does not contest the subject matter jurisdiction of this Court.

15. If this action presents a justiciable case or controversy, Finish Line does not contest the supplemental jurisdiction of this Court.

16. Finish Line does not contest venue in this Court.

17. Finish Line does not contest venue in this Court.

18. Finish Line admits that it has to meet certain requirements before UBS is obligated to proceed with the agreed upon financing and that those requirements are found in "the relevant agreements," which include the Commitment Letter and the Merger Agreement. Finish Line denies the allegations of Paragraph 18 to the extent they are inconsistent with the Commitment Letter and, instead, Finish Line refers to the Commitment Letter for its terms.

19. Finish Line admits that the Commitment Letter includes conditions to closing and refers to the Commitment Letter for its terms. Finish Line denies the allegations of Paragraph 19 to the extent they are inconsistent with the Commitment Letter.

20. Finish Line admits that the Commitment Letter includes conditions to closing and refers to the Commitment Letter for its terms. Finish Line denies the allegations of Paragraph 20 to the extent they are inconsistent with the Commitment Letter.

21. Finish Line admits that the Commitment Letter includes certain conditions to closing and that the Merger Agreement imposes a number of requirements on the parties,

including consummating the transaction in compliance with applicable law. Finish Line denies the allegations of Paragraph 21 to the extent they are inconsistent with the Commitment Letter and the Merger Agreement.

22. Admitted.

23. Finish Line admits that, in the Commitment Letter, UBS and Finish Line agreed to finance "up to" certain specified amounts subject to certain terms and conditions. Finish Line denies all remaining allegations of Paragraph 23.

24. Admitted.

25. Admitted.

26. Finish Line admits that Genesco's reported earnings for the two quarters ending October 30, 2007 are publicly available. Finish Line denies the allegations of Paragraph 26 to the extent they are inconsistent with those publicly stated earnings.

27. Finish Line is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 27.

28. Finish Line admits that it reported a 3rd Quarter loss from continuing operations of approximately $13.8 million, compared to a loss from continuing operations of approximately $1.8 million in the same period for the prior year. Finish Line denies all remaining allegations of Paragraph 28.

29. Finish Line admits that through December 1, 2007, it reported a loss from continuing operations of approximately $9.46 million, compared to earnings from continuing operations of approximately $14.46 million for the same period for the prior year. Finish Line denies all remaining allegations of Paragraph 29.

30. Finish Line admits that the Commitment Letter requires Finish Line to provide a "solvency certificate," as UBS shall reasonably request. Finish Line denies all remaining allegations of Paragraph 30.

31. Finish Line admits that, under the terms of the Merger Agreement and the Commitment Letter, the Combined Entity will be highly-leveraged and highly dependant on its ability to generate sufficient cash flow to pay its debt. Finish Line is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 31.

32. Finish Line admits that it believed that the Combined Entity would produce earnings more than sufficient to service the expected debt at the price of $54.50 per Genesco share. Finish Line further admits that the expectations that the Combined Entity would produce earnings more than sufficient to service the expected debt were based in large part on Genesco's May 24, 2007 merger projections. Finish Line further admits that it relied on Genesco's May 24, 2007 merger projections when it entered into the Merger Agreement at the current price. Finish Line denies all remaining allegations of Paragraph 32.

33. Finish Line is without knowledge or information sufficient to form a belief about the truth of the allegations regarding the foundations of Genesco's financial health. Finish Line denies all remaining allegations of Paragraph 33.

34. Denied. Answering further, the Merger Agreement provides for amendment of any illegal or unenforceable provisions to enable the Combined Entity to be solvent.

35. Denied. Answering further, the Merger Agreement provides for amendment of any illegal or unenforceable provisions to enable the Combined Entity to be solvent.

36. Denied. Answering further, Finish Line states that if such facts are true at the current price of $54.50 per Genesco share, the Merger Agreement provides for amendments to eliminate such illegal provision or part of a provision of the Merger Agreement.

