**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UBS SECURITIES LLC, and
UBS LOAN FINANCE LLC,

Plaintiffs/Counter-Defendants,

v.

THE FINISH LINE, INC.,

Defendants/Counter-Plaintiff,

and

GENESCO INC.,

Defendant.

No. 07 Civ. 10382 (LAP)

**DEFENDANTS UBS SECURITIES LLC AND UBS LOAN FINANCE LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF JUDGMENT ON COUNTS I-III AND THEIR MOTION TO DISMISS COUNTS IV-VI OF DEFENDANT THE FINISH LINE, INC.'S COUNTERCLAIMS**

**TABLE OF CONTENTS**

INTRODUCTION ..................... 1

I. COUNTS IV-VI FAIL AS A MATTER OF LAW ..................... 3

A. A Purchase Price Reduction Would Violate Conditions to Closing Under the Commitment Letter. ..................... 3

1. UBS would not be satisfied with a Merger Agreement containing different price terms and thus not obligated to fund such a merger ..................... 3

2. If the price term in the Merger Agreement could be amended, UBS would reasonably refuse to consent to any such amendment and thus be relieved of any obligation to fund the merger ..................... 5

B. Finish Line May Not Sever the Purchase Price from the Merger Agreement Because Price is an Essential Term ..................... 6

II. COUNT VI SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT IT SEEKS A NON-JUSTICIABLE ADVISORY OPINION ..................... 8

CONCLUSION ..................... 10

## TABLE OF AUTHORITIES

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) ........ 8, 9

*Carlino v. Kaplan*,
139 F. Supp. 2d 563 (S.D.N.Y. 2001) ........ 9

*Dr. Reddy's Labs., Ltd. v. AaiPharma, Inc.*,
No. 01 Civ. 10102 (LAP), 2002 WL 31059289 (S.D.N.Y. Sept. 13, 2002) ........ 8

*Duane Reade Inc., v. St. Paul Fire and Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005) ........ 8

*Erie Telecommunications, Inc. v. City of Erie*,
853 F.2d 1084 (3d Cir. 1988) ........ 8

*Huber v. Calloway*,
No. M2005-00897-COA-R3-CV, 2007 WL 2089753 (Tenn. Ct. App. July 12, 2007) ........ 7

*Levin v. The Gap, Inc.*,
No. 97 Civ. 4452 (DC), 1998 WL 915897 (S.D.N.Y. Dec. 30, 1998) ........ 7

*Marchi v. Bd. of Coop. Educ. Servs.*,
173 F.3d 469 (2d Cir. 1999) ........ 8

*Mason v. Am. Tobacco Co.*,
346 F.3d 36 (2d Cir. 2003) ........ 3

*Mini Theatres v. New Line Distrib., Inc.*,
No. 98 Civ. 2997 (SHS), 1998 WL 637465 (S.D.N.Y. Sept. 17, 1998) ........ 9

*N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*,
No. 04 Civ. 9949 (KMK), 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ........ 9

*Nat'l Kinney Corp. v. Webbe*,
No. 80 Civ. 1607 (LBS), 1981 U.S. Dist. LEXIS 10277 (S.D.N.Y. Jan. 9, 1981) ........ 4

*Olin Corp. v. Consol. Aluminum Corp.*,
5 F.3d 10 (2d Cir. 1993) ........ 9

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
86 N.Y.2d 685 (1995) ........ 4

*Panasonic Co. v. Zinn*,
903 F.2d 1039 (5th Cir. 1990) .....7

*Pine v. Coppola N.Y.C., Inc.*,
749 N.Y.S.2d 414 (1st Dep't 2002) .....4

*Sw. Bell Tel. Co. v. Missouri Pub. Serv. Comm'n*, 236 F.3d 922 (8th Cir. 2001) .....7

*Stevens v. Mad River Holdings*,
No. 01 Civ. 9274, 2003 U.S. Dist. LEXIS 422 (S.D.N.Y. Jan. 13, 2003) .....6

