UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UBS SECURITIES LLC, and
UBS LOAN FINANCE LLC,

|                        |                        |
|------------------------|------------------------|
| Plaintiffs,            | 07-CV-10382            |
|                        | (LAP/MHD)              |

v.

THE FINISH LINE, INC., and
GENESCO INC.,

Defendants.

## GENESCO INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR ABSTAIN

James P. Denvir (*pro hac vice*)
Michael A. Brille (*pro hac vice*)
William C. Jackson
Jonathan M. Shaw (*pro hac vice*)
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727
Fax: (202) 237-6131

Adam R. Shaw (AS-7671)
575 Lexington Avenue
7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

BASS, BERRY & SIMS, PLC
Overton Thompson III (*pro hac vice*)
Britt Latham (*pro hac vice*)
Bryan Larson (*pro hac vice*)
315 Deaderick Street
Suite 2700
Nashville, TN 37238
Tel: (615) 742-7730
Fax: (615) 742-2804
*Attorneys for Defendant Genesco Inc.*

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................1

ARGUMENT ....................................................................................................................3

    I.   The Court Should Dismiss Finish Line's Counterclaims I-III, V And VI And UBS's Proposed Declarations In ¶¶ 42(b), 42(c), And 42(i), Which Should Be Heard In Tennessee Because They Address Issues Under The Merger Agreement.. ...................................................3

        A.   Whether the merger would result in a fraudulent transfer, a fraudulent incurrence of debt, or an unlawful distribution are issues under the Merger Agreement. ...................................4

        B.   Finish Line's request for a declaration of the "price per Genesco share" at which the Combined Entity would be solvent is a claim under the Merger Agreement......................5

        C.   UBS's request for a declaration regarding the amount of financing necessary to complete the transaction is an issue under the Merger Agreement. .......................................7

    II.  The Court Should Abstain From Ruling On Any Claims Or Issues Under The Merger Agreement....................................................................................................7

CONCLUSION...............................................................................................................10

# TABLE OF AUTHORITIES

*Brillhart v Excess Ins. Co. of America,*
  316 U.S. 491, 495 (1942) ...........................................................................................................7, 8

*Congress Talcott Corp. v Roslin,*
  No. 95-cv-7698 (LAP), 1996 WL 499337 (S.D.N.Y. Sept. 4, 1996) (Preska, J.) .......................10

*Dow Jones & Co., Inc. v Harrods, Ltd.,*
  237 F. Supp. 2d 394 (S.D.N.Y. 2002); *aff'd,* 346 F.3d 357 (2d Cir. 2003) ...................................6

*John Boutari & Son, Wines & Spirits, S.A. v Attiki Importers & Distributors Inc.,*
  22 F.3d 51 (2d Cir. 1994) ................................................................................................................3

*Jones v Weibrecht,*
  901 F.2d 17 (2d Cir. 1990) ..............................................................................................................3

*Machat v Sklar,*
  Civ. A. No. 96-cv-3796, 1997 WL 599384 (S.D.N.Y. Sept. 29, 1997) .......................................10

*Mehler v Terminix Intern. Co. L.P.,*
  205 F.3d 44 (2d Cir. 2000) ..............................................................................................................4

*National Union Fire Ins. Co. v Karp,*
  108 F.3d 17 (2d Cir. 1997) ..............................................................................................................8

*Troiano v Mardovich,*
  No. 06-cv-523 (LAP), 2006 WL 2320517 (S.D.N.Y. Aug. 10, 2006) (Preska, J.) ......................8

*Victoria Select Ins. Co. v Esgro,*
  Civ. A. No. 3:06-cv-1938, 2007 WL 405942 (M.D. Pa. Feb 02, 2007) ......................................10

*Wells Fargo Century, Inc. v Brown,*
  475 F. Supp. 2d 368 (S.D.N.Y. 2007)..........................................................................................3, 4

*Wilton v Seven Falls Co.,*
  515 U.S. 277 (1995)........................................................................................................................7, 8

# FEDERAL STATUTES

*28 U.S.C. § 2201*......................................................................................................................................7

