UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UBS SECURITIES LLC, and
UBS LOAN FINANCE LLC,

                Plaintiffs,        07-CV-10382 (LAP/MHD)

v.

THE FINISH LINE, INC., and
GENESCO INC.,

                Defendants.

---

### GENESCO'S MEMORANDUM OF LAW IN OPPOSITION TO UBS'S MOTION FOR ENTRY OF JUDGMENT ON COUNTS I-III AND RESPONSE TO MOTION TO DISMISS COUNTS IV-VI OF FINISH LINE'S COUNTERCLAIMS

**BASS, BERRY & SIMS, PLC**
Overton Thompson III (*pro hac vice*)
Britt Latham (*pro hac vice*)
Bryan Larson (*pro hac vice*)
315 Deaderick Street
Suite 2700
Nashville, TN 37238
Tel: (615) 742-7730
Fax: (615) 742-2804

**BOIES, SCHILLER & FLEXNER LLP**
James P. Denvir (*pro hac vice*)
Michael A. Brille (*pro hac vice*)
William C. Jackson
Jonathan M. Shaw (*pro hac vice*)
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727
Fax: (202) 237-6131

Adam R. Shaw (AS-7671)
575 Lexington Avenue
7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendant Genesco, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT..................................................................................................................................2

    I.    THE COURT SHOULD DENY UBS'S MOTION FOR ENTRY OF JUDGMENT ON COUNTS I-III. ...................................................................................2

        A.    The Court lacks jurisdiction to enter a consent judgment on Counts I-III given the absence of a "substantial controversy" between adverse parties..........3

        B.    The Court should refrain from entering a consent judgment because such a judgment would lack precedential effect in the Tennessee Action. ..................4

        C.    The Court should abstain from entering judgment on Counts I-III under *Brillhart*..................................................................................................4

    II.    THIS COURT SHOULD DISMISS COUNTS V AND VI OF FINISH LINE'S COUNTERCLAIMS, BUT NOT FOR THE REASONS UBS OFFERS. ........................5

        A.    UBS is wrong that it is not obligated to fund the merger at a lower debt level..5

        B.    UBS's claim that it can avoid financing at a lower debt level because it "believes" it has been defrauded by Genesco is objectively unreasonable given the Tennessee Court's flat rejection of UBS's fraud claim.........................7

CONCLUSION ...............................................................................................................................8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arizona v. California*,
    530 U.S. 392 (2000) .................................................................................................... 4

*Brillhart v. Excess Ins. Co. of America*,
    316 U.S. 491 (1942) .................................................................................................... 5

*Choate v. U.S.*,
    413 F. Supp. 475 (D. C. Okla. 1976) ......................................................................... 3

*Feaser v. City of New York*,
    No. 93 CIV. 5739 (LAP), 1994 WL 681631 ((S.D.N.Y. Dec 5, 1994) ..................... 4

*In re Catt*,
    368 F.3d 789 (7th Cir. 2004) ....................................................................................... 4

*National Kinney Corp. v. Webbe*,
    No. 80 Civ. 1607 (LBS), 1981 Dist. LEXIS 10277 (S.D.N.Y. Jan. 9, 1981) ............ 7

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
    94 F.3d 747 (2d Cir. 1996) ......................................................................................... 3

*Olin Corp. v. Consolidated Aluminum Corp.*,
    5 F.3d 10 (2d Cir. 1993) ............................................................................................. 3

*Zimmerman v. HBO Affiliate Group*,
    834 F.2d 1163 (3d. Cir. 1987) .................................................................................... 3

## FEDERAL STATUTES

28 U.S.C. § 2201 ............................................................................................................. 3

## INTRODUCTION

As Genesco explained in its Memorandum of Law in Support of its Motion to Dismiss or Abstain, DE 34 ("Genesco's Motion"), this Court should not adjudicate Finish Line's Counts I-III, V, and VI, which seek rulings under the Merger Agreement between Finish Line and Genesco, and therefore are reserved for the exclusive jurisdiction of the Tennessee Court. Genesco will not repeat those arguments here.

But UBS makes various other arguments that this Court should reject:

*First*, UBS purports to "consent to judgment" on Counts I-III of Finish Line's Counterclaim. The fact that UBS agrees with Finish Line's various assertions in Counts I-III does not allow UBS to consent to judgment on those counts. To the contrary, because UBS and Finish Line – the only parties to those counts – have made clear that they have no disagreement on those issues, this Court lacks subject matter jurisdiction over those counts and should dismiss them on that basis or, alternatively, decline to enter what would amount to a collusive declaratory judgment.

