UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UBS SECURITIES LLC, and<br>UBS LOAN FINANCE LLC, | ) <br> ) <br> ) | Civil Action No. 07 Civ. 10382 (LAP) |
| Plaintiffs/Counter-Defendants | ) <br> ) | Judge Loretta A. Preska |
| v. | ) <br> ) | |
| THE FINISH LINE, INC., | ) <br> ) | |
| Defendant/Counter-Plaintiff | ) <br> ) | |
| and | ) <br> ) | |
| GENESCO INC., | ) <br> ) | |
| Defendant. | ) <br> ) | |

**DEFENDANT AND COUNTER-PLAINTIFF THE FINISH LINE, INC.'S
OPPOSITION TO THE MOTION TO DISMISS COUNTERCLAIMS IV TO VI
BY PLAINTIFFS AND COUNTER-DEFENDANTS UBS**

Dewey & LeBoeuf LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

Dewey & LeBoeuf LLP
Alan N. Salpeter (*pro hac vice*)
Vincent P. Schmeltz III (*pro hac vice*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL 60601-6710
Tel: 312-794-8000
Fax: 312-794-8100
Attorneys for The Finish Line, Inc.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT.........................................................................................................4

    A.    Finish Line Has Stated a Claim for Declaratory Judgment Under Counts IV and V...............................................................................................4

        1.    UBS Cannot Terminate the Commitment Letter Merely Because Finish Line Attempts to Renegotiate the Merger Price. ...........................4

        2.    The Commitment Letter binds UBS even if the Merger Agreement price changes.................................................................................5

        3.    UBS does not have carte blanche authority to approve or reject any change to the Merger Agreement..................................................6

    B.    The Court has Jurisdiction over Finish Line's Count VI, which also States a Claim. ........................................................................................10

CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*CanWest Global Comms. Corp. v. Mirkaei Tikshoret Ltd.*, 804 N.Y.S.2d 549
(N.Y. Sup. Ct. 2005) .......................................................................................8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384 (2d Cir. 2005) ..................10

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................4

*Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269
(S.D.N.Y. March 30, 2007).........................................................................4, 10

*Medimmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007) ...........................................10

*Mini Theatres v. New Line Distrib., Inc.*, 1998 WL 637465
(S.D.N.Y. Sept. 17, 1998)...............................................................................10

*South Road Assocs., LLC v. Int'l Bus. Machs. Corp.*, 826 N.E.2d 806 (N.Y. 2005)......................6

*Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F.Supp. 491
(S.D.N.Y. 1987) .......................................................................................5, 8, 9

## FEDERAL STATUTES

28 U.S.C. § 2201(a) ..........................................................................................9

Fed. R. Civ. P. 12(b)(6)......................................................................................4

Fed. R. Civ. P. 8 ............................................................................................4

## INTRODUCTION

This litigation arises from a stalled "Merger Agreement"[1] between Defendant and Counter-Plaintiff The Finish Line, Inc. ("Finish Line") and Defendant Genesco, Inc. ("Genesco"). Finish Line agreed to buy Genesco at a price of $54.50 per Genesco share. Plaintiffs UBS Loan Finance LLC and UBS Securities LLC (together, "UBS") agreed to finance the merger and advise Finish Line as an investment banker. After the Merger Agreement was signed, the deal stalled upon Finish Line's discovery that Genesco's financial performance had fallen materially and significantly below expectations.

Genesco sued Finish Line in Tennessee to enforce the Merger Agreement, and UBS intervened.[2]  The Tennessee court held that, although Genesco's financial performance suffered a material adverse change, the decline was "due to general economic conditions and [was] not disproportionate to its peers in the industry" and, therefore, it did not excuse performance under the Merger Agreement's "Material Adverse Effect" clause. (*See* Dec. 27, 2007 Op. at 33, attached as <u>Exhibit A</u>.) The Tennessee court also held that Genesco had not fraudulently omitted information about its declining performance during the due diligence period. (Ex. A at 27.) Rather, the court found that UBS—as Finish Line's advisor—should have requested updated performance information but did not. (Ex. A at 27 ("The fault is with Finish Line's advisor UBS for not requesting the information.").) Based on these findings, the

---

[1] "Merger Agreement" shall refer to the Agreement and Plan of Merger by and among The Finish Line, Inc., Headwind, Inc. and Genesco, Inc., dated as of June 17, 2007, attached as Exhibit A to UBS's Amended Complaint For Declaratory Judgment ("Complaint"). Capitalized terms relating to the Merger Agreement shall have the same meaning here as in the Merger Agreement.

