**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UBS SECURITIES LLC, and<br>UBS LOAN FINANCE LLC, | ) | Civil Action No. 07 Civ. 10382 (LAP) |
| | ) | |
| Plaintiffs/Counter-Defendants | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE FINISH LINE, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GENESCO INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF THE FINISH LINE, INC.'S OPPOSITION
TO GENESCO INC.'S MOTION TO DISMISS OR ABSTAIN**

DEWEY & LEBOEUF LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

DEWEY & LEBOEUF LLP
Alan N. Salpeter (*pro hac vice*)
Vincent P. Schmeltz III (*pro hac vice*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL 60601-6710
Tel: 312-794-8000
Fax: 312-794-8100
*Attorneys for The Finish Line, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

ARGUMENT....................................................................................................................3

    A.    Finish Line's Counterclaims Do Not Arise Out of the Merger Agreement..............3

    B.    In Any Event, this Court Has Jurisdiction to Hear Finish Line's Counterclaims ....................................................................................................4

    C.    This Court Should Not Abstain from Ruling on Finish Line's Counterclaims .......................................................................................................8

CONCLUSION...............................................................................................................10

## TABLE OF AUTHORITIES

*BFS Retail and Commercial Operations, LLC v. Smith,*
  232 S.W.3d 756 (Tenn. Ct. App. 2007)..................................................................5

*Blanco v. Banco Indus. de Venezuela, S.A.,*
  997 F.2d 974 (2d. Cir. 1993)..............................................................................7

*Brillhart v. Excess, Ins. Co. of Am.,*
  316 U.S. 491 (1942)..........................................................................................8,9

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985)............................................................................................4

*Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.,*
  650 S.W.2d 378 (Tenn. 1983)..............................................................................8

*English Mountain Spring Water Co. v. Aidco Int'l, Inc.,*
  No. 3:07-cv-324, 2007 WL 3378344, (E.D. Tenn. Nov. 13, 2007)......................7

*Hudson Highlands Veterinary Med. Group, P.C. v. Veterinary Equip. & Tech. Supply, LLC,*
  390 F. Supp. 2d 393 (S.D.N.Y. 2005)..................................................................7

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52 (1995)..............................................................................................5

*Nat'l Union Fire Ins. Co. v. Turbi de Angustia,*
  05-cv-2068 (DLC), 2005 WL 2044930, (S.D.N.Y. Aug. 23, 2005)......................9

*Trioano v. Mardovich*
  No. 06 Civ. 523(LAP), 2006 WL 2320517, (S.D.N.Y. Aug. 10, 2006) ...............9

*Vladimir v. Cowperthwait,*
  No. 06 Civ. 5863 (JGK), 2007 WL 1964157, (S.D.N.Y. July 3, 2007) ...............9

*Wilson v. Moore,*
  929 S.W.2d 367 (Tenn. Ct. App. 1996)...............................................................5

## STATUTES

28 U.S.C. § 1332..................................................................................................4

28 U.S.C. § 1391(a) .............................................................................................4

## SECONDARY SOURCES

RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981) ............................................................5

18A FED. PRAC. & PROC. Juris. 2d § 4432 (2008)........................................................................3

## INTRODUCTION

In its Motion to Dismiss or Abstain, Genesco Inc. ("Genesco") attempts to wrest The Finish Line, Inc.'s ("Finish Line") Counterclaims from this Court's jurisdiction by arguing that the Counterclaims are based on a Merger Agreement[1] that is not properly before this Court. But Finish Line's Counterclaims only implicate the Merger Agreement to the extent necessary to determine the parties' rights under the Commitment Letter,[2] and this Court unquestionably has the authority to review and interpret the Merger Agreement in order to decide those rights.

UBS has alleged that the merger between Finish Line and Genesco would result in a "Combined Entity" that cannot issue a solvency certificate at a price of $54.50 per Genesco share – a question that arises under the Commitment Letter, not the Merger Agreement. Thus UBS claims the Commitment Letter is void or voidable. Each of Finish Line's Counterclaims addresses UBS's right to escape its obligation under the Commitment Letter.

To begin with, Finish Line asserts that, if the Combined Entity is insolvent at a price of $54.50 per Genesco share, the merger would result in one or more fraudulent transfers (Counts I & II) or an illegal distribution to shareholders (Count III). As a result, Finish Line's creditors could set the merger aside, making the transaction either illegal or unenforceable as a matter of law. According to UBS, this is the end of the calculation, and its obligation to fund the merger under the Commitment Letter terminates. (Complt. ¶¶35, 36 & 42).

