UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS SECURITIES LLC, and<br>UBS LOAN FINANCE LLC,<br><br>        Plaintiffs/Counter-Defendants,<br><br>v.<br><br>THE FINISH LINE, INC.,<br><br>        Defendants/Counter-Plaintiff,<br><br>and<br><br>GENESCO INC.,<br><br>        Defendant. | No. 07 Civ. 10382 (LAP) |

**PLAINTIFFS UBS SECURITIES LLC AND UBS LOAN FINANCE LLC'S
OPPOSITION TO GENESCO INC.'S MOTION TO DISMISS OR ABSTAIN**

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................................... 1

I.   ALL OF UBS'S CLAIMS ARISE UNDER THE COMMITMENT LETTER AND, UNDER ITS FORUM SELECTION CLAUSE, MUST BE HEARD IN NEW YORK ................................................................................................................. 3

II.  THE COURT SHOULD NOT ABSTAIN FROM RULING ON UBS'S CLAIMS .......... 5

   A.   The New York and Tennessee Actions Are Not "Parallel" ...................................... 5

   B.   Under the Remaining Wilton Factors, Abstention Is Inappropriate ......................... 7

III. GENESCO'S REQUEST TO ADJUDICATE ITS PROPOSED REVISION TO COUNT VI OF THE COUNTERCLAIMS SHOULD BE DENIED ................................. 8

IV.  THE COURT SHOULD NOT DEFER CONSIDERATION OF COUNTS IV-VI OF THE COUNTERCLAIMS TO THE TENNESSEE COURT, AND INSTEAD SHOULD DISMISS THOSE COUNTS PURSUANT TO UBS'S MOTION ................... 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Boeing Co. v. EgyptAir*,
  392 F. Supp. 2d 461 (E.D.N.Y. 2005) ................................................................................. 8

*Carlin Equities Corp. v. Offman*,
  No. 07 Civ. 359 (SHS), 2007 WL 2388909 (S.D.N.Y. Aug. 21, 2007) ............................... 8

*Congress Talcott Corp. v. Roslin*,
  No. 95 Civ. 7698 (LAP), 1996 WL 499337 (S.D.N.Y. Sept. 4, 1996) ................................ 6

*Epling v. Golden Eagle/Satellite Archery, Inc.*,
  17 F. Supp. 2d 207 (W.D.N.Y. 1998) .................................................................................. 5

*Fadem v. Ford Motor Co.*,
  352 F. Supp. 2d 501 (S.D.N.Y. 2005) ................................................................................. 8

*Gardner v. Weisman*,
  No. 06 Civ. 6003 (WHP), 2007 WL 30068 (S.D.N.Y. Jan. 5, 2007) ............................. 6, 8

*Genesco, Inc. v. The Finish Line, Inc. et al.*,
  No. 07-2137-II(III) (20th Div. Tenn. Chancery Ct.) ............................................................ 1

*Jacobson v. Peat, Marwick, Mitchell & Co.*,
  445 F. Supp. 518 (S.D.N.Y. 1977) ...................................................................................... 8

*Jaffee v. Soc'y of New York Hosp.*, No. 06 Civ. 3623 (LAP),
  1997 WL 685347 (S.D.N.Y. Nov. 4, 1997) ................................................................ 5, 7, 8

*Kingsway Fin. Servs., Inc. v. PWC, LLP*,
  420 F. Supp. 2d 228 (S.D.N.Y. 2005) ................................................................................. 5

*Nat'l Union Fire Ins. Co. v. Karp*,
  108 F.3d 17 (2d Cir. 1997) .................................................................................................. 5

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
  15 F.3d 371 (4th Cir. 1994) ................................................................................................. 7

*Peerless Ins. Co. v. Disla*,
  999 F. Supp. 261 (D. Conn. 1998) ...................................................................................... 8

*Pope v. Rice*,
  No. 04 Civ. 4171 (DLC), 2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) ............................ 10