37. Denied. Answering further, Finish Line states that if such facts are true at the current price of $54.50 per Genesco share, the Merger Agreement provides for amendments to eliminate such illegal provision or part of a provision of the Merger Agreement.

38. Denied. Answering further, Finish Line states that if such facts are true at the current price of $54.50 per Genesco share, the Merger Agreement provides for amendments to eliminate such illegal provision or part of a provision of the Merger Agreement.

39. Denied. Answering further, Finish Line states that if such facts are true at the current price of $54.50 per Genesco share, the Merger Agreement provides for amendments to eliminate such illegal provision or part of a provision of the Merger Agreement.

**Claims for Relief**

**Count I**

40. Finish Line hereby incorporates its answers to the allegations in Paragraphs 1-39 above.

41. Denied.

42. Denied.

43. Admitted.

**DEFENSES**

**First Defense**

44. Plaintiffs' claim does not present a justiciable controversy to this Court, as it is not yet ripe. The Commitment Letter requires that, at closing, UBS can request, and Finish Line must provide, a certificate of solvency signed by Finish Line's Chief Financial Officer. The

Commitment Letter contains no other "solvency" provision. Currently, UBS has not made any such request and Finish Line has not received Genesco's 2007 year-end financial information (Genesco is on a fiscal year that runs from February through January). Traditionally, retailers like Genesco and Finish Line make 50% of their profits in December. Accordingly, finalized year-end financial information is critical to the solvency determination. Once Finish Line receives such data, its Chief Financial Officer can determine whether or not it is appropriate to issue a solvency certificate. At that time, there could be a justiciable controversy concerning the issue of solvency under the Commitment Letter. No such controversy currently exists.

**Second Defense**

45. Even after Finish Line determines whether it can issue a solvency certificate, UBS's claim still may not present a justiciable controversy. If Finish Line cannot issue a solvency certificate for the Combined Entity at the price of $54.50 per Genesco share, the Merger Agreement, if closed, would result in one or more fraudulent transfers and, as a result, would be unenforceable and/or illegal. In that event, Section 9.6 of the Merger Agreement would require Genesco and Finish Line to renegotiate the merger consideration (*i.e.,* a price at which the Merger Agreement would be enforceable) that would result in a solvent Combined Entity and would not result in a fraudulent transfer or unlawful distribution. If Genesco and Finish Line agree to such a price per Genesco share, UBS's claim would be moot and it would be obligated to comply with its obligations under the Commitment Letter.

46. WHEREFORE, Defendant Finish Line respectfully requests that this Court dismiss Plaintiff UBS's Complaint for Declaratory Relief.

# FINISH LINE'S COUNTERCLAIMS AGAINST UBS

Counter-Plaintiff The Finish Line, Inc. hereby asserts the following counterclaims against Counter-Defendants UBS Securities LLC and UBS Loan Finance LLC.[1]

## Background

1. Through this lawsuit, UBS seeks to avoid its funding obligations under the Commitment Letter by demonstrating that the Combined Entity would be insolvent. UBS claims that, if the Combined Entity is insolvent, consummation of the deal outlined in the Merger Agreement would be illegal, as either a fraudulent transfer or an unlawful distribution to shareholders. UBS's request to terminate the Commitment Letter stems from an incorrect reading of the Merger Agreement and, as a result, even if the Combined Entity would be insolvent at $54.50 per Genesco share, the Court should not allow UBS to terminate its obligation under the Commitment Letter.

2. Based in part on the due diligence of Finish Line and its advisors, UBS Securities LLC and Duff & Phelps, Finish Line agreed to acquire Genesco for $54.50 per Genesco share in the Merger Agreement dated June 17, 2007. Sometime after the parties entered into the Merger Agreement, Genesco released May actual results and June projections (the "Financial Information"). The Financial Information showed a significant and material drop in Genesco's current and projected earnings. Finish Line did not receive these numbers before the Merger Agreement was executed, even though Genesco had finalized them. *See Genesco Inc. v. The Finish Line, Inc., et al.*, No. 07-2137-II(III) at 18-19, (20th Div. Tenn. Chancery Ct., Dec. 27, 2007).