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(1) .....8

Fed. R. Civ. P. 12(b)(6) .....3

**MISCELLANEOUS**

Restatement (Second) of Contracts § 184 .....7

## INTRODUCTION

On June 17, 2007, the Finish Line, Inc. ("Finish Line") and Genesco Inc. ("Genesco") entered into a Merger Agreement providing that Finish Line would acquire all of the outstanding shares of Genesco for $54.50 per Genesco share in cash. Finish Line, much smaller than Genesco, proposed to complete the merger with $11 million of its own cash together with the proceeds of over $1.5 billion in highly leveraged debt financing from UBS Securities LLC and UBS Loan Finance LLC (collectively, "UBS"). UBS is not a party to, or bound by, the Merger Agreement. The terms of the financing are set forth in the Commitment Letter between UBS and Finish Line, in which UBS agreed to provide the funds—subject to various terms and conditions.

Since these agreements were signed, both Finish Line and Genesco have suffered a prolonged period of financial downturn that has left both companies in a weakened condition and diminished their future prospects. Indeed, the combined post-merger entity, in the words of Finish Line's counsel, would face a "dire, risky, thin financial situation." (Declaration of Alexandra A.E. Shapiro, dated Feb. 6, 2008 ("Shapiro Decl.") Ex. 1: *Genesco, Inc. v. The Finish Line, et al.*, No. 07-2137-II(III) (20th Div. Tenn. Chancery Ct. 2007) (the "Tennessee Action"), Trial Transcript ("Trial Tr.") at 2141.) In the related Tennessee action, Finish Line effectively conceded that the combined entity would be insolvent. (*See, e.g.,* Trial Tr. at 76-77 (counsel for Finish Line acknowledged that the magnitude of the merger's financing "would cause both companies to fail," because the combined entity simply "could not float a billion six in financing"); Trial Tr. at 1504 (Finish Line is "very seriously concerned" about the solvency of the combined entity).)

UBS filed this action seeking a declaration that it is relieved of its obligations under the Commitment Letter, which is void or voidable because the combined entity would be insolvent, resulting in the failure of various closing conditions and other requirements set forth in

the Commitment Letter. Finish Line has asserted six Counterclaims against UBS. Tellingly, each assumes that the combined entity will be insolvent.

In Counts I-III, Finish Line agrees with UBS that if the combined entity will be insolvent at a purchase price of $54.50 per share, consummation of the merger would result in voidable fraudulent transfers and in distributions to shareholders that are prohibited by corporate governance statutes. This relieves UBS of its obligations under the Commitment Letter, which expressly requires as a condition to closing that "[t]he transactions . . . shall be in compliance, in all material respects, with all applicable Canadian and U.S. federal and state laws and regulations." (Shapiro Decl. Ex. 2: Commitment Letter, Annex IV, ¶ 3.) Accordingly, UBS does not move to dismiss these counts and, instead, will consent to judgment.

Finish Line's other three counterclaims, however, are an attempt to avoid the consequences of the combined entity's insolvency based upon terms in the Finish Line-Genesco Merger Agreement, a contract to which UBS is not a party. In Count IV of the Counterclaims, Finish Line alleges that the severability clause in the Merger Agreement prevents UBS from terminating the Commitment Letter if the combined entity is insolvent at the contract price. Count V asserts that despite a finding of insolvency, UBS is obligated to fund the transaction at any new price agreed to by Finish Line and Genesco. Count VI requests that the Court supply the parties with a hypothetical contract price at which the merger would be valid that Finish Line and Genesco may (or may not) use in their negotiations to amend the Merger Agreement.

Each of these three Counterclaims must be dismissed as a matter of law. *First*, Finish Line fails to state a claim, because the Commitment Letter does not bind UBS to finance a merger consummated at any price other than the one set forth in the Merger Agreement. *Second*, the price term is essential to the Merger Agreement, and thus, not severable as a matter of law.

*Finally*, Count VI also fails for the additional reason that it calls for a non-justiciable advisory opinion.

## I. COUNTS IV-VI FAIL AS A MATTER OF LAW

Dismissal of Counts IV through VI is necessary under Fed. R. Civ. P. 12(b)(6) because, even assuming the truth of the allegations in the Counterclaims, these counts do not state a legally cognizable basis for relief. *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39, 43 (2d Cir. 2003).