This Court should dismiss or abstain from deciding any claims filed by Finish Line and UBS that go beyond the narrow issue of solvency under the Commitment Letter and intrude upon the Tennessee Court's exclusive jurisdiction over the Merger Agreement. Specifically, Genesco asks that the Court (i) dismiss or abstain from ruling on Finish Line's Counterclaims I-III, V, and VI, (ii) abstain from deciding the issues raised in ¶¶ 36-39 of Finish Line's Counterclaim IV, and (iii) dismiss or abstain from ruling on the relief requested in UBS's Amended Complaint ¶¶ 42(b), 42(c), and 42(i). Those claims seek declarations regarding issues under the Merger Agreement between Finish Line and Genesco, which all parties have already submitted to the Tennessee Court's exclusive jurisdiction – Genesco and Finish Line by contract, UBS by voluntarily intervening in the Tennessee action. The Tennessee Court, which has already tried issues under the Merger Agreement, retains jurisdiction over the parties' dispute and has asked this Court to decide only the limited issue of solvency under the Commitment Letter presented in UBS's original complaint. In the wake of their loss on every issue in the Tennessee Court, Finish Line and UBS are trying to turn this limited action into an end run around the Tennessee Court's jurisdiction. This Court should not let them do so.

## BACKGROUND

This suit involves UBS's agreement (the "Commitment Letter", Declaration of William Jackson ("Jackson Decl.") Ex. 2) to lend Finish Line approximately $1.5 billion to fund its merger with Genesco. The Commitment Letter is between Finish Line and UBS and has a New York exclusive choice of forum provision. The Agreement and Plan of Merger ("Merger Agreement", Jackson Decl. Ex. 1) is between Finish Line and Genesco, is governed by Tennessee law, and provides for exclusive jurisdiction and venue in Tennessee. Merger Agreement § 9.8.

After Finish Line and UBS delayed closing the merger and sought to renegotiate its terms, Genesco sued Finish Line in Tennessee Chancery Court to enforce the Merger Agreement. UBS voluntarily intervened in that action as a third-party defendant and filed counterclaims against

Genesco. As UBS's counsel for explained in his first Tennessee appearance, UBS "c[a]me down and submitted itself to the jurisdiction of the [Tennessee] Court to try to get everything done." *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.), October 10, 2007 Hearing Transcript, Jackson Decl. Ex. 6, 9:2-4. UBS later changed its tune. Before the Tennessee trial, UBS filed this declaratory judgment action seeking a simple declaration that the merged company ("Combined Entity") would be insolvent and gave the Tennessee Court "notice of the filing . . . of the attached related action on the issue of insolvency" in this Court. *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.), November 16, 2007 UBS Notice of Filing of Related Action, Jackson Decl. Ex. 8.

On December 27, 2007, after a seven-day trial, the Tennessee Court held that "all conditions to the Merger Agreement have been met" and that "Finish Line has breached the Merger Agreement by not closing[.]" Dec. 27, 2007 Memorandum and Order, *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.) ("Tennessee Order"), Jackson Decl. Ex. 10, p. 3. The Tennessee Court granted Genesco's request for specific performance of the Merger Agreement and rejected UBS's and Finish Line's counterclaims. *Id.* at 2-3. The Court noted that the only issue it did not address was "the solvency of the merged entity" because "[t]hat issue is reserved for determination by a New York Court in a lawsuit filed by UBS." *Id.* at 3. The Court later clarified that its December 27, 2007 decision was "not a final order" and that it retains jurisdiction over the parties. Jan. 2, 2008 Order, *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.), Jackson Decl. Ex. 11, p. 1.

Despite agreeing to submit all Merger Agreement claims to the Tennessee Court, both UBS and Finish Line in their recent pleadings have asserted claims for declaratory relief that, if addressed, would require this Court to adjudicate issues that arise out of or relate to the Merger Agreement and therefore fall squarely within the exclusive jurisdiction of the Tennessee Court. While issues relating

2

to the rights and obligations of UBS and Finish Line under the Commitment Letter are properly before this Court, all issues "arising out of or relating to" the Merger Agreement must be adjudicated in Tennessee.  Merger Agreement § 9.8.