*Second*, while Genesco agrees with UBS that the parties should not litigate Finish Line's Counts V and VI (and the Court should abstain from deciding the issues under the Merger Agreement raised in Finish Line's Count IV), Genesco disagrees with UBS's stated rationales for doing so. Contrary to UBS's assertions, UBS committed to finance the merger by providing Finish Line with various debt facilities "up to" the amounts designated in the Commitment Letter. UBS's arguments that "*any* change" in the terms and conditions of the Merger Agreement, including any change that itself would make the terms of the transaction *more* favorable to UBS, would violate the Commitment Letter's "Conditions to Closing" are wholly without merit.

*Third*, UBS asks this Court to decide issues within the exclusive purview of the Tennessee Court (*e.g.*, interpreting the severability clause of the Merger Agreement) – and even issues that

the Tennessee Court has already tried and decided against UBS. Specifically, when UBS claims that it "believes it has been defrauded by Genesco,"[1] it ignores the fact that the Tennessee Court – following a seven-day trial – rejected UBS's "belief," found that the testimony of the only UBS executive offered in support of those claims was not believable, and also found that, if there was fault to be found, it was with UBS's slipshod efforts at due diligence.[2] This Court should reject UBS's attempt to relitigate those matters and should decline to address any arguments that invite this Court to encroach on the Tennessee Court's exclusive jurisdiction over the Merger Agreement.

## ARGUMENT

### I. THE COURT SHOULD DENY UBS'S MOTION FOR ENTRY OF JUDGMENT ON COUNTS I-III.

UBS purports to consent to judgment on Finish Line's Counts I-III, which seek declarations concerning the effects that a finding of the Combined Entity's insolvency would have *under the Merger Agreement*. Notably, while these Counts are purportedly addressed to UBS, which is nether a party to, nor a third-party beneficiary of, the Merger Agreement, they seek no relief against UBS itself, and they merely elaborate on certain of UBS's theories and allegations.

The declarations in Finish Line's Counts I-III appear to be aimed at providing Finish Line leverage in any negotiations with Genesco, and UBS (the only defendant on those Counts) consents to judgment on them because it has nothing at stake and loses nothing by such consent. In other words, Finish Line and UBS, who are listed as adverse parties in this action, are asking this Court to make determinations beyond the discrete issue of solvency on issues that are undisputed between them. The Court should resist entering judgment on those Counts for three reasons. *First*, UBS's consent establishes that there is no dispute between Finish Line and UBS

---

[1] UBS Memorandum in support of Motion to Dismiss ("UBS Memo") at 4.

[2] Dec. 27, 2007 Memorandum and Order, *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.) ("Tennessee Order") at 14-29.

2

over those claims and thus deprives the Court of subject matter jurisdiction over them. *Second,* such judgments would have no preclusive effect in the Tennessee action, would therefore be useless, and would lead only to wasteful litigation in Tennessee over their lack of preclusive effect. And *third,* the Court should abstain from ruling on all issues concerning the Merger Agreement.

### A. The Court lacks jurisdiction to enter a consent judgment on Counts I-III given the absence of a "substantial controversy" between adverse parties.

The Declaratory Judgment Act permits declaratory relief only in cases presenting an "actual controversy," 28 U.S.C. § 2201(a), a requirement rooted in Article III's limitation of federal court subject matter jurisdiction to actual cases or controversies. Thus, for this Court to have subject matter jurisdiction over Finish Line's Counts I-III, there must be "'a substantial controversy, between parties having adverse legal interests.'" *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Because UBS is the only counterclaim defendant on those counts, its "consent to judgment" means that there is no controversy between the counterclaim plaintiff and the counterclaim defendant. A controversy is necessary to ensure "the dispute sought to be adjudicated will be presented in an adversary context." *Choate v. U.S.*, 413 F. Supp. 475, 480 (D.C. Okla. 1976). Without a controversy, there is no basis on which to issue a declaratory judgment. *See Olin Corp.*, 5 F.3d at 17; *see also Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752-3 (2d Cir. 1996); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3d Cir. 1987) (affirming refusal to grant declaratory judgment in "the absence of a genuine dispute").

The principle was applied in *Niagara Mohawk Power Corp.*, where the Second Circuit affirmed dismissal of an action implicating the validity of a franchise agreement "[i]n light of the pleadings and the plaintiff's own contention on appeal that there is no dispute" over the agreement's validity. 94 F.3d at 753. Because there was no dispute, the court held that it "ha[d]

3

no jurisdiction" to resolve a dispute over its legality. *Id.* The same rationale applies to UBS's consent to judgment on Counts I-III and mandates that this Court dismiss them.