[2] *Genesco, Inc. v. The Finish Line, Inc. et al.*, No. 07-2137-II(III) (pending in the Chancery Court in Davidson County, Tennessee).

1

Tennessee court ordered Finish Line to: (i) specifically perform the Merger Agreement; (ii) use its best efforts to consummate the Merger Agreement; and (iii) use its best efforts to obtain financing for the Merger Agreement. The Tennessee court deferred to this Court on the issues raised in UBS's lawsuit pertaining to the "Commitment Letter."[3]

While Finish Line is appealing the Tennessee order, it seeks declaratory relief from this Court on two issues. First, whether the Merger Agreement—if consummated at $54.50 per Genesco share—would result in an insolvent entity. And second, whether UBS must meet its funding obligations under the still-valid Commitment Letter.

As to the first issue, if the Merger Agreement is consummated at $54.50 per Genesco share, the Combined Entity may be insolvent. Thus, Finish Line seeks a declaratory judgment that if the consummated Merger Agreement would result in insolvency, the Merger Agreement would amount to an illegal or fraudulent transfer by Genesco, Finish Line, or the resulting Combined Entity. (*See* Counterclaims I-III.) UBS agrees to concede judgment on these claims. (Mot. to Dis. at 2.)

Judgment on that issue would not resolve the second controversy about the Commitment Letter. UBS's Complaint and Motion make clear that UBS will not perform under the Commitment Letter even if Finish Line and Genesco agree on a new merger price at which the Combined Entity would be solvent. Yet the Commitment Letter does not permit UBS to terminate the Commitment Letter in these circumstances. Therefore, an actual controversy exists between Finish Line and UBS regarding UBS's duty to perform under the Commitment Letter. Accordingly, Finish Line seeks a

---

[3] "Commitment Letter" shall refer to a certain Bank and Bridge Facilities Commitment Letter by and among UBS and Finish Line, dated June 17, 2007, attached as Exhibit B to the Complaint. All capitalized terms regarding the Commitment Letter shall have the same meaning here as they do in the Commitment Letter.

declaratory judgment that:  (1) UBS cannot terminate the Commitment Letter merely because the Combined Entity may be insolvent at a merger price of $54.50 (Count IV); and (2) UBS cannot terminate the Commitment Letter while Finish Line and Genesco negotiate a reduced purchase price (Count V).  Finish Line also requests that the Court approve a merger price at which the Combined Entity would be solvent (Count VI).

Although Finish Line's Counterclaims are inexorably intertwined with UBS's Complaint, UBS now moves to dismiss them.  The Court should deny UBS's Motion for at least two reasons.  First, it rests on a fundamentally flawed reading of the Commitment Letter.  The Commitment Letter does not permit UBS to abandon its financing commitment merely because Finish Line agrees to pay *less* for Genesco.  UBS's argument that the price of $54.50 under the *Merger Agreement* is somehow a condition to enforcing the *Commitment Letter* is belied both by the plain language of the Commitment Letter, and UBS's attempt to pressure Genesco into accepting a lower price.[4]

Second, UBS's Motion erroneously assumes the existence of a number of disputed facts outside the pleadings, which the Court cannot consider, such as:

- whether the Combined Entity will be insolvent at $54.50 per share;[5]

- if so, whether a yet-to-be-determined reduced merger price would "materially" *and* "adversely" affect UBS's interests; and

- if so, whether UBS's rejection of a lower price would amount to "reasonable discretion"—a determination that shall depend upon the

---

[4] *See* Exhibit A at 11 ("Emails obtained by Genesco in discovery uncovered that UBS in the fall of 2007 was attempting to put pressure on Genesco to renegotiate the price of the deal.").  UBS's position is further belied by the fact UBS stood ready to finance Finish Line's lower offer of $54, which was not accepted.