---

[1] "Merger Agreement" shall refer to the Agreement and Plan of Merger by and among The Finish Line, Inc., Headwind, Inc. and Genesco Inc., dated as of June 17, 2007, attached as Exhibit A to UBS's Amended Complaint For Declaratory Judgment ("Complaint"). Capitalized terms relating to the Merger Agreement shall have the same meaning here as in the Merger Agreement.

[2] The term "Commitment Letter" shall refer to the Bank and Bridge Facilities Commitment Letter by and among UBS Securities LLC and UBS Loan Finance LLC (collectively "UBS") and Finish Line, dated June 17, 2007, attached as Exhibit B to the Complaint. All capitalized terms regarding the Commitment Letter shall have the same meaning here as they do in the Commitment Letter.

But, as Finish Line's remaining Counterclaims demonstrate, UBS's right to terminate the Commitment Letter is contingent on the transaction that Finish Line presents for closing. *See, e.g.*, Finish Line Ans. ¶35. Because the Merger Agreement requires Finish Line and Genesco to cooperate to meet the requirements of the Commitment Letter *and* to renegotiate a cash consideration at which the merger would be legally enforceable, Finish Line would not present a transaction to UBS to close at a price that would be illegal or unenforceable (and, thus, would not allow Finish Line to meet the conditions of the Commitment Letter). *See* Finish Line Ans. ¶¶11, 36-39. As a result, even if the Court finds that the Combined Entity would be insolvent at $54.50 per Genesco share, it cannot terminate the Commitment Letter because Finish Line retains the right to renegotiate and present UBS with a revised transaction that meets the terms of the Commitment Letter. *See, e.g.*, Finish Line Ans. ¶¶43-45.

In short, the Court does not need to "adjudicate issues that arise out of" the Merger Agreement to find that UBS cannot terminate the Commitment Letter in the event the Combined Entity is insolvent at $54.50 per Genesco share. Genesco Inc.'s Mem. of Law in Supp. of Mot. to Dismiss or Abstain ("Genesco Br.") at 2. The Court need only read the Merger Agreement – and is not being called upon to issue rulings with respect to the matters encompassed by the Tennessee litigation. This is certainly within the Court's authority. No provision in the Merger Agreement deprives the Court of such authority. Further, given that this is an action to determine the rights of the parties to the Commitment Letter that is certainly before this Court and that there is no active case in Tennessee addressing any of these issues, there is no need for the Court to abstain from ruling on any of Finish Line's Counterclaims. For each of these reasons, the Court should deny Genesco's motion to dismiss or, alternatively, to abstain.[3]

---

[3] In a letter to this Court dated February 5, 2008, Genesco asserted that Finish Line's counterclaims should be dismissed "based on the doctrines of *res judicata* [and] collateral estoppel." Genesco's instant

## ARGUMENT

### A.    Finish Line's Counterclaims Do Not Arise Out of the Merger Agreement

Each of Finish Line's Counterclaims is a response to UBS's claim that the Commitment Letter would be void or voidable if the Combined Entity were insolvent. Accordingly, any reference in the Counterclaims to the Merger Agreement is merely to show how UBS's rights under the Commitment Letter are dependent on the rights and obligations of the parties to the Merger Agreement. There is no need for the Court to adjudicate the rights and obligations of the parties to the Merger Agreement in order to rule on Finish Line's Counterclaims.

The first three counts of Finish Line's Counterclaims demonstrate that, if the Combined Entity is insolvent at a price of $54.50 per Genesco share, Finish Line's creditors could successfully attack the merger and set it aside, either as a fraudulent transfer or an unenforceable and unlawful dividend. These claims do not "arise out of or relate to the Merger Agreement" (Genesco Br. at 2), but arise out of the independent rights of Finish Line's creditors. *See* Finish Line Ans. ¶¶16-18, 24-26, 29-32. Genesco asserts that the fraudulent transfer which may result from the merger should the Combined Entity be insolvent "arises out of and relates to the Merger Agreement's closing." Genesco Br. at 4. This assertion is baseless. The Merger Agreement does not need adjudication by this Court to determine if the merger would be a fraudulent transfer.