*Troiano v. Mardovich*,
    No. 06 Civ. 523 (LAP), 2006 WL 2320517 ............................................................................7

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ..............................................................................................................7

*Youell v. Exxon Corp.*,
    74 F.3d 373 (2d Cir. 1996) ...................................................................................................8

The entire premise of Genesco's motion—that some of UBS's claims arise under the Merger Agreement, and not the Commitment Letter—is wrong. Each of UBS's claims is based upon express terms of the Commitment Letter, and thus properly before this Court under an indisputably enforceable forum selection clause. UBS's right to litigate its claims here does not disappear simply because the Merger Agreement, to which UBS is not a party, may contain terms tangential to Finish Line's obligations under the Commitment Letter. UBS did not waive its rights to proceed in New York by intervening in the Tennessee Action: UBS repeatedly emphasized its intention to pursue its rights under the Commitment Letter here, as both Genesco and the Tennessee Court have acknowledged. There is thus no basis for this Court to defer consideration of UBS's claims to the Tennessee court. Genesco's motion should be denied.

## BACKGROUND

On September 21, 2007, Genesco filed an action against Finish Line in the Tennessee Chancery Court, seeking specific performance of the Merger Agreement. The action was filed in Tennessee pursuant to the Merger Agreement's forum selection clause. UBS is not a party to that Agreement. However, because Genesco's financial turmoil exposed the bank to considerable financial risk, UBS intervened in the Tennessee Action for a very specific and limited purpose: "to gather more information about Genesco's recent decline, and, if necessary, to determine whether Genesco has experienced a [Material Adverse Effect ("MAE")]."[1] (Declaration of Alexandra A.E. Shapiro, dated Feb. 9, 2008 ("Shapiro Decl.") Ex. 1: *Genesco,*

---

[1] Genesco initiated suit in Tennessee against Finish Line to determine whether an MAE had occurred. After Finish Line brought UBS into that action by filing a third-party complaint, UBS consented to litigating in Tennessee the issues concerning the substantially similar MAE clause contained in the Commitment Letter. UBS, however, expressly reserved its right to litigate all other aspects of the Commitment Letter in this Court. UBS does not seek to relitigate the MAE issue in this Court, and is pursuing an appeal in Tennessee.

1

*Inc. v. The Finish Line, Inc. et al.*, No. 07-2137-II(III) (20th Div. Tenn. Chancery Ct.), Memorandum in Support of Motion to Intervene, dated Oct. 10, 2007, at 7.)

As a result of information learned through discovery, UBS and Finish Line alleged not only that Genesco had suffered an MAE, but also that Genesco had committed fraud and that, as a result of Genesco's violation of federal securities laws, conditions to closing in the Merger Agreement had failed. Those three issues under the Merger Agreement – and only those three issues – were then tried by the Tennessee Court. Significantly, no issues under the Commitment Agreement were tried and no resulting order of the Tennessee Court orders UBS to do a single thing. (Shapiro Decl. Ex. 2: Memorandum and Order, dated Dec. 27, 2007 ("December 27 Order").) No other issues were litigated in Tennessee.

As Genesco concedes, the Commitment Letter's forum selection clause requires that all claims related to the Commitment Letter be brought in New York.[2] UBS has explicitly and consistently preserved its right to litigate issues arising under the Commitment Letter here. As UBS explained to the Tennessee Court:

> Throughout this litigation, UBS consistently has maintained that it is before this Court only to litigate issues of a MA[E] and fraud. ***UBS also consistently has reserved its right to have insolvency and other closing conditions to the parties' Commitment Letter adjudicated in New York pursuant to the parties' exclusive jurisdiction agreement***.

(Shapiro Decl. Ex. 3: UBS's Response to Genesco's Motion to Clarify, dated Nov. 28, 2007 ("Response to Motion to Clarify"), at 4 n.3 (emphasis supplied).). Genesco never objected to UBS participating in the Tennessee Action on this limited basis.