---

[1] Capitalized terms used in these Counterclaims have the same meanings as those used in UBS's Amended Complaint and Finish Line's Answer.

3. Because Finish Line and UBS were unaware of the material decline in Genesco's current and projected earnings conveyed in the Financial Information, the agreed on transaction price of $54.50 per Genesco share did not accurately reflect Genesco's fair market value as of June 17, 2007. Indeed, immediately after Genesco announced its financial difficulties in late August 2007, Genesco's stock (ticker symbol GCO) began trading at a significant discount from the $54.50 merger price.

4. If the Court finds that the Combined Entity would be insolvent at $54.50 per Genesco share, the Merger Agreement would amount to a fraudulent transfer and an unlawful distribution. As a result, these provisions would be invalid and unenforceable.

5. Section 9.6 of the Merger Agreement ("Severability Provision") requires that, if any provision of the agreement is found by a court to be "unenforceable," Finish Line and Genesco must:

> negotiate in good faith to replace such invalid or unenforceable provision of this Agreement, or invalid or unenforceable portion thereof, with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such invalid or unenforceable provision or portion thereof.

6. Under this provision, Finish Line has the right to seek a determination that the Merger Agreement is unenforceable as a fraudulent transfer and/or unlawful distribution and to negotiate in good faith with Genesco in an effort to reach a price per Genesco share under which the Combined Entity would be solvent and the Merger Agreement would be enforceable.

7. In the Commitment Letter, UBS agreed to provide Finish Line with the Revolving Credit Facility of "up to $450.0 million," the Term Loan Facility of "up to $690.0 million," and the Bridge Facility of "up to 700.0 million." UBS is not entitled to terminate its obligations under the Commitment Letter unless Finish Line has "the right to terminate [its] obligations under the [Merger] Agreement" or "the conditions set forth [in the Commitment Letter] and in

the Term Sheets and the Conditions Annex are [not] satisfied." In short, if Finish Line and Genesco negotiate a lower price at which the Combined Entity would be solvent, as the Merger Agreement requires, Finish Line will be able to issue a solvency certificate and meet the other conditions of the Commitment Letter, and UBS will not have the right to terminate the Commitment Letter.

8. Accordingly, if the Court finds that the Combined Entity would be insolvent at the current price of $54.50 per Genesco share, Finish Line asks that the Court also find that (1) the Merger Agreement, if closed, would result in a fraudulent conveyance or an unlawful distribution to shareholders and, thus, would be unenforceable; (2) UBS remains obligated under the terms of the Commitment Letter pending negotiations between Genesco and Finish Line, pursuant to Section 9.6 of the Merger Agreement, to arrive at a price at which the Combined Entity would be solvent; and (3) to the extent Finish Line and Genesco agree to such a lower price, UBS is bound by the Commitment Letter.

## **Count I**

(Declare that, if the Combined Entity would be insolvent at $54.50 per Genesco share, closing the transaction would result in unenforceable and voidable fraudulent transfers by Genesco, pursuant to N.Y. Debtor and Creditor Law § 273, Tenn. Code Ann. §§ 66-3-305 & 306, and Ind. Code §§ 32-18-2-14 & 15)

9. Finish Line incorporates the factual allegations from Paragraphs 1-8 as if they were fully set forth in Count I.

10. Should the Court find that Genesco and Finish Line each would be insolvent at $54.50 per Genesco share, it would be the direct result of the Merger Agreement's requirement that Genesco incur obligations under the Commitment Letter at closing.

11. Section 6.8(a) of the Merger Agreement, in pertinent part, provides that:

> (a) Parent shall use reasonable best efforts to take, or cause to be taken, all actions and do, or cause to be done, all things necessary, proper or

advisable to arrange the Financing on the terms and conditions described in the Commitment Letter, including using reasonable best efforts to: (i) maintain in effect the Commitment Letter, (ii) satisfy, on a timely basis, all conditions applicable to Parent and Merger Sub to obtaining the Financing set forth therein (including the payment of any commitment, engagement or placement fees required as a condition to the Financing), (iii) enter into definitive agreements with respect thereto on the terms and conditions contemplated by the Commitment Letter (including the flex provisions related to the Financing) or on other terms reasonably acceptable to Parent (to the extent the other terms would not adversely affect the ability of Parent or Merger Sub to timely consummate the transactions contemplated hereby), and (iv) consummate the Financing at or prior to Closing.