### A. A Purchase Price Reduction Would Violate Conditions to Closing Under the Commitment Letter.

#### 1. UBS would not be satisfied with a Merger Agreement containing different price terms and thus not obligated to fund such a merger

UBS did not agree to provide Finish Line the corporate equivalent of a $1.5 billion limit credit card with which it could purchase whatever it wanted on whatever terms it wanted. Rather, the Commitment Letter reflects UBS's agreement to provide funding for Finish Line's acquisition of Genesco on the approved terms set forth in the Merger Agreement. Counts IV-VI, however, are premised upon the theory that UBS is committed to funding the merger even if Finish Line and Genesco agree to alter key terms of the agreement. These claims fail as a matter of law because any change in the terms and conditions contained in the Merger Agreement, including a reduction of the merger's purchase price, would violate the Commitment Letter's "Conditions to Closing."[1] In particular, the Conditions to Closing specify that:

> UBS shall have reviewed, ***and be satisfied with***, the final structure of the Acquisition and ***the terms and conditions*** of the [Merger] Agreement (it being understood that UBS is satisfied with the execution version of the

---

[1] The Commitment Letter "shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of law to the extent that the application of the laws of another jurisdiction will be required hereby." (Commitment Letter at 9.)

> [Merger] Agreement received by UBS at 9:19 p.m. Los Angeles time on June 16, 2007 and the structure of the Acquisition reflected therein and the disclosure schedules to the Acquisition Agreement received by UBS at 7:47 a.m. Los Angeles time on June 17, 2007).

(Commitment Letter, Annex IV ¶ 1 (emphasis supplied).) If this condition to closing is not satisfied, UBS is under no obligation to finance the merger. *See, e.g.*, *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (conditions precedent "must occur before a duty to perform a promise in the agreement arises"). UBS must be fully satisfied with the terms and conditions of the Merger Agreement for the condition to be met. *Id.* (holding that express conditions must be "literally performed," meaning that even substantial compliance is insufficient to satisfy an express condition); *Pine v. Coppola N.Y.C., Inc.*, 749 N.Y.S.2d 414 (1st Dep't 2002) (holding that "the equitable doctrine of substantial compliance may not be employed effectively to nullify express conditions of contract performance").

The Commitment Letter specifically identifies the merger terms that are satisfactory to UBS. Those terms are contained in the "execution version" of the Merger Agreement, which provides for a purchase price of $54.50 per share. Because UBS believes it has been defrauded by Genesco and because Genesco is not the company it was believed to be when the Commitment Letter was entered, UBS will not be satisfied with a different Merger Agreement specifying a lower price term. As a consequence, Finish Line cannot satisfy the condition to closing even if Finish Line and Genesco (and Genesco's shareholders) agree to a new merger price. *See Nat'l Kinney Corp. v. Webbe*, No. 80 Civ. 1607 (LBS), 1981 U.S. Dist. LEXIS 10277, at *11-12 (S.D.N.Y. Jan. 9, 1981) (where performance is conditioned on plaintiff's "satisfaction" with terms of financing and the contract specifies acceptable terms, the condition to closing is failed if less favorable terms are provided).

**2.** If the price term in the Merger Agreement could be amended, UBS would reasonably refuse to consent to any such amendment and thus be relieved <u>of any obligation to fund the merger</u>

As a separate condition to closing, the Commitment Letter requires that the merger be consummated "in accordance with the [Merger] Agreement without giving effect to any waivers or amendments thereof that [are] material and adverse to the interests of the Lenders, unless consented to by UBS in its reasonable discretion." (Commitment Letter, Annex IV ¶ 1.) The purchase price of the merger is set forth in Section 2.1(a) of the Merger Agreement, which provides that when the merger occurs, Finish Line will purchase all outstanding Genesco shares for $54.50 in cash. (Shapiro Decl. Ex. 3: Merger Agreement § 2.1(a), at 3.) As explained *infra* at pages 6-8, the purchase price is not severable from the Merger Agreement; accordingly, any modification to the price would require an entirely new agreement, and could not be accomplished by an amendment. However, at the very least, any renegotiation of the purchase price by Finish Line and Genesco would require an amendment to Section 2.1(a). Any such amendment would necessarily be material and adverse to UBS, and it would thus exercise its reasonable discretion not to consent.