As the Tennessee pleadings and the Tennessee Order show, the Tennessee Court has already addressed the bulk of the dispute.  The only issue for this Court to resolve is the solvency of the Combined Entity during the appropriate period.  If this Court finds that the Combined Entity would be solvent, then Finish Line is required, under the Merger Agreement and the Tennessee Order, to deliver a solvency certificate and, in doing so, will have satisfied that condition under the Commitment Letter.  If this Court finds that the Combined Entity would not be solvent, it is for the Tennessee Court to determine the consequences under the Merger Agreement of that ruling.

## ARGUMENT

I.  **The Court Should Dismiss Finish Line's Counterclaims I-III, V And VI And UBS's Proposed Declarations In ¶¶ 42(b), 42(c), And 42(i), Which Should Be Heard In Tennessee Because They Address Issues Under The Merger Agreement.**

It is well settled that a forum selection clause using mandatory venue language like that in the Merger Agreement "will be enforced." *John Boutari & Son, Wines & Spirits, S.A. v Attiki Importers & Distributors Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (citing authorities); *see also Wells Fargo Century, Inc. v Brown*, 475 F. Supp. 2d 368, 371 (S.D.N.Y. 2007); *Jones v Weibrecht*, 901 F.2d 17 (2d Cir. 1990) (applying this principle in diversity cases).  Moreover, there is a "strong presumption favoring enforcement of freely negotiated choice of forum provisions." *Wells Fargo*, 475 F. Supp. 2d at 371.

That presumption applies with even more force when "mandatory venue language is employed." *Boutari*, 22 F.3d at 53.  In general, a clause is mandatory if its language denotes "the parties' intent that only one forum could decide their disputes." *Wells Fargo*, 475 F. Supp. 2d at 371.  The *Wells Fargo* court dismissed the action after concluding that the forum selection clause "plainly and explicitly provides for a single jurisdiction[.]" *Id.*  This is equally true of the Merger Agreement, in which the parties explicitly bargained and agreed that:

3

> Each of the [Genesco], [Finish Line] and Merger Sub irrevocably submits to the *exclusive jurisdiction and venue of the courts of the State of Tennessee* (or, in the case of any claim as to which the federal courts have exclusive subject matter jurisdiction, the Federal court of the United States of America) sitting in the City of Nashville in the State of Tennessee in any Action *arising out of or relating to this Agreement*, and hereby irrevocably agrees that all claims in respect of such action may be heard and determined in such court.

Merger Agreement § 9.8 (emphasis added). This language is clearly not "broad enough to contemplate multiple venues." *Wells Fargo Century, Inc.*, 475 F. Supp. 2d at 371. To the contrary, the clause vests jurisdiction "arising out of or relating to this Agreement" in the Tennessee state courts in Nashville (or federal courts for the exclusive federal claims) — and all other venue is excluded.

A matter "arises out of" or "relates to" a contract when the allegations underlying the claims "touch matters" covered by the contracts, when they "pertain to" the contract at issue, or when they are "integrally linked" to the contractual relationship. *Mehler v. Terminix Intern. Co. L.P.*, 205 F.3d 44, 50 (2d Cir. 2000) (broadly construing "arises out of" or "relating to"). Finish Line's Counts I-III, V and VI and the declarations sought by UBS under its Amended Complaint ¶¶ 42(b), 42(c), and 42(i) all seek to adjudicate issues that "arise out of or relate to" the Merger Agreement.

## A. Whether the merger would result in a fraudulent transfer, a fraudulent incurrence of debt, or an unlawful distribution are issues under the Merger Agreement.

Count I of Finish Line's Counterclaims asks this Court to declare that "if the Combined Entity would be insolvent at $54.50 per Genesco share, closing the transaction would result in unenforceable and voidable fraudulent transfers by Genesco," under New York, Tennessee, and Indiana law. UBS seeks the same declaration in its Amended Complaint ¶ 42(b). The "transaction" referenced in this Count is the merger – any "transfer[] by Genesco" occurs only as a result of the Merger Agreement, not the Commitment Letter. Finish Line Counterclaims ¶¶10-11. Hence any transfer by Genesco arises out of and relates to the Merger Agreement's closing, Merger Agreement § 1.2, and is subject to the exclusive jurisdiction of the Tennessee Court.