### B. The Court should refrain from entering a consent judgment because such a judgment would lack precedential effect in the Tennessee Action.

In addition, UBS's consent to judgment on Finish Line Counts I-III would be meaningless because it would lack precedential effect in the Tennessee action. As explained in Genesco's Motion, the Tennessee Court ruled on UBS's and Finish Line's claims, but "excepted" the narrow and specific issue of the solvency of the merged entity. Tennessee Order, at 3. The Tennessee Court subsequently noted that its order was "not...final" and that it expected the parties to appear before it again once this declaratory judgment action had concluded. Jan. 2, 2008 Order, *Genesco Inc. v. The Finish Line, Inc. et al.*, Civil No. 07-2137-II (III) (20th Div. Tenn. Chancery Ct.), p. 1. Collateral estoppel, or issue preclusion, however:

> attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.' Restatement (Second) of Judgments § 27, p. 250 (1982). 'In the case of a judgment entered by confession, <u>consent</u>, or default, none of the issues is actually litigated.'

*Arizona v. California*, 530 U.S. 392, 414 (2000) (emphasis added); *In re Catt*, 368 F.3d 789, 791-2 (7th Cir. 2004); *Feaser v. City of New York*, No. 93 CIV. 5739 (LAP), 1994 WL 681631, at * 1 (S.D.N.Y. Dec. 5, 1994) (Preska, J.).

Thus, by definition, UBS's consent to judgment on Counts I-III means that the issues were not "actually litigated" and therefore any resulting judgment would not enjoy preclusive effect in the Tennessee action. *Arizona*, 530 U.S. at 414. At most, it would spawn wasteful collateral litigation over the preclusion issue.

### C. The Court should abstain from entering judgment on Counts I-III under *Brillhart*.

Finish Line's and UBS's attempt to have this Court enter a consent judgment concerning the effects of the merged entity's solvency further highlights the arguments in Genesco's Motion

4

why abstention under *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942), and its progeny is proper. Genesco Motion at 7-10.

## II. THIS COURT SHOULD DISMISS COUNTS V AND VI OF FINISH LINE'S COUNTERCLAIMS, BUT NOT FOR THE REASONS UBS OFFERS.

UBS contends that Finish Line's Counts IV, V, and VI "do not state a legally cognizable basis for relief" because "UBS will not be satisfied with a different Merger Agreement specifying a lower price term" and UBS would "exercise its reasonable discretion not to consent" to any change the parties proposed. UBS Memo at 4-5. UBS also asks this Court to hold that the Merger Agreement does not allow renegotiation of the price term. UBS Memo at 6-8. Genesco agrees with UBS that Finish Line's Counts V and VI should be dismissed, but because they improperly raise issues that arise under the Merger Agreement, not for the reasons UBS identifies.[3] Genesco also writes to rebut several important errors in UBS's arguments.

### A. UBS is wrong that it is not obligated to fund the merger at a lower debt level.

Finish Line's ability to request less funding from UBS is subject only to the Commitment Letter's conditions that UBS "be satisfied with" the "terms and conditions of the Acquisition Agreement" and that no amendment takes effect if UBS determines, in its "reasonable discretion," that the change is "material and adverse" to its interests. Annex IV to Commitment Letter at 1. It would be unreasonable for UBS to refuse to provide *less* financing than the maximum it agreed to provide under the Commitment Letter, particularly because the Commitment Letter explicitly contemplates that UBS agreed to provide "up to" various amounts as might be requested by Finish Line. Commitment Letter at 1-2. The plain terms of the Commitment Letter allow Finish Line to borrow a lesser amount to finance the merger if it so chooses. Indeed, although UBS's Amended Complaint notes that Finish Line would borrow

---

[3] For the reasons explained in Genesco's Motion, Finish Line's Count IV need not be dismissed, but the Court should abstain from deciding the issues under the Merger Agreement raised in that Count. Genesco Motion at 9-10

5

approximately $1.5 billion, UBS Amended Complaint ¶ 2, the Commitment Letter provides for "up to" $1.84 billion in loans. *See* Commitment Letter, at 1-2 (providing for "up to" $450 million Credit Facility, "up to" $690 million Term Loan Facility, and "up to" $700 million in either Notes or a Bridge Loan). Nothing requires Finish Line to borrow $1.5 billion or any other particular amount. Thus, it would be wholly unreasonable for UBS to refuse to provide funding for the merger based on a purported change to the Merger Agreement *that would reduce its loan exposure*.

Of course, UBS now contends that it can reasonably reject *any* changes – including one that would reduce the Combined Entity's leverage and, in turn, decrease UBS's risks as a lender – because to do so would increase the chances that UBS would actually have to live up to its original commitment to fund the merger, albeit at a lower level. That contention is not only telling, but so patently baseless that to state it is to refute it.