[5] UBS erroneously states that all of Finish Line's contested Counterclaims "assume that the combined entity will be insolvent." (Motion to Dismiss at 2.)  To the contrary, each of the Counterclaims assumes that the fact of insolvency must be determined by the Court.  *See e.g.*, Counterclaim ¶¶ 4, 8 (premising claims on the condition of "*if* the Court finds that the Combined Entity would be insolvent at $54.50 . . . ." (emphasis added)).

overall impact of the yet-to-be-determined price on the Commitment Letter and UBS.

Accordingly, Finish Line respectfully requests that the Court deny UBS's Motion.

## ARGUMENT

### A.    Finish Line Has Stated a Claim for Declaratory Judgment Under Counts IV and V

By Counterclaims IV and V, Finish Line seeks a declaratory judgment to enforce the terms of the Commitment Letter even if Finish Line and Genesco must renegotiate the purchase price of the Merger Agreement.  These claims surpass Fed. R. Civ. P. 8's low pleading standard.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (Rule 8 is "not meant to impose a great burden upon a plaintiff.").  Because UBS seeks dismissal under Rule 12(b)(6), the Court must accept as true all of the factual allegations contained in the Counterclaims and draw all inferences in Finish Line's favor.  *See Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269, at *5 (S.D.N.Y. March 30, 2007).

### 1.    UBS Cannot Terminate the Commitment Letter Merely Because Finish Line Attempts to Renegotiate the Merger Price.

UBS argues that its satisfaction with the final terms of the Merger Agreement is a condition to closing.  (Mot. to Dis. at 3-4.)  This is a red herring.  Although UBS had a right to approve the final terms of the Merger Agreement, it already has done so in writing.  (Complt., Ex. B, Annex IV ¶ 1.)  UBS cannot arbitrarily revoke its approval now.  The Merger Agreement that UBS expressly approved requires Finish Line and Genesco to renegotiate the merger price if it is illegal or unenforceable.  (Complt., Ex. A § 9.6).  Thus, UBS's duty to fund the merger does not end simply because the Court may find that the merger price of $54.50 would result in an insolvent entity.  Rather, Finish

4

Line has a continuing duty (both under the Merger Agreement and the Tennessee court's order) to negotiate a price at which the Merger Agreement could close.

Permitting UBS to shirk its funding obligation while Finish Line attempts to comply with the Section 9.6 of the Merger Agreement would contradict the express terms of the Commitment Letter. The Commitment Letter sets forth certain "Conditions" to closing, including that a "Material Adverse Effect" has not occurred to Genesco. (Complt., Ex. B at 5.) The contract further provides that "compliance with the terms of, and taking any action required by" the Merger Agreement *shall not* constitute a Material Adverse Effect. (*Id.*) Thus, because Section 9.6 of the Merger Agreement requires the parties to renegotiate any illegal or unenforceable term and because UBS may not terminate the Commitment Letter while Finish Line takes steps to comply with the Merger Agreement, UBS cannot terminate the Commitment Letter while Finish Line and Genesco attempt to renegotiate what may be an illegal or unenforceable price term.

### 2. The Commitment Letter binds UBS even if the Merger Agreement price changes.

UBS concedes, as it must, that the Commitment Letter is a valid, binding contract. (Complt. ¶ 3.) The Commitment Letter will remain valid and binding even if Finish Line and Genesco agree to reduce the merger price because price is not a condition to closing. The Commitment Letter, which numbers 10 single-spaced pages plus 30 pages of exhibits, sets forth the conditions to performance in detail, but a Merger Agreement purchase price of $54.50 is not one of them. Indeed, the Commitment Letter does not even mention the proposed purchase price. Thus, the Commitment Letter is not conditioned on a merger price of $54.50—or any other price. *See Teachers Ins. &*

*Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 503-04 (S.D.N.Y. 1987) (giving no weight to party's subjective intent that was not expressed in the signed agreement).