Finish Line's remaining three claims (Counts IV, V, and VI) simply ask the Court to make determinations with respect to UBS's rights to terminate the Commitment Letter in the event the Court finds the Combined Entity to be insolvent. Specifically, Counts IV and V merely ask this Court to hold UBS to the terms of the Commitment Letter while Finish Line and

---

motion does not repeat, and thus waives, these defenses, which are, in any event, meritless. As Genesco concedes, the Tennessee Court's ruling is not a final judgment and preclusion only attaches to final judgments. *See e.g.*, 18A FED. PRAC. & PROC. Juris. 2d § 4432 (2008).

3

Genesco negotiate a purchase price at which the Merger Agreement would be enforceable. Moreover, Count VI asks for a declaration of the price per Genesco share at which the Combined Entity would be solvent. This count would preclude UBS from later asserting, under the Commitment Letter, that a new price at or below the price the Court sets is: (1) a material and adverse change (if it is an amendment to the Merger Agreement at all); or (2) that a Combined Entity formed as a result of the merger at that price is insolvent. Since these Counts impact nothing more than the rights of UBS and Finish Line under the Commitment Letter, the Court should disregard Genesco's motion.

**B.    In Any Event, this Court Has Jurisdiction to Hear Finish Line's Counterclaims**

The parties have acknowledged that this action is properly before this Court. As asserted in the Amended Complaint for Declaratory Relief and admitted in Defendants' Answers, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. *See* Complt. ¶14, Genesco Ans. ¶14, Finish Line Ans. ¶14.

Further, this Court has personal jurisdiction over Genesco. The same allegations that establish venue also establish minimum contacts and, thus, personal jurisdiction, over Genesco. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). In its Answer, Genesco admits that venue is proper pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events giving rise to this claim occurred in the Southern District of New York. Genesco Ans. ¶16.

Genesco nonetheless asserts that the Merger Agreement contains a forum selection clause that denies this Court's jurisdiction over Finish Line's Counterclaims.  This assertion is in complete contravention to the plain language of the Merger Agreement.[4]

Under firmly established principles of contract law in Tennessee and, indeed, throughout the United States, contract provisions must be construed in light of the contract as a whole.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("document should be read to give effect to all its provisions and to render them consistent with each other"); *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996) ("courts must examine the text of the contract in the context of the entire agreement"); *BFS Retail and Commercial Operations, LLC v. Smith*, 232 S.W.3d 756, 759 (Tenn. Ct. App. 2007) ("[i]t is well established that in interpreting a contract, the court should consider the entire contract"); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981).  Viewed in that light, neither Section 9.8 of the Merger Agreement nor any other provision of the Merger Agreement divests this Court of jurisdiction to entertain Finish Line's Counterclaims.

---

[4] Genesco asserts that Section 9.8 of the Merger Agreement is a forum selection clause.  Section 9.8 provides that "Each of the Company, Parent and Merger Sub irrevocably submits to the exclusive jurisdiction and venue of the courts of the State of Tennessee (or, in the case of any claims as to which the federal courts have exclusive subject matter jurisdiction, the Federal court of the United States of America) sitting in the City of Nashville in the State of Tennessee in any Action arising out of or relating to this Agreement, and hereby irrevocably agrees that all claims in respect of such action may be heard and determined in such court. Each of the Company, Parent and Merger Sub hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any Action with respect to this Agreement, (a) any claim that it is not personally subject to the jurisdiction of the above-named courts for any reason other than the failure to lawfully serve process, (b) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts . . . , and (c) to the fullest extent permitted by applicable Law, that (i) the Action in any such court is brought in an inconvenient forum, (ii) the venue of such Action is improper or (iii) this Agreement, or the subject matter hereof, may not be enforced in or by such courts. EACH OF THE COMPANY, PARENT AND MERGER SUB WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAWS, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

*No provision* of the Merger Agreement bears the label "Forum Selection Clause." This is for good reason: the Merger Agreement nowhere makes the Tennessee courts (or any other court) the exclusive forum for hearing all claims "arising out of" or "relating to" the agreement.