Moreover, when the Tennessee court ordered specific performance of the merger, it held only that "all conditions *to the Merger Agreement* have been met." (December 27 Order at 3 (emphasis supplied).) The court expressly reserved any and all determinations under the

---

[2]  *See* Genesco Inc.'s Memorandum of Law in Support of Motion to Dismiss or Abstain, dated Feb. 6, 2008 ("Genesco Br.") at 1.

2

Commitment Letter for adjudication in New York. Genesco does not dispute this, instead conceding that "issues relating to the rights and obligations of UBS and Finish Line under the Commitment Letter are properly before [the] Court." (Genesco Br. at 2-3.)

The Tennessee court withheld final judgment pending the outcome of the New York proceedings. (*See* Shapiro Decl. Ex. 4: Order, dated Jan. 2, 2008 (the "Jan. 2 Order"), at 1-2.) Contrary to Genesco's assertions, the court stated that the New York action would involve "UBS's insolvency *and other claims* . . ." (Shapiro Decl. Ex. 5: Memorandum and Order, dated Nov. 29, 2007, at 5 (emphasis supplied).) The court expressed no desire to decide any of the claims asserted by UBS here, instead reserving for its consideration following a ruling by this Court only one issue not raised here—whether the doctrine of frustration of commercial purpose would excuse *Finish Line's* performance under the Merger Agreement. (Jan. 2 Order at 2.)

## I. ALL OF UBS'S CLAIMS ARISE UNDER THE COMMITMENT LETTER AND, UNDER ITS FORUM SELECTION CLAUSE, MUST BE HEARD IN NEW YORK

Contrary to Genesco's argument, each of UBS's claims, including ¶¶ 42(b), (c) and (i) of UBS's Amended Complaint, is based upon the Commitment Letter and not the Merger Agreement. Because UBS's claims arise directly from Finish Line's failure to satisfy the Commitment Letter's terms and conditions, they must be adjudicated in New York pursuant to the Commitment Letter's forum selection clause.[3] Finish Line has never challenged the forum selection clause and, as Genesco acknowledges, such mandatory forum selection clauses are presumptively valid. (Genesco Br. at 3-4.)

Paragraph 42(b) seeks a declaratory judgment that UBS's obligation to provide financing under the Commitment Letter is void or voidable because "[c]onsummation of the loan

---

[3] For substantially the same reasons, UBS also opposes Genesco's request that the Court dismiss or abstain from ruling on Counts I-III of Finish Line's Counterclaims. As explained in UBS's Memorandum of Law in support of its motion (at 2), those counterclaims arise under the Commitment Letter.

3

transactions and/or the merger will violate applicable fraudulent transfer statutes." Paragraph 42(c) alleges that "[c]onsummation of the loan transactions and/or the merger will constitute an illegal distribution to shareholders." UBS alleges that the existence of a fraudulent transfer or an illegal distribution would violate conditions to closing under the **Commitment Letter**, which specifically provides: "The transactions contemplated by the Commitment Letter shall be in compliance, in all material respects, with all applicable Canadian and U.S. federal and state laws and regulations." (Shapiro Decl. Ex. 6: Commitment Letter, Annex IV ¶ 3.) Thus, if the fraudulent transfer and corporate governance statutes are violated as alleged in ¶ 42(b)-(c), Finish Line will have failed the Commitment Letter's express conditions precedent.

Likewise, the allegations in ¶ 42(i) arise directly from Finish Line's material breach of the Commitment Letter. Paragraph 42(i) alleges that "the specified amount of financing, subject to applicable terms and conditions, no longer is sufficient to complete the transaction." The Commitment Letter sets forth an exclusive list of uses for the $1.6 billion in financing to which UBS has committed (subject to certain terms and conditions). Those uses are: (1) to fund the merger; (2) to repay certain of Finish Line's and Genesco's debts; (3) to pay fees, commissions and expenses associated with the financing and the merger; and (4) to provide Finish Line's ongoing working capital requirements. (Commitment Letter at 1.) The Commitment Letter further provides that "[n]o other financing will be required" for these enumerated uses. (*Id.* at 2.) UBS alleges that the latter provision has been violated because Finish Line will require more than $1.6 billion in financing for the specified uses.