12. Pursuant to the Commitment Letter, at closing Genesco becomes jointly and severally liable for the monies borrowed under the Commitment Letter to pay Genesco's public shareholders. For example, the Revolving Credit Facility and Term Loan Facility are both fully and unconditionally guaranteed on a joint and several basis by all of the existing and future direct and indirect subsidiaries of Finish Line (*i.e.*, Genesco), and are secured by perfected first and second priority security interests in Genesco's assets.

13. Pursuant to the Commitment Letter and Merger Agreement, virtually all the benefits of the transaction go to Genesco's shareholders. Genesco itself does not receive fair consideration or reasonably equivalent value for assuming liability for the monies UBS lends under the Commitment Letter.

14. Thus, if the Court finds insolvency, it will have been because, upon closing of the transaction at $54.50 per Genesco share, Genesco would be rendered insolvent, left with unreasonably small capital to carry on it business, and/or reasonably should have believed that it would have incurred debts beyond its ability to pay them.

15. Thus, if the Court finds insolvency, it will have been because, upon closing of the transaction at $54.50 per Genesco share, Finish Line and Genesco, together, would be rendered

insolvent, left with unreasonably small capital to carry on their businesses, and/or would have incurred debts beyond their ability to pay them.

16. At the time of closing the transaction set forth in the Merger Agreement and the financing set forth in the Commitment Letter, Genesco and Finish Line each will have unsecured creditors, including taxing authorities, vendors, and employees.

17. The closing of the transaction set forth in the Merger Agreement at $54.50 per Genesco share with financing on the terms in the Commitment Letter, which Section 6.8(a) of the Merger Agreement requires Finish Line to implement, would result in Genesco's fraudulent incurrence of debt voidable under N.Y. Debtor and Creditor Law § 273 (McKinney 2008), Tenn. Code Ann. §§ 66-3-305 & 306 (2007), and Ind. Code §§ 32-18-2-14 & 15 (2007).

18. WHEREFORE, Counter-Plaintiff Finish Line respectfully requests that if it is held that the Combined Entity would be insolvent at $54.50 per Genesco share, that this Court enter a declaratory judgment that unenforceable and voidable fraudulent transfers by Genesco would result pursuant to N.Y. Debtor and Creditor Law § 273, Tenn. Code Ann. §§ 66-3-305 & 306 and Ind. Code §§ 32-18-2-14 & 15.

## Count II

(Declare that, if the Combined Entity would be insolvent at $54.50 per Genesco share, an unenforceable and voidable fraudulent incurrence of debt by Finish Line would result pursuant to Tenn. Code Ann. §§ 66-3-305 & 306 and Ind. Code §§ 32-18-2-14 & 15)

19. Finish Line incorporates the factual allegations from Paragraphs 1-18 as if they were fully set forth in Count II.

20. When Finish Line signed the Merger Agreement on June 17, 2007, it obligated itself to pay $54.50 per Genesco share.

21. Based on facts in existence, but not known by Finish Line prior to June 17, 2007, the Genesco shares were not worth $54.50.

22. In exchange for Finish Line's obligation to pay $54.50 per Genesco share, Finish Line did not receive fair consideration or reasonably equivalent value.

23. To the extent Finish Line has obligated itself under the Merger Agreement to pay $54.50 per Genesco share, Finish Line would be rendered insolvent, left with unreasonably small capital to carry on its businesses, and/or would have incurred debts beyond its ability to pay them.

24. When Finish Line entered into the Merger Agreement it had unsecured creditors who remain unsecured creditors of Finish Line today, such as taxing authorities, vendors, and employees.