An amendment of the purchase price would be material and adverse to UBS's interests. The only situation in which it would be necessary to reduce the agreed purchase price is if the combined entity would be insolvent at that price. If the combined entity were insolvent, UBS would face no financing losses at all—because the Commitment Letter would be terminated. In contrast, if the proposed amendment cured the insolvency, and the Court held that UBS was required to finance that new deal, UBS would be exposed to risk of substantial losses.

When UBS and other investment banks provide financing as part of a leveraged buy-out, they resell the debt to a consortium of third-party lenders in a process called "syndication." Syndication of the debt allows UBS to provide a multi-billion dollar loan while

limiting its own credit exposure to the combined entity, because once syndication is complete, the exposure is spread across all loan participants. For this reason, UBS bargained for a term in the Commitment Letter providing that "UBS reserves the right . . . to syndicate all or a portion of its commitment." (Commitment Letter at 3.)

The credit crunch and the financial decline of both Finish Line and Genesco have severely impaired the marketability of the Finish Line-Genesco debt to prospective syndication participants, even if the merger price is lowered. To the extent there is any demand at all for the Finish Line-Genesco debt, UBS would be forced to syndicate the debt at a value well below par. (*See*, *e.g.*, Shapiro Decl. Ex. 4: Memorandum and Order in the Tennessee Action, dated Dec. 27, 2007 (the "Tennessee Order") at 11 (finding that "the Finish Line/Genesco deal is now a huge losing proposition for UBS").

UBS would suffer no losses if the combined entity were insolvent at $54.50, whereas a renegotiated agreement between Finish Line and Genesco would give rise to financing and other losses. A re-cut deal would therefore be materially adverse to UBS. No rational entity in UBS's position would be satisfied with such a deal, nor would it reasonably consent to an amendment to the Merger Agreement in which such a deal were reflected. Finish Line would therefore fail to satisfy conditions to closing under the Commitment Letter if the purchase price of the merger were amended. *See*, *e.g.*, *Stevens v. Mad River Holdings*, 01 Civ. 9274, 2003 U.S. Dist. LEXIS 422, at *23-24 (S.D.N.Y. Jan. 13, 2003) (financing not extended under a loan commitment because the borrower failed to satisfy a condition).

**B. Finish Line May Not Sever the Purchase Price from the Merger Agreement Because Price is an Essential Term.**

The Merger Agreement's severability clause provides: "If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other

provisions of this Agreement shall remain in full force and effect."[2] (Merger Agreement § 9.6, at 58.) The premise of Counts IV-VI is Finish Line's contention that, pursuant to this clause, the purchase price of the merger may be severed from the remainder of the Merger Agreement. This premise is false as a matter of law.

Finish Line's allegation contradicts the well-established principle that the essential provisions of a contract may not be severed. *See, e.g.*, *Levin v. The Gap, Inc.*, No. 97 Civ. 4452 (DC), 1998 WL 915897, at *6 (S.D.N.Y. Dec. 30, 1998) (refusing to sever an essential term of a contract); Restatement (Second) of Contracts § 184 cmt. A ("If the performance as to which the agreement is unenforceable is an essential part of the agreed exchange . . . the entire agreement [is] unenforceable."). In determining whether a provision is essential to a contract, courts examine whether "the parties would have entered into the agreement absent the illegal parts." *Panasonic Co. v. Zinn*, 903 F.2d 1039, 1041 (5th Cir. 1990).

The price term is clearly essential to the Merger Agreement. *See, e.g.*, *Huber v. Calloway*, No. M2005-00897-COA-R3-CV, 2007 WL 2089753, at *4 (Tenn. Ct. App. July 12, 2007) (price is a material term). Under no circumstance would either Finish Line or Genesco have proceeded with the merger—a multi-billion dollar transaction that was heavily negotiated on all sides by sophisticated businesspersons and counsel—without absolute certainty regarding the purchase price. Indeed, the purchase price was a point of contention between the parties during merger discussions. (*See* Tennessee Order at 8.)