Similarly, Finish Line's Count II asks this Court to declare that "if the Combined Entity

would be insolvent at $54.50 per Genesco share, an unenforceable and voidable fraudulent incurrence of debt by Finish Line would result[.]"  This requested declaration is grounded on the allegations that "[b]ased on facts in existence, but not known by Finish Line prior to June 17, 2007, the Genesco shares were not worth $54.50" and that, as a result, "Finish Line did not receive fair consideration or reasonably equivalent value" in the Merger Agreement.  Finish Line Counterclaims ¶¶ 21-22.  Thus, Finish Line is alleging that it was defrauded into entering the Merger Agreement, (a claim already squarely rejected by the Tennessee Court), and should not have to incur debt to consummate the agreement.  Again, those allegations directly "aris[e] out of" and "relat[e] to" the Merger Agreement and must be tried in the Tennessee Court.  Merger Agreement § 9.8.

Finish Line's Count III is simply a different spin on the same issue.  In that Count, Finish Line asks the Court to declare "if the Combined Entity would be insolvent at $54.50 per Genesco share, an unenforceable and unlawful distribution by Genesco would result pursuant to" Tennessee law.  Again, UBS seeks a similar declaration in its Amended Complaint ¶ 42(c).  The starting point of this contention is the observation that "[u]nder the Merger Agreement, Genesco's shareholders will receive a cash distribution as a result of the consummation of the transaction."  Finish Line Counterclaims ¶ 28.  Once again, as in Count I, the distribution occurs only as a result of the Merger Agreement.  Thus, Finish Line's Count III is just a different legal argument to prevent the payment to Genesco shareholders challenged under its Count I and similarly arises out of and relates to the payment obligation under the Merger Agreement. Merger Agreement § 2.1(a).

**B.  Finish Line's request for a declaration of the "price per Genesco share" at which the Combined Entity would be solvent is a claim under the Merger Agreement.**

In its Count VI, Finish Line seeks a declaration adjusting the purchase price in the Merger Agreement.  It asks this Court to "[d]eclare the price per Genesco share at which the Combined Entity would be solvent, Finish Line would obtain reasonably equivalent value and the Merger Agreement would be enforceable."  Finish Line specifically asks the Court to construe the Merger

Agreement's Severability Clause, Merger Agreement § 9.6, *see* Finish Line Counterclaims ¶48, and,

potentially, set an alternative purchase price in that Agreement.  Merger Agreement § 2.1(a), *see*

Finish Line Counterclaims ¶50.  There can be little doubt that any dispute about that provision in

the Merger Agreement arises out of and relates to the Merger Agreement.  Likewise, because Finish

Line's Count V seeks a declaration involving the Merger Agreement's Severability Clause and a

renegotiation of the merger price, that declaration arises out of and relates to the Merger Agreement

and is subject to the Tennessee Court's exclusive jurisdiction.

At the same time, rather than declaring what price per share Finish Line should pay under

the Merger Agreement (assuming *arguendo* that this Court finds the combined entity would be

insolvent at the current debt level), Genesco would not object to Finish Line amending Count VI to

seek a declaration regarding the *debt level* at which the combined entity would be solvent.  As Finish

Line notes, "[u]nder the terms of the Commitment Letter, UBS agreed to provide Finish Line with

the Revolving Credit facility of '*up to* $450.0 million,' the Term Loan Facility of '*up to* $690.0 million,'

and the Bridge Facility of '*up to* $700.0 million.'"  Finish Line Counterclaims ¶ 34 (emphasis added).

But Finish Line is not required to borrow the full amounts – it can borrow "up to" those amounts.

*Id.*  Genesco believes that the evidence will show that the Combined Entity will be solvent if Finish

Line borrows the full purchase price of approximately $1.5 billion.  *See* UBS Amended Complaint ¶

2.  If the Court finds that the Combined Entity would be insolvent at that debt level, however,

solvency would exist at a lower debt level.  A declaration as to solvency and the appropriate debt

level under the Commitment Letter should be considered by this Court and would appropriately

"define the legal relationships and adjust the attendant rights and obligations at issue between the

parties so as to avoid the dispute escalating into additional wrongful conduct."  *Dow Jones & Co., Inc.*

*v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002); *aff'd*, 346 F.3d 357 (2d Cir. 2003).  Unlike

Finish Line's Counterclaims Count VI, a declaration of the debt level for solvency would not

impinge upon the Tennessee Court's exclusive jurisdiction over the Merger Agreement.