The real reason that UBS filed this lawsuit in an effort to avoid funding the merger is because, as Genesco's expert testified in the Tennessee trial, "after June 2007, the [debt risk] spread [for corporate debt] has widen[ed], the margins have become too low and so the deal was no longer a good one for UBS" – in fact it is "disastrous" and "a big loss[.]" Tennessee Order at 13. UBS admits as much in its memorandum – conceding that, even if the Combined Entity were solvent, UBS, as a result of the "credit crunch," "would be exposed to risk of substantial losses" and "would be forced to syndicate the debt [it issued] at a value well below par." UBS Memo at 5-6.

At bottom, UBS's argument is that it made a bad bargain by agreeing to loan Finish Line the money to complete the Finish Line-Genesco merger. As a result, it claims that it will be adversely affected by any change, even one that results in a *lower* amount of loans from UBS under the Commitment Letter. *See* UBS Memo at 6. But UBS assumed that very risk when it stood to gain tens of millions in profits from the transaction. The terms to the Commitment

6

Letter on which UBS relies do not relieve it of that burden merely because this deal has "go[ne] from the biggest fee generator to the biggest loss making deal." UBS-E-00089752 (marked as PX 45-1 in Tennessee action), attached as Ex. 1 to the Declaration of Michael A. Brille. To evaluate whether UBS may reasonably reject a term as adverse or unsatisfactory, the Court must compare the cost to UBS of enforcing the existing terms to the cost to UBS of the new term. *See National Kinney Corp. v. Webbe*, No. 80 Civ. 1607 (LBS), 1981 Dist. LEXIS 10277, at *11-12 (S.D.N.Y. Jan. 9, 1981) (comparing existing interest term to *higher* renegotiated interest term). UBS cites no authority holding that terms that are facially *more favorable* to it (reducing the loan amount) can be considered *less favorable* just because the lender wishes to escape its obligations entirely.

### B. UBS's claim that it can avoid financing at a lower debt level because it "believes" it has been defrauded by Genesco is objectively unreasonable given the Tennessee Court's flat rejection of UBS's fraud claim.

UBS also contends that it can avoid financing at a lower debt level "[b]ecause UBS believes it has been defrauded by Genesco and because Genesco is not the company it was believed to be when the Commitment Letter was entered." UBS Memo at 4. UBS and Finish Line claimed fraud in the Tennessee action. But after a seven-day trial the Tennessee Court flatly rejected those claims. *See* Tennessee Order at 41 ("The Court has decided as a matter of law that Genesco did not commit fraud.") Specifically, the Tennessee Court did "not believe Finish Line and UBS witnesses, Margaret Shanley, Alan Cohen and [Evan] Winkler" when they claimed that Genesco or its representatives had made false representations. Tennessee Order at 14. "[T]he court observed [the witnesses testifying on behalf of Genesco] to be believable in there testimony on these points; [UBS executive] Mr. Winkler was not." *Id.* at 15. And contrary to UBS's professed belief, "the Court f[ound] that Genesco and [its financial advisor] did not fraudulently conceal information. Instead, the fault is with Finish Line's advisor UBS and its agents...." *Id.* at 16. In other words, UBS's professed "belief" has already been thoroughly litigated and soundly

7

rejected by the Tennessee Court. It is thus objectively unreasonable, and this Court should not entertain any effort by UBS to resurrect those baseless fraud claims here.

## CONCLUSION

For the reasons stated above, Genesco respectfully requests that the Court refuse to permit UBS to consent to judgment on Finish Line's Counts I, II, and III and reject UBS's arguments regarding Finish Line's Counts IV, V, and VI.

Respectfully Submitted,

February 9, 2008

BOIES, SCHILLER & FLEXNER LLP

By: _____
James P. Denvir (*pro hac vice*)
Michael A. Brille (*pro hac vice*)
William C. Jackson
Jonathan M. Shaw (*pro hac vice*)
5301 Wisconsin Avenue, N.W.
Suite 800
Washington, D.C. 20015
Tel: (202) 237-2727
Fax: (202) 237-6131

Adam R. Shaw (AS-7671)
575 Lexington Avenue
7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

BASS, BERRY & SIMS, PLC
Overton Thompson III (*pro hac vice*)
Britt Latham (*pro hac vice*)
Bryan Larson (*pro hac vice*)
315 Deaderick Street
Suite 2700
Nashville, TN 37238
Tel: (615) 742-7730
Fax: (615) 742-2804

*Attorneys for Defendant Genesco Inc.*