Inferring such a condition would contradict the parties' expressed intent that UBS provide Finish Line with a "Revolving Credit Facility" of "*up to* $450.0 million," a "Term Loan Facility" of "*up to* $690.0 million," and a "Bridge Facility of "*up to* $700.0 million." (Counterclaim ¶ 34; Complt. Ex. B at 1-2 (emphasis added).) UBS can cite no provision in the Commitment Letter (because none exists) that requires Finish Line to take *all* of the financing, or to close the merger at a specific price. In fact, the Commitment Letter does not even require Finish Line to apply all of the financing proceeds to effectuate the closing of the merger. For instance, the $450.0 million Revolving Credit Facility can be used for any "working capital and general corporate purposes." (Complt. Ex. B, Annex I, "Purpose" provision.) UBS quips that the Commitment Letter did not amount to a "credit card with which [Finish Line] could purchase whatever it wanted on whatever terms it wanted." (Mot. to Dis. at 3.) Indeed, UBS did not issue a small plastic card to Finish Line. Instead, it issued what amounts to an open line of credit of up to $1.5 billion—approximately $1.0 billion of which could be spent on the merger and related expenses and approximately half-a-billion of which could be spent on any "working capital" and "general corporate purposes" Finish Line had. UBS cannot walk away from that commitment now.

### 3.     UBS does not have carte blanche authority to approve or reject any change to the Merger Agreement.

Renegotiating the merger price requires no change whatsoever to the Merger Agreement because the Merger Agreement already expressly contemplates that terms may have to be renegotiated to comply with the law. (Complt., Ex. A § 9.6.) Even if a

new price term could be considered an amendment, however, UBS has no right to approve or reject it unless the change is "material and adverse" to its interests. (Complt., Ex. B, Annex IV ¶ 1.) Further, even if "material and adverse," UBS still must use "reasonable discretion" in deciding whether to approve or reject it. (*Id.*) Moreover, because the contract must be read as a whole,[6] UBS's use of discretion also must comport with the Commitment Letter's other "Conditions." (Complt., Ex. B at 5.) UBS cannot shoehorn its excuses for rejecting a lower price into these narrow terms.

First, UBS claims "it has been defrauded by Genesco" and that "Genesco is not the company it was believed to be when the Commitment Letter was entered." (Mot. to Dis. at 4.) Yet the Commitment Letter expressly states that the only representations by Genesco that would condition financing under the Commitment Letter are those which would allow Finish Line to terminate the Merger Agreement. (Complt., Ex. B at 6.[7]) The Tennessee court already has found that Genesco's representations about its financial condition did not give Finish Line the right to terminate the Merger Agreement. By the plain terms of the Commitment Letter then, UBS cannot refuse to finance based on Genesco's representations. Moreover, the Tennessee court found that Genesco did not fraudulently withhold material information about its finances. (Ex. A at 27.) Rather, the Tennessee court held that *UBS* had a duty to request the financial information from

---

[6] *See South Road Assocs., LLC v. Int'l Bus. Machines Corp.*, 826 N.E.2d 806, 809 (N.Y. 2005) ("It is also important to read the [contract] as a whole to ensure that excessive emphasis is not placed upon particular words or phrases.").

[7] The "Conditions" provide: "(i) the only representations relating to the . . . Acquired Business . . . the making of which shall be a condition to availability of the Facilities on the Closing Dates shall be (A) such representations made by the Acquired Business . . . as are material to the interests of the Lenders, *but only to the extent that you have the right to terminate your obligations under the Acquisition Agreement* . . . ." (emphasis added).

Genesco, and that *UBS* failed to do so through no fault of Genesco. (*Id.*) Allowing UBS to escape its obligations under the Commitment Letter based on its own failure to discover the information it now wishes it had would be a perverse result.

Second, UBS argues that *any* change to the purchase price would "necessarily be material and adverse to UBS's interests." (Mot. to Dis. at 5.) UBS complains that market conditions, combined with Finish Line's and Genesco's worsening performances, will make it impossible for UBS to syndicate the loan. (*Id.* at 6.) But UBS bargained for that risk. In fact, the Commitment Letter expressly provides that "syndication is **not a condition** to [UBS's] commitments . . . ." (Complt., Ex. B at 4 (emphasis added).) Thus, whether UBS can syndicate the loan is of no consequence to the enforceability of the Commitment Letter. Moreover, permitting UBS to terminate the contract because of current market conditions would undermine the contract. The Commitment Letter expressly states that a "Material Adverse Effect" allowing UBS to terminate *shall not include* a general market or economy decline so long as Genesco is not impacted in a "materially disproportionate manner." (Complt., Ex. B at 5.) The Tennessee court already has found that the adverse market conditions have not disproportionately affected Genesco. (Ex. A at 33.) Thus, UBS cannot use an inconsequential change in price to skirt its funding obligations.