Genesco asserts that Section 9.8 of the Merger Agreement "vests jurisdiction" in the Tennessee state courts. Genesco Br. at 4. This assertion ignores the plain meaning of the provision. Section 9.8, which is titled "Submission to Jurisdiction: Waiver," is not a forum selection clause. The manifest purpose of Section 9.8 is to eliminate possible personal jurisdiction and venue objections from being raised by a party in an otherwise proper action brought in a Tennessee state court. To that end, it specifically enumerates four categories of waiver. Each party to the contract prospectively waives (1) personal jurisdiction objections (§ 9.8(a) and § 9.8(b)); (2) forum *non conveniens* objections (§ 9.8(c)(i)); (3) venue objections (§ 9.8(c)(ii)); and (4) enforcement objections (§ 9.8(c)(iii)). The provision goes on to waive any right to demand a jury trial.

Tellingly, with the exception of the jury trial waiver – which is not enumerated with a separate lower case letter and is printed in all capital letters – each of the waivers preceded by a lower case letter (namely, (a), (b), and (c)), operates in the context of a lawsuit in a Tennessee court itself. In substance, Section 9.8 provides for the waiver by prospective *defendants* of certain objections in the event of a lawsuit that is otherwise properly brought in the Tennessee court in Nashville (or in the case of a lawsuit within the exclusive subject matter of the federal courts, in the appropriate federal district court). The agreement has no bearing whatsoever on whether a party, effectively acting as a *plaintiff*, can bring a claim – whether by an original action or as a counterclaim or cross-claim – in a forum outside of Tennessee.

Two key features of Section 9.8 confirm that the section is not a forum selection clause. First, Section 9.8 employs permissive language. Namely, it provides that claims under the agreement *"may be heard."* Merger Agreement § 9.8 (emphasis added). Section 9.8 does not provide that claims "shall" or "must" be heard. Both this Court and the courts of Tennessee place great emphasis on the distinction between permissive and mandatory language in determining whether a contract divests the court of what would otherwise be concurrent jurisdiction to hear a claim. *See Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d. Cir. 1993); *Hudson Highlands Veterinary Med. Group, P.C. v. Veterinary Equip. & Tech. Supply, LLC*, 390 F. Supp. 2d 393, 394 (S.D.N.Y. 2005); *English Mountain Spring Water Co., v. Aidco Int'l, Inc.*, No. 3:07-cv-324, 2007 WL 3378344, at *2 (E.D. Tenn. Nov. 13, 2007).

Second, neither Section 9.8 nor any other provision of the Merger Agreement includes any prohibitory language stating that parties "shall not," "may not," or "cannot" bring claims in other fora. This omission was clearly deliberate, as Section 9.8 contemplates the possibility that a defendant may bring a counterclaim in a Tennessee court action itself. Section 9.8 provides that, should a defendant bring a counterclaim in the Tennessee court action, that defendant cannot include an objection based on one of the waived grounds of personal jurisdiction, venue or enforcement. However, Section 9.8 does not state that a defendant to the Tennessee action *must* bring any claims it has against the plaintiff by way of a counterclaim in the Tennessee action.

Genesco essentially rests its entire argument for its conclusion that Section 9.8 is a forum selection clause on the phrase "exclusive jurisdiction and venue of the [Tennessee] courts." Standing alone, perhaps this language could be read as a forum selection clause. However, the language *does not stand alone.* Read in context, it is clear that the jurisdiction and venue of the

7

Tennessee courts are – by operation of the specifically enumerated waivers – to operate "exclusive" of what would otherwise be the concurrent jurisdiction of other state and federal fora *for the very claims asserted by the plaintiff in a Tennessee action.*

Absent Section 9.8, a defendant sued in Tennessee court could seek to have the plaintiff's claims heard in another court – for example, by objecting to personal jurisdiction or moving for dismissal on the grounds of forum *non conveniens*. The Tennessee courts, in other words, would have concurrent jurisdiction over the plaintiff's claims were it not for Section 9.8. Section 9.8 renders that jurisdiction exclusive in the plaintiff's original action in Tennessee court. However, as the provision and the Merger Agreement *as a whole* make manifestly clear, it in no way forecloses other parties from bringing otherwise proper claims – whether as original actions or by the way of counterclaims or cross-claims – in otherwise proper fora.

Even if it is determined that Section 9.8 is a forum selection clause, this Court is not bound by such clause and may retain jurisdiction for reasons such as judicial economy or avoidance of ineffective relief. *See Dyersburg Machine Works, Inc. v. Rentenbach Eng'g Co.,* 650 S.W.2d 378, 380 (Tenn. 1983). This Court can and should decline to enforce such clause because an adjudication of Finish Line's Counterclaims is necessary to completely decide UBS's obligations under the Commitment Letter. Requiring Finish Line to re-file its claims in the Tennessee Court would result in a piecemeal approach to litigation in which time is of the essence.