Because these claims arise from the Commitment Letter, its forum selection provision applies to this action. Genesco's suggestion that UBS waived its right to enforce the clause by participating in the Tennessee Action is belied by the record. UBS expressly limited its participation in the Tennessee Action as an interested party to three claims relating to the

4

Merger Agreement, none of which is raised here. UBS did not waive its rights under the Commitment Letter's forum selection clause in Tennessee—to the contrary, UBS clearly, consistently and emphatically preserved these rights, without objection from Genesco or from the court.

## II. THE COURT SHOULD NOT ABSTAIN FROM RULING ON UBS'S CLAIMS

### A. The New York and Tennessee Actions Are Not "Parallel."

The primary consideration in determining whether abstention is appropriate is whether the respective state and federal court proceedings are "parallel." *See, e.g., Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997); *Jaffee v. Soc'y of New York Hosp.*, No. 06 Civ. 3623 (LAP), 1997 WL 685347, at *3 (S.D.N.Y. Nov. 4, 1997); *Epling v. Golden Eagle/Satellite Archery, Inc.*, 17 F. Supp. 2d 207, 210-11 (W.D.N.Y. 1998). Genesco's failure to address the issue is not surprising, because this action is not "parallel" to the Tennessee Action. Actions are not parallel unless "the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co.*, 108 F.3d at 22 (emphasis supplied); *Jaffee*, 1997 WL 685347, at *3.

The two proceedings here are plainly not the same. UBS's claims in ¶¶ 42(b), (c) and (i) allege breach and/or violation of conditions in the Commitment Letter, and Genesco admits that "issues relating to the rights and obligations of UBS and Finish Line under the Commitment Letter are properly before th[e] [New York] Court." (Genesco Br. at 2-3.) Indeed, the Commitment Letter's forum selection clause *required* UBS to bring these claims in New York. As this Court has held, abstention is inappropriate where claims asserted in the federal action are exclusive to that forum. *Jaffee*, 1997 WL 685347, at *3; *cf. Kingsway Fin. Servs., Inc. v. PWC, LLP*, 420 F. Supp. 2d 228, 235-36 (S.D.N.Y. 2005).

Depending on the arguments actually made by the parties, resolving claims arising under the Commitment Letter might entail some ancillary analysis of the Merger Agreement, but that does not provide a valid basis for abstention. In evaluating ¶¶ 42(b), (c) and (i), the Court must ultimately determine whether the terms and conditions of the Commitment Letter have been violated. Where the agreement that is "ultimately [at] issue" is properly—here, exclusively—the province of the federal court, and the interpretation of a separate agreement before the state court is subordinate to that ultimate issue, the federal and state court proceedings may not be considered parallel. *See Gardner v. Weisman*, No. 06 Civ. 6003 (WHP), 2007 WL 30068, at *2-3 (S.D.N.Y. Jan. 5, 2007) (actions not parallel where interpretation of partnership agreement was "ultimate issue," even though construction of will by Surrogate's Court was relevant).[4]

Even if UBS's claims did not arise exclusively from the Commitment Letter, abstention would still be inappropriate. UBS is not seeking "a second bite at the apple," as Genesco suggests (at 8). There is *no* overlap between the claims asserted in Tennessee and those asserted here. The trial in Tennessee involved only three issues: fraudulent inducement, securities fraud, and whether Genesco has suffered an MAE. None of those issues is before this Court. The Tennessee court expressly declined to address the claims asserted by UBS here, and deferred to this Court on the issues of "insolvency *and other claims*" asserted in this action.