25. Finish Line's signing of the Merger Agreement at $54.50 per Genesco share resulted in Finish Line's fraudulent incurrence of debt, voidable under Tenn. Code Ann. §§ 66-3-305 & 306 and Ind. Code §§ 32-18-2-14 & 15.

26. WHEREFORE, Counter-Plaintiff Finish Line respectfully requests that if it is held that the Combined Entity would be insolvent at $54.50 per Genesco share, that this Court enter a declaratory judgment that an unenforceable and voidable fraudulent incurrence of debt by Finish Line would result pursuant to Tenn. Code Ann. §§ 66-3-305 & 306 and Ind. Code §§ 32-18-2-14 & 15.

## Count III

(Declare that, if the Combined Entity would be insolvent at $54.50 per Genesco share, an unenforceable and unlawful distribution by Genesco would result pursuant to Tenn. Code Ann. § 48-16-401(c))

27. Finish Line incorporates the factual allegations from Paragraphs 1-26 as if they were fully set forth in Count III.

28. Under the Merger Agreement, Genesco's shareholders will receive a cash distribution as a result of the consummation of the transaction.

29. If the Court finds that the Combined Entity would be insolvent based on the obligations undertaken in the Merger Agreement and the Commitment Letter, which the Merger Agreement requires Finish Line to implement, it will be (a) because the Combined Entity will not be able to pay its debts as they become due in the usual course of business, or (b) because the Combined Entity's total assets will be less than the sum of its total liabilities plus the amount that would be needed, if the Combined Entity dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Genesco's shareholders whose preferential rights are superior to those shareholders receiving the distribution.

30. As a result, the distribution to Genesco's shareholders would be an unlawful distribution and may not be made pursuant to Tenn. Code Ann. § 48-16-401(c) (2007).

31. Because the Merger Agreement would result in an unlawful distribution under these circumstances, it is illegal and unenforceable by a court.

32. WHEREFORE, Counter-Plaintiff Finish Line respectfully requests that if it is held that the Combined Entity would be insolvent at $54.50 per Genesco share, that this Court enter a declaratory judgment that an unenforceable and unlawful distribution by Genesco would result pursuant to Tenn. Code Ann. § 48-16-401(c).

## Count IV

(Declare that UBS's obligations under the Commitment Letter do not
terminate if the Combined Entity is insolvent at $54.50 per Genesco share)

33. Finish Line incorporates the factual allegations from Paragraphs 1-32 as if they were fully set forth in Count IV.

34. UBS's obligation under the Commitment Letter is not conditioned on Finish Line paying $54.50 per Genesco share, but may remain in effect if the parties agree to a lower price per Genesco share. Under the terms of the Commitment Letter, UBS agreed to provide Finish Line with the Revolving Credit Facility of "up to $450.0 million," the Term Loan Facility of "up to $690.0 million," and the Bridge Facility of "up to $700.0 million."

35. Moreover, UBS cannot terminate the Commitment Letter unless Finish Line has "the right to terminate [its] obligations under the [Merger] Agreement" or "the conditions set forth [in the Commitment Letter] and in the Term Sheets and the Conditions Annex are [not] satisfied." If the conditions in the Commitment Letter, Term Sheets or the Conditions Annex are satisfied, UBS cannot impair the availability of the Facilities on the Closing Date.

36. Under the Severability Provision, "[i]f any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable."

37. The Severability Provision also requires that, if any provision of the agreement is found by a court to be "unenforceable," Finish Line and Genesco must "negotiate in good faith to replace such invalid or unenforceable provision of this Agreement, or invalid or unenforceable portion thereof, with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such invalid or unenforceable provision or portion thereof."

38. If the Merger Agreement is unenforceable according to its current terms, the Severability Provision requires Finish Line and Genesco to engage in good faith negotiations in

an effort to agree upon a purchase price at which the Combined Entity would *not* be insolvent and at which Finish Line would receive reasonably equivalent value or fair consideration.