Because price is essential to the Merger Agreement, the purchase price provision cannot be severed from the remainder of the Agreement. *See, e.g.*, *Sw. Bell Tel. Co. v. Missouri Pub. Serv. Comm'n*, 236 F.3d 922, 924 (8th Cir. 2001) (holding that price is not a severable

---

2 Tennessee law applies in the interpretation of the Merger Agreement pursuant to the Agreement's choice of law provisions. (Merger Agreement § 9.7, at 59.)

term), *vacated on other grounds sub nom. AT&T Communs. of the Sw., Inc. v. Sw. Bell Tel. Co.*, 535 U.S. 1075 (2002); *Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1091 (3d Cir. 1988) (holding that "the price that ETI contracted to pay for the franchise is clearly an essential, indeed *the* essential, term of its contract" and that severability provisions do not permit parties to "delete or modify the price and payment terms which are so fundamental to the parties' agreement"). Counts IV-VI of the Counterclaims must therefore be dismissed.

## II. COUNT VI SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT IT SEEKS A NON-JUSTICIABLE ADVISORY OPINION

Count VI requests that the Court declare a new purchase price at which the combined entity would be solvent. Even if the Court were to conclude that UBS's obligations under the Commitment Letter would survive if the combined entity would be insolvent if the merger were consummated at the agreed-upon price, Count VI must be dismissed under Fed. R. Civ. P. 12(b)(1) because it impermissibly seeks an advisory opinion from the Court regarding a hypothetical price at which the merger might (or might not) occur.

It is well-settled that courts lack subject matter jurisdiction when no actual case or controversy exists between the parties. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-40 (1937); *Dr. Reddy's Labs., Ltd. v. AaiPharma, Inc.*, No. 01 Civ. 10102 (LAP), 2002 WL 31059289, at *5 (S.D.N.Y. Sept. 13, 2002). An actual controversy is one that is definite and concrete, not abstract or hypothetical. *See, e.g., Duane Reade Inc., v. St. Paul Fire and Marine Ins. Co.,* 411 F. 3d 384, 389 (2d Cir. 2005); *Marchi v. Bd. of Coop. Educ. Servs.,* 173 F.3d 469, 478 (2d Cir. 1999).

Count VI requests that the Court do precisely what Article III forbids—engage in a speculative analysis regarding the legality of terms to which no party has agreed. Section 2.1(a) of the Merger Agreement provides for a purchase price of $54.50 per share. Although

Article III would not prohibit the Court from adjudicating the legality of the merger at that price, "[c]ourt[s] [are] unable to issue an advisory opinion which would constitute gratuitous comment on a provision of a contract that conceivably may never be executed." *Mini Theatres v. New Line Distrib., Inc.*, No. 98 Civ. 2997 (SHS), 1998 WL 637465, at *2 (S.D.N.Y. Sept. 17, 1998).

Were the law otherwise, any party contemplating a prospective agreement could enlist the federal courts' advice on the propriety of contractual terms to assist the party in its negotiations. That is simply not the courts' role. *See, e.g.*, *N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 04 Civ. 9949 (KMK), 2005 WL 646350, at *10 (S.D.N.Y. Mar. 21, 2005) (no subject matter jurisdiction to opine on the legality of terms that are subject to ongoing negotiations); *cf. Carlino v. Kaplan*, 139 F. Supp. 2d 563, 565 (S.D.N.Y. 2001) ("Courts will not create agreements where the parties have failed to do so."). Here, Plaintiffs request "an opinion advising what the law would be upon a hypothetical state of facts," *i.e.*, hypothetical terms of an agreement, and the Court lacks subject matter jurisdiction to render such an advisory opinion. *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (quoting *Aetna Life*, 300 U.S. at 241).

## CONCLUSION

For the reasons set forth above, the Court should enter judgment on Counts I-III and dismiss Counts IV-VI of the Counterclaims.

Dated: February 6, 2008
New York, New York

Respectfully submitted,

By: ______________________

Alexandra A.E. Shapiro (AS-4816)
Joseph J. Frank (JF-0669)
Blair Connelly (BC-0237)
J. Christian Word (admitted *pro hac vice*)
Eric S. Olney (EO-7324)
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1316

*Attorneys for Defendants UBS Securities LLC and UBS Loan Finance LLC*