### C. UBS's request for a declaration regarding the amount of financing necessary to complete the transaction is an issue under the Merger Agreement.

UBS seeks a declaration that the "specified amount of financing, subject to applicable terms and conditions, [is] no longer sufficient to complete the transaction." UBS Amended Complaint ¶ 42(i). Again, "the transaction" that UBS references is the merger between Finish Line and Genesco. While this Court may determine the issue of solvency, the Tennessee Court must determine the consequences under the Merger Agreement of any such finding. UBS's requested declaration goes far beyond the limited solvency issue that the Tennessee Court reserved, involves issues that arise out of and relate to the Merger Agreement, and therefore must be tried in Tennessee.

## II. The Court Should Abstain From Ruling On Any Claims Or Issues Under The Merger Agreement

Under the Declaratory Judgment Act, a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The court is not obliged to do so. In passing the Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Because of its remedial nature, the Declaratory Judgment Act confers upon courts "unique and substantial discretion" in deciding whether to declare the rights of the litigants. *Wilton*, 515 U.S. at 286; *see also id.* at 282, 288.

Where there is a concurrent state court action pending, this Court should be particularly cautious in exercising that discretion. The Supreme Court has warned, "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). As this Court has recognized, "[t]he *Brillhart* abstention doctrine simply states

that a stay or dismissal is appropriate when the federal action could be better settled in the pending state court proceeding." *Troiano v. Mardovich*, No. 06-cv-523 (LAP), 2006 WL 2320517 at *4 (S.D.N.Y. Aug. 10, 2006) (Preska, J.) (discussing and applying *Brillhart*). In such cases, the district court must decide "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed by applicable substantive law, can be better settled in the proceedings pending in the state court." *Wilton*, 515 U.S. at 282.

The non-exclusive factors to be considered include (ordered in significance to this case): (1) avoiding forum shopping; (2) the scope of the pending state proceeding and the nature of the defenses available there; (3) avoiding duplicative proceedings; (4) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (5) whether the necessary parties have been joined; (6) whether such parties are amenable to process in that proceeding; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law. *Id.* at 282-83; *Brillhart*, 316 U.S. at 495. *See also National Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) (affirming district court's abstention in favor of concurrent state proceeding); *Troiano*, 2006 WL 2320517 (Preska, J.) (abstaining from adjudicating declaratory judgment action in favor of state court action).

Application of these factors favors abstaining from considering the requested relief beyond declarations of solvency and the appropriate debt level for the Combined Entity. Most importantly, by filing the additional claims here, UBS and Finish Line are not only engaging in forum shopping, but are seeking a second bite at the apple. Genesco originally filed suit in Tennessee against Finish Line alone and not UBS. Nevertheless, UBS voluntarily appeared and moved to intervene in the Tennessee action "to get everything done." *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.), October 10, 2007 Hearing Transcript, 9:3-4. Shortly before trial, when it appeared that UBS might not prevail in that action, it reversed course and filed this declaratory judgment action to litigate the issue of "solvency" and Finish Line's ability to furnish

a solvency certificate, which is a closing condition under the Commitment Letter. UBS Complaint, p. 6. After the Tennessee Court granted Genesco's relief and denied UBS's and Finish Line's counterclaims, UBS significantly expanded the scope of this proceeding in the hopes of getting a more favorable ruling here. Finish Line did likewise, hoping to get this Court to issue declarations defining the parties' rights and obligations under the Merger Agreement.

The remaining factors also favor abstention. First, the remaining declarations can be addressed by the Tennessee Court, which has issued a non-final order and retains jurisdiction over the parties. Second, as a result of those on-going proceedings, this Court's consideration of the additional issues would be duplicative of the proceedings that have and will continue to occur before the Tennessee Court. Third, the Tennessee Court can adjudicate the parties' claims. Fourth, all necessary parties are already in Tennessee. Fifth, Nashville is at least an equally convenient forum: all three parties have appeared there, tried claims under the Merger Agreement there, and remain subject to the Tennessee Court's jurisdiction. Sixth, the suit in Tennessee was filed first and, in fact, there has already been a trial and a non-final order in those ongoing proceedings. And seventh, the additional issues that Finish Line and UBS seek to add involve the interpretation and application of Tennessee law – with which the Tennessee Court obviously has substantial experience.