Finally, UBS argues that price is an essential term to the Merger Agreement and, therefore, it cannot be severed. (Mot. to Dis. at 6-8.) But Finish Line is not asking the Court to sever the price term or order the parties to proceed in the absence of one.[8]

---

[8] Even if Finish Line's Counterclaim could be construed as asking the Court to sever the unlawful price term, Finish Line could sustain its claim. *See* Restatement (Second) of Contracts § 184, Illust. 5 (finding that price of loan agreement—an unlawful interest rate—could be modified by the court in the absence of intent by either party to agree to an illegal price).

Rather, the Counterclaims turn on Finish Line's duty to attempt to negotiate a new price in good faith. Such promises to negotiate in good faith are enforceable. *See CanWest Global Comms. Corp. v. Mirkaei Tikshoret Ltd.*, 804 N.Y.S.2d 549, 568 (N.Y. Sup. Ct. 2005). Whether the Finish Line and Genesco ultimately agree upon a new price is of no import to whether the duty exists in the first instance. *See Teachers Ins. & Annuity Ass'n of Am.*, 670 F. Supp. at 498 (noting that parties have a duty to negotiate in good faith unless "circumstances change" and they "mutually abandon the negotiation").

In short, while clever, UBS's attempts to treat a fortuitous change in the Merger Agreement as an escape clause from the Commitment Letter fail. Such a financing commitment "permits borrowers and lenders to make plans" based on "present market conditions." *Teachers Ins. & Annuity Ass'n of Am.*, 670 F. Supp. at 499. Accordingly, UBS must be bound by its financing commitment, even though market conditions may have changed. *See id.* at 500 (holding that a contract reserving the right to approve certain terms "does not free a party to walk away from its deal merely because it later decides that the deal is not in its interest."). Now, UBS must work in "good faith to conclude a final agreement" rather than try to walk away from the deal. *Id.* at 500-01. In doing so, UBS must wait to see what price, if any, Finish Line and Genesco agree upon. The price may not materially impact UBS's funding obligations whatsoever, much less in a negative way (if anything, it may reduce the amount of the initial loan thereby reducing UBS's risk and exposure). If it does, UBS still may not arbitrarily reject the new price, but must exercise "reasonable discretion" in examining it. These are all questions of fact that should not be decided on a motion to dismiss.

**B.** **The Court has Jurisdiction over Finish Line's Count VI, which also States a Claim.**

Count VI seeks a declaratory judgment approving a merger price at which the Combined Entity would be solvent. Pursuant to the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). No bright line rule applies to determining whether an "actual controversy" exists. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (instructing district courts to use discretion). Rather, the Supreme Court requires that the controversy be "definite and concrete," and "touching the legal relations of parties having adverse legal interests." *Medimmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 and at n.7 (2007) (declaratory judgment can be used to "obtain advance rulings on matters that would be addressed in a future case of actual controversy") (internal quotation omitted). Failing to hear an action "is error" where judgment "will serve a useful purpose in clarifying or settling the legal issues involved" or "finalize the controversy and offer relief from uncertainty." *Kensington Int'l Ltd.*, 2007 WL 1032269, at *17.

Here, Finish Line seeks an order that will resolve an existing dispute regarding UBS's duty to fund the merger if a new price is agreed upon and approved by this Court. Because UBS's obligations derive from an enforceable contract, the cases on which UBS relies are inapposite. *See e.g., Mini Theatres v. New Line Distrib., Inc.*, 1998 WL 637465, at *2 (S.D.N.Y. Sept. 17, 1998). The controversy is ripe and therefore should be resolved.

## CONCLUSION

For all the foregoing reasons, Finish Line respectfully requests that the Court deny UBS's Motion to Dismiss.

Respectfully submitted,

THE FINISH LINE, INC.

By: _____ s/ Harvey Kurzweil _____

DEWEY & LEBOEUF LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

DEWEY & LEBOEUF LLP
Alan N. Salpeter (*pro hac vice*)
Vincent P. Schmeltz III (*pro hac vice*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL  60601-6710
Tel:  312-794-8000
Fax:  312-794-8100
    *Attorneys for The Finish Line, Inc.*