C.    **This Court Should Not Abstain from Ruling on Finish Line's Counterclaims**

Genesco's attempt to persuade this Court that it should abstain from ruling on Finish Line's Counterclaims rests on the faulty premise that there are two on-going litigations in which the same issues are currently being litigated. Genesco quotes the seminal language in *Brillhart v. Excess, Ins. Co. of America,* 316 U.S. 491 (1942), to support its assertion – "[o]rdinarily it would

8

be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues . . . ." Genesco Br. at 7, (*quoting Brillhart*, 316 U.S. at 495). The invocation of *Brillhart* is a non sequitur given the current posture of this action.

The Finish Line Counterclaims are not the subject of litigation in the Tennessee Court or any forum other than this Court. As matters now stand, the Tennessee Court is simply awaiting this Court's ruling. The concerns in *Brillhart* that there will be "gratuitous interference with the orderly and comprehensive disposition of a state court litigation" are not the concerns presented in this action. *Id.* at 495. Instead, requiring Finish Line to re-file its claims in the Tennessee Court would undermine judicial economy by creating two active fora for litigation. Re-filing the claims, in fact, would frustrate the policy of *Brillhart* to encourage judicial economy because Finish Line's Counterclaims arise from UBS's obligations *under the Commitment Letter.* Claims relating to the Commitment Letter have not been before the Tennessee Court and it makes no sense to file such claims there.

Accordingly, there is no risk that the litigations would be duplicative or that inconsistent decisions would result. *See Vladimir v. Cowperthwait*, No. 06 Civ. 5863 (JGK), 2007 WL 1964157, at *2 (S.D.N.Y. July 3, 2007) (holding that there was no duplication because "although the state action is based on many of the same underlying facts as the federal action, the two cases present non-identical causes of action"). This Court in *Trioano v. Mardovich* recognized that with two identical actions, the federal and state court would be in a "race to *res judicata.*" *Trioano v. Mardovich*, No. 06-cv-523 (LAP), 2006 WL 2320517, at *4 (S.D.N.Y. Aug. 10, 2006) (citing *Nat'l Union Fire Ins. Co. v. Turbi de Angustia*, 05-cv-2068 (DLC), 2005 WL 2044930, *4 (S.D.N.Y. Aug. 23, 2005). That risk is completely absent here. Far from racing

9

with this Court, the Tennessee Court is standing still after expressly leaving this Court to decide the remaining issues. Jan 2 Order at 2, Jackson Decl., Ex. 11. Finish Line requests only that this Court decide issues that are necessary to a determination of Finish Line's rights under the Commitment Letter, not Genesco's rights under the Merger Agreement. Therefore, this case does not present the risk of duplicative decisions.

Genesco requests that the Court abstain from ruling on the merger price and Finish Line's Count IV (requesting a declaration that UBS's obligations under the Commitment Letter do not terminate if the Combined Entity is insolvent at $54.50 per Genesco share). Genesco Br. at 9. Accordingly, by asking for abstention, Genesco effectively concedes that Count IV is properly before this Court and should not be dismissed. *Id.* Finish Line therefore requests that this Court not abstain from reaching resolution on Count IV or any other Counterclaim. Consideration by this Court of such issues is necessary to a determination of *UBS's* and *Finish Line's* rights and obligations under the Commitment Letter. Genesco is not a party to the Commitment Letter, and accordingly, should not be allowed to interfere with this Court's determination of Finish Line's Counterclaims arising out of the Commitment Letter.

## CONCLUSION

For all the foregoing reasons, Finish Line respectfully requests that the Court deny Genesco's Motion to Dismiss or Abstain in its entirety.

DATED: February 9, 2008
New York, NY

Respectfully submitted,

THE FINISH LINE, INC.

By:    s/Harvey Kurzweil

DEWEY & LEBOEUF LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

DEWEY & LEBOEUF LLP
Alan N. Salpeter (*pro hac vice*)
Vincent P. Schmeltz III (*pro hac vice*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL 60601-6710
Tel: 312-794-8000
Fax: 312-794-8100
*Attorneys for The Finish Line, Inc.*

11