---

[4]   For this reason, *Congress Talcott Corp. v. Roslin*, No. 95 Civ. 7698 (LAP), 1996 WL 499337 (S.D.N.Y. Sept. 4, 1996) (cited Genesco Br. at 10), is plainly distinguishable. The plaintiff there sued two guarantors under the same contract—one in federal court and the other in state court. This Court held that the state and federal court actions were "virtually identical," with "no substantive or significant procedural differences." 1996 WL 499337, at *3. Here, by contrast, the federal proceeding involves claims under one agreement, and the state proceeding involved a separate set of claims under a different agreement. *See Garder*, 2007 WL 30068, at *3 (distinguishing *Congress Talcott* on similar grounds).

6

This Court's ruling in *Jaffee* provides an instructive analogy. The *Jaffee* plaintiff brought certain medical malpractice claims in New York state court. The trial court dismissed some of the claims as time-barred. After its ruling was affirmed on appeal, Plaintiff sought a federal declaratory judgment that the 10-year statute of limitations violated the U.S. Constitution. Defendants moved to dismiss the action, requesting that the Court abstain in light of the state court proceedings. 1997 WL 685347, at *1-2. This Court found that "[a]lthough there is an identity of parties in the federal and state court proceedings, the issues and forms of relief sought are not identical," and declined to abstain. *Id.* at *3. Similarly, the parties in this action are nominally the same, but the issues raised are entirely different. This action is not "parallel" to the Tennessee Action.

### B. Under the Remaining *Wilton* Factors, Abstention Is Inappropriate.

Even if the actions were parallel, abstention would be inappropriate under the remaining factors derived from *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). This Court has read *Wilton* to set forth four non-exclusive factors: (1) "the scope of the pending state court proceeding and the nature of defenses open there"; (2) "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding"; (3) "whether necessary parties have been joined"; and (4) "whether such parties are amenable to process in that proceeding" (the "*Wilton* factors"). *Jaffee*, 1997 WL 685347, at *2 (quoting *Wilton*, 515 U.S. at 283); *see also Troiano v. Mardovich*, No. 06 Civ. 523 (LAP), 2006 WL 2320517, at *4.[5]

First, the Tennessee court has explicitly reserved for this Court the claims asserted by UBS. *See, e.g., Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 378-79 (4th Cir.

---

[5] Genesco lists several additional factors, most weighing against abstention. For instance, Genesco urges this Court to consider "choice of law" in determining whether to abstain, but the Commitment Letter, under which all of UBS's claims arise, is governed by New York law. The allegation of "forum shopping" is likewise misplaced. UBS was contractually obligated to assert the Commitment Letter claims in New York.

1994) (no abstention where federal action involved issues outside the scope of the state action); *Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 263 (D. Conn. 1998).[6] Second, UBS's claims under the Commitment Letter cannot be satisfactorily adjudicated in Tennessee. This Court is uniquely equipped to adjudicate claims arising from a complex debt agreement governed by New York law, *cf. Boeing Co. v. EgyptAir*, 392 F. Supp. 2d 461, 477-78 (E.D.N.Y. 2005), especially because of the forum selection clause, *see Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996) (no abstention where federal action involved issues exclusive to the federal forum); *Carlin Equities Corp. v. Offman*, No. 07 Civ. 359 (SHS), 2007 WL 2388909, at *4 (S.D.N.Y. Aug. 21, 2007) (same). All parties to this action are amenable to process and have been joined in the Tennessee proceeding, but identity of the parties does not compel abstention. *See Gardner*, 2007 U.S. Dist. LEXIS 280, at *7-9 (declining to abstain despite identity of parties); *Jaffee*, 1997 WL 685347, at *3 (same).