39. Under these circumstances, the Merger Agreement prevents the parties from terminating without first trying to remedy any impediment to closing. Absent such attempted remedy, UBS has no grounds to terminate the Commitment Letter. If the transaction would result in illegal or unenforceable transfers, Finish Line would have only a limited right to terminate its obligations under the Merger Agreement. Accordingly, neither Finish Line nor UBS could currently have the right to terminate because the parties have not used "reasonable efforts" (as Section 9.6 also requires) to prevent the Merger Agreement from being a fraudulent transfer or an unlawful distribution.

40. WHEREFORE, Counter-Plaintiff Finish Line respectfully requests that this Court enter a declaratory judgment that UBS's obligations under the Commitment Letter do not terminate if the Combined Entity is insolvent at the $54.50 per Genesco share.

## Count V

(Declare that, if the Combined Entity would be insolvent at a price of $54.50 per Genesco share, UBS may not terminate is obligations under the Commitment Letter while Genesco and Finish Line negotiate a purchase price at which the Merger Agreement would be enforceable)

41. Finish Line incorporates the factual allegations from Paragraphs 1-40 as if they were fully set forth in Count V.

42. If the Court finds that the Combined Entity would be insolvent based on the obligations undertaken in the Merger Agreement and the Commitment Letter, which the Merger Agreement requires Finish Line to implement, the Merger Agreement would constitute a fraudulent transfer (voidable by actual unsecured creditors of Finish Line and Genesco) and is unenforceable.

43. If the Court finds that the Combined Entity would be insolvent based on the obligations undertaken in the Merger Agreement and the Commitment Letter, the Merger Agreement would result in an unlawful distribution, which is illegal and unenforceable.

44. If any provision or part of a provision of the Merger Agreement is unenforceable, the Severability Provision requires Genesco and Finish Line to engage in good faith negotiations in an effort to agree upon terms under which such provision or part thereof would be enforceable.

45. Genesco and Finish Line do not have the right to terminate the Merger Agreement until they have used all reasonable efforts to agree upon a purchase price at which the Merger Agreement would be enforceable. If they can agree, their transaction will meet the terms and conditions of the Commitment Letter—and UBS will have no right to terminate.

46. WHEREFORE, Counter-Plaintiff Finish Line respectfully requests that, if it is held that the Combined Entity would be insolvent at a purchase price of $54.50 per Genesco share, this Court enter a declaratory judgment that UBS may not terminate its obligations under the Commitment Letter while Genesco and Finish Line negotiate a purchase price at which the Merger Agreement would be enforceable.

### Count VI

(Declare the price per Genesco share at which the Combined Entity would be solvent, Finish Line would obtain reasonably equivalent value and the Merger Agreement would be enforceable)

47. Finish Line incorporates the factual allegations from Paragraphs 1-46 as if they were fully set forth in Count VI.

48. Under the Severability Clause, Finish Line and Genesco are required to negotiate in good faith to agree to terms that will make the Merger Agreement enforceable.

49. UBS is required to provide financing under the terms and conditions in the Commitment Letter if Finish Line and Genesco are able to agree to terms that will make the Merger Agreement enforceable.

50. At some lower price per Genesco share, Finish Line would be able to purchase Genesco's stock under the terms of the Merger Agreement, such that the Combined Entity would be solvent, Finish Line would obtain reasonably equivalent value and the Merger Agreement would be enforceable. Such a transaction would not result in a fraudulent transfer or an unlawful distribution.

51. WHEREFORE, Counter-Plaintiff Finish Line respectfully requests that this Court enter a declaratory judgment identifying the price per Genesco share at which the Combined Entity would be solvent, Finish Line would obtain reasonably equivalent value, and the Merger Agreement would be enforceable.

Dated: New York, New York
      January 25, 2008

Respectfully submitted,

THE FINISH LINE, INC.

By:     s/ Harvey Kurzweil

DEWEY & LEBOEUF LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

Dewey & LeBoeuf LLP
Alan N. Salpeter (*pro hac* admission pending)
Vincent P. Schmeltz III (admitted *pro hac*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL  60601-6710
Tel:  312-794-8000
Fax:  312-794-8100
  *Attorneys for The Finish Line, Inc.*