Genesco believes that *under the Commitment Letter* Finish Line is entitled to the declaration it requested in Count IV that "UBS's obligations under the Commitment Letter do not terminate if the Combined Entity is insolvent" at a debt level of $1.5 billion. But Finish Line asks the Court for that declaration at a price per Genesco share – raising an issue that arises under the Merger Agreement. In the context of that declaration, Finish Line also includes language regarding the Merger Agreement's terms – language that is irrelevant and unnecessary to the declaration that the Commitment Letter does not terminate if the Combined Entity were insolvent. See Finish Line Counterclaims ¶¶ 36-39. Genesco does not object to the Court ruling on Finish Line's Count IV

but requests that the Court abstain from ruling on the merger price and on the topics in Finish Line Counterclaims ¶¶ 36-39, because those issues arise out of and relate to the Merger Agreement.

Under similar circumstances, this Court has abstained from adjudicating an action where the issues were intertwined with issues pending in state court. *Congress Talcott Corp. v. Roslin*, No. 95-cv-7698 (LAP), 1996 WL 499337, at *5-*6 (S.D.N.Y. Sept. 4, 1996) (Preska, J.). There, like here, the parties sought to litigate the same agreements in both state and federal courts, which "require[d] each court to interpret the agreements, test their validity, assess whether the obligor has breached and, if so, whether the [other parties] have breached as well." *Id.* at 5. This Court recognized that proceeding in both actions could lead to inconsistent judgments based on the "exact same agreement and the exact same set of events." *Id.* "Such potentially inconsistent and contradictory holdings are the pitfall of piecemeal litigation, causing 'unnecessary friction between state and federal courts.'" *Id.* (*quoting Lumbermens Mut. Cas. Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir. 1986)); *see also Machat v. Sklar*, Civ. A. No. 96-cv-3796, 1997 WL 599384, at *8 (S.D.N.Y. Sept. 29, 1997) (abstention proper where cases are "substantially" similar: "[w]hat matters is that the claims concern the same events . . . and involve sufficient overlap of subject matter"). This Court's "interest in comity and respect for the judgments of [the Tennessee] state court[ should] compel[ it] to use [its] discretion to decline to exercise jurisdiction in this case." *Victoria Select Ins. Co. v. Esgro*, Civ. A. No. 3:06-cv-1938, 2007 WL 405942 at *3 (M.D. Pa. Feb 02, 2007) (declining to exercise jurisdiction in declaratory judgment action in light of a previously pending state court action).

## CONCLUSION

Comity and the Merger Agreement's exclusive forum selection clause both favor either dismissing or abstaining from deciding Finish Line's Counterclaims, as well the relief requested in UBS's Amended Complaint ¶¶ 42(b), 42(c), and 42(i).

Respectfully Submitted,

February 6, 2008                    BOIES, SCHILLER & FLEXNER LLP

                            By: _____
                                James P. Denvir (*pro hac vice*)
                                Michael A. Brille (*pro hac vice*)
                                William C. Jackson
                                Jonathan M. Shaw (*pro hac vice*)
                                5301 Wisconsin Avenue, N.W.
                                Suite 800
                                Washington, D.C. 20015
                                Tel: (202) 237-2727
                                Fax: (202) 237-6131

                                Adam R. Shaw (AS-7671)
                                575 Lexington Avenue
                                7th Floor
                                New York, New York 10022
                                Tel: (212) 446-2300
                                Fax: (212) 446-2350

                                Overton Thompson III (*pro hac vice*)
                                Britt Latham (*pro hac vice*)
                                Bryan Larson (*pro hac vice*)
                                315 Deaderick Street
                                Suite 2700
                                Nashville, TN 37238
                                Tel: (615) 742-7730
                                Fax: (615) 742-2804

                                *Attorneys for Defendant Genesco Inc.*

11