### III. GENESCO'S REQUEST TO ADJUDICATE ITS PROPOSED REVISION TO COUNT VI OF THE COUNTERCLAIMS SHOULD BE DENIED

Genesco asserts that it "would not object" to Finish Line seeking a declaration of the debt level at which the combined entity would be insolvent. (Genesco Br. at 6.) However, neither Finish Line nor Genesco has asserted a claim seeking this relief, and "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005); *accord Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

Significantly, even were the Court to consider Genesco's non-pleaded proposal, both Genesco and Finish Line plainly misread the "up to" language in the Commitment Letter (Genesco Br. at 6). The use of the phrase "up to" with respect to certain categories of debt was

---

[6] Because this action does not overlap with the Tennessee Action, it is irrelevant that the Tennessee claim was filed first.

*not* intended to give Finish Line a blank check to borrow any amount it chooses up to the stated maximums. Instead, the use of the phrase "up to" acknowledges the right to shift the fixed total amount of debt *between* the various traunches of debt financing – *e.g.*, at UBS's option depending on market conditions.[7]

As another example of why Genesco misunderstands the "up to" language, the Commitment Letter provides for "the issuance by Borrower of up to $700.0 million aggregate gross proceeds of unsecured senior notes (the "Notes") . . . or, in the event the Notes are not issued at the time the Transactions are consummated, borrowings by Borrower of up to $700.0 million under a senior unsecured credit facility (the "Bridge Facility") . . . ." (Commitment Letter at 2.) This provision does not contemplate that there will be a fixed amount of either the Notes or the Bridge Facility. Instead, financing would be extended under the Bridge Facility only to the extent that the Notes are not issued. This need for flexibility explains why the Commitment Letter provides that UBS will loan "up to" $700 million under the Bridge Facility.

Similarly, the financing is structured such that any existing debt of Genesco and Finish Line would be wiped out and replaced by the facilities in the Commitment Letter. (Commitment Letter at 2.) As of the signing date of the Commitment Letter, the indebtedness of Genesco and Finish Line stood at "approximately $84.3 million." (*Id.* at 1.) Those debt levels, however, were expected to fluctuate slightly between signing and closing; so the dollar amount of the financing vehicle used to retire them also was made subject to "up to" phrasing.

Although provisions in the Commitment Letter expressly anticipate the possibility of variation in the funding ratio between the various debt vehicles, no section of the Commitment Letter anticipates any change in the overall debt level as a result of any change in price. Genesco is simply misreading this language in the Commitment Letter.

---

[7]   *See* Shapiro Decl. Ex. 7: Bank and Bridge Facilities Fee Letter, dated June 17, 2007, at 3.

IV.  **THE COURT SHOULD NOT DEFER CONSIDERATION OF COUNTS IV-VI OF THE COUNTERCLAIMS TO THE TENNESSEE COURT, AND INSTEAD SHOULD DISMISS THOSE COUNTS PURSUANT TO UBS'S MOTION**

UBS has moved to dismiss Counts IV-VI of Finish Line's Counterclaims. The Court should grant UBS's Rule 12(b)(6) motion and dismiss them on the merits under the Commitment Letter. As set forth in UBS's motion, the Court can and should do so without any need to resolve Finish Line's arguments regarding the Severability Clause of the Merger Agreement. *See, e.g., Pope v. Rice*, No. 04 Civ. 4171 (DLC), 2005 WL 613085, at *5 (S.D.N.Y. Mar. 14, 2005) (declining to reach issues of jurisdiction and venue where motion to dismiss could be granted for failure to state a claim).

## CONCLUSION

For the reasons set forth above, Genesco's motion should be denied.

Dated:  February 9, 2008
        New York, New York

>                                Respectfully submitted,
>
>                        By:  *[signature]*
>                             Alexandra A.E. Shapiro (AS-4816)
>                             Joseph J. Frank (JF-0669)
>                             J. Christian Word (*pro hac vice*)
>                             Jennifer L. Heil (JH-4290)
>                             Eric S. Olney (EO-7324)
>                             Latham & Watkins LLP
>                             885 Third Avenue
>                             New York, NY 10022
>                             (212) 906-1316
>
>                             *Attorneys for Defendants UBS Securities LLC and UBS Loan Finance LLC*