UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

UBS SECURITIES LLC and
UBS LOAN FINANCE LLC,                                          07-CV-10382
                                                              (LAP/MHD)
                                    Plaintiffs,

         v.

THE FINISH LINE, INC and
GENESCO INC.,
                                    Defendants.

_____

### DECLARATION OF JONATHAN M. SHAW IN SUPPORT OF
### DEFENDANT GENESCO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to 28 U.S.C. §1746, Jonathan M. Shaw, declares as follows:

1.      I am a partner in the law firm of Boies, Schiller & Flexner LLP, attorneys for

Genesco Inc. ("Genesco"), a defendant in the above-captioned action.  I make this declaration

based on my personal knowledge and in support of Genesco's Reply in support of its motion to

dismiss.

2.      On September 21, 2007, Genesco commenced an action in the Chancery Court

for the State of Tennessee, 20th Judicial District, Davidson County, seeking specific performance

of the Merger Agreement and expedited consideration of the dispute.  *Genesco Inc. v. The Finish*

*Line, Inc., et al*, Civil Action No. 07-2137-II(III) (September 21, 2007), (the "Tennessee Action").

3.      On September 28, 2007, Defendants The Finish Line, Inc. and Headwind, Inc.

(collectively "Finish Line") filed an Answer, Counterclaim, and Third-Party Claim for

Declaratory Relief, which stated in part that "In Section 9.8 of [the Merger Agreement], Genesco,

Finish Line and Headwind agreed that any action arising out of or relating to that agreement

could be brought solely in a Tennessee state or federal court." A true and correct copy of Finish

Line's Answer, Counterclaim, and Third-Party Claim for Declaratory Relief in the Tennessee

Action is attached hereto as Exhibit 1.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on February 11, 2008

_____

Jonathan M. Shaw



IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
20TH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| GENESCO INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE FINISH LINE, INC., *et al.*, | ) |
| | ) |
| Defendants, | )    Civil Action No. 07-2137-II |
| | ) |
| v. | ) |
| | ) |
| UBS SECURITIES LLC, and | ) |
| UBS LOAN FINANCE LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

### DEFENDANTS' ANSWER, COUNTERCLAIM, AND THIRD-PARTY CLAIM FOR DECLARATORY RELIEF

Defendants The Finish Line, Inc. ("Finish Line") and Headwind, Inc. ("Headwind"), for

their Answer to the Complaint of Genesco Inc. ("Genesco") in this matter state as follows:

### First Defense
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense
### (Answer)

1.      Admitted upon information and belief.

2-3.    Admitted.

4.      Section 9.8 of the Merger Agreement speaks for itself and Defendants deny all

allegations in Paragraph 4 inconsistent with the terms of that section.

5.      Defendants admit that Finish Line, Headwind and Genesco entered into the June 17, 2007, Merger Agreement, which document speaks for itself. Defendants admit that, as part of the consideration for the merger, Finish Line agreed to pay $54.50 per outstanding share of Genesco common stock, but deny any implication that was the entire consideration. All remaining allegations in Paragraph 5 inconsistent with the foregoing are denied.

6.      Defendants deny the allegations in Paragraph 6 and further aver that the quoted language therein is set forth out of context.

7.      Defendants admit that Finish Line has expressed concern and disappointment regarding Genesco's poor financial performance in the retail marketplace since execution of the Merger Agreement and Genesco's failure to provide information and cooperate as it agreed to do in the Merger Agreement.  All allegations in Paragraph 7 inconsistent with the foregoing are denied.

8.      Defendants deny the allegations in Paragraph 8 and further aver that:

(i)      The Finish Line has not been "slow-walking" the financing transaction; rather Genesco has failed to cooperate in a prompt manner with Finish Line with respect to the provision of information required for the draft debt offering memorandum, which is a condition to financing and other requested information.

(ii)      Finish Line has never taken the position that Genesco has experienced a Company Material Adverse Effect under Section 3.1 of the Merger Agreement; however, Finish Line has advised Genesco that UBS has expressed such concerns and Finish Line has indicated that it has taken UBS's concerns seriously and that Finish Line wants to understand the reasons behind Genesco's diminishing financial performance since signing the Merger Agreement; and

(iii)      Finish Line has notified Genesco that its failure to comply with its obligations to provide information and access to personnel requested by Finish Line constitutes a breach of the Merger Agreement.

9.      Defendants admit that Finish Line always has said that it will fulfill its obligations in accordance with the terms of the Merger Agreement, the terms of which Genesco currently is in breach of by its failure to provide financial information and full cooperation to Defendants.

All allegations, characterizations or hyperbole in Paragraph 9 inconsistent with the foregoing, including the allegations that Finish Line presently is obligated to close the transaction, are denied.

10.     Defendants are without sufficient knowledge or information to admit or deny Genesco's purported motivations for instituting this litigation as set forth in the first sentence of Paragraph 10, but deny that Defendants have breached the Merger Agreement or that Genesco is entitled to any relief. Defendants admit the second sentence of Paragraph 10 but deny that Genesco is entitled to any relief in this action. The remaining allegations of Paragraph 10 are denied, including but not limited to the allegation that the deadline for the required closing was September 19, 2007.

11-17.     Defendants are without sufficient knowledge or information to admit or deny the allegations set forth in Paragraphs 11-17.

18.     Admitted.

19.     Defendants admit upon information and belief the first two sentences of Paragraph 19. Defendants are without sufficient knowledge or information to admit or deny the allegations set forth in the last sentence of Paragraph 19.

20-21.  Admitted.

22.     Defendants admit the first sentence of Paragraph 22 upon information and belief. Defendants admit that on June 18, 2007, Finish Line and Genesco issued a joint press release, a copy of which is attached as Exhibit 1 to the Complaint and speaks for itself. All allegations in Paragraph 22 inconsistent with or contrary to the terms of such press release are denied.

23.     Defendants admit that the Merger Agreement is attached to the Complaint as Exhibit 2. Defendants admit that the parties each had their own financial and legal advisors and

negotiated the terms of the Merger Agreement. The Merger Agreement speaks for itself, and Defendants deny all allegations of Paragraph 23 inconsistent with the terms of the Merger Agreement.

24-33. Paragraphs 24-33 paraphrase, describe and/or purport to quote various provisions of the Merger Agreement. The Merger Agreement speaks for itself and Defendants deny all allegations in Paragraphs 24-33 contrary to or inconsistent with the terms thereof.

34.     The Merger Agreement and the Commitment Letter speak for themselves and Defendants deny any and all allegations and/or purported legal conclusions in Paragraph 34 inconsistent with or contrary to the terms of such agreements.

35.     The Merger Agreement speaks for itself and Defendants deny any and all allegations and/or purported legal conclusions in Paragraph 35 inconsistent with or contrary to the terms of that agreement.

36.     Admitted.

37.     Defendants admit the first sentence of Paragraph 37. As to the second sentence, Defendants deny that the proposed timeline referenced therein was directed solely at the activities of Finish Line as the timeline dealt with the obligations of several parties, not just Finish Line.

38-40. Defendants admit that a copy of the Commitment Letter is attached to the Complaint as Exhibit 3. The Commitment Letter speaks for itself and Defendants deny any and all allegations and/or purported legal conclusions in Paragraphs 38-40 inconsistent with or contrary to the terms of the Commitment Letter.

41-43. The defendants admit that a copy of an informal timeline exchanged between the parties is attached to the Complaint as Exhibit 4. The timeline referenced in Paragraphs 41-43

speaks for itself and Defendants deny any and all allegations and/or purported legal conclusions in Paragraphs 41-43 inconsistent with or contrary to the terms of such timeline, including but not limited to all allegations or implications that the timeline was a commitment or agreement on the part of any party to meet the dates set forth therein.

44.     Defendants admit that Genesco filed its preliminary proxy on July 11, 2007, and that on July 23, 2007, the SEC notified Genesco that the preliminary proxy statement would not be reviewed.  All remaining allegations of Paragraph 44 are denied.

45.     Defendants admit that in late July 2007 counsel for Finish Line had discussions with counsel for Genesco regarding the timing of aspects of the financing for the transaction.  All allegations in Paragraph 45 inconsistent with the foregoing are denied.

46.     The allegations set forth in Paragraph 46 are admitted except that Defendants deny that Finish Line did not have "any objection" to Genesco's setting the shareholder meeting on September 17, 2007, as the allegation is incomplete.  Defendants further aver that at the time it set such meeting, Genesco indicated that it expected the closing of the merger transaction to take place two business days following Genesco's shareholders meeting, assuming shareholder approval.  In response, Finish Line advised Genesco in writing that the merger could not close within two days of Genesco's shareholder vote as there were still conditions to be fulfilled including conditions required for the UBS financing commitment, including a substantially completed draft debt offering memorandum and the thirty (30) business day marketing period, before UBS was obligated to fund the loans.  Genesco's counsel, however, informed Finish Line' counsel that it wanted to accelerate the closing of the Merger because it did not want Genesco to be exposed to further risk of a Company Material Adverse Effect.

47.     Denied.

48.     Defendants admit that counsel for Finish Line sent a letter to counsel for Genesco on July 27, 2007, which document speaks for itself, and Defendants deny all allegations in Paragraph 48 inconsistent with or contrary to the terms of that letter.

49-50.  The Merger Agreement speaks for itself and Defendants deny any and all allegations or purported legal conclusions in Paragraph 49 inconsistent with or contrary to the terms of that document.

51.     Defendants admit that in response to Finish Line's counsel's letter of July 27, 2007, on July 31, 2007, Genesco's counsel sent a letter to Finish Line's counsel indicating that it did not agree with Finish Line's counsel's letter but not providing any explanation or support for the statements of Genesco's counsel, nor reserving Genesco's rights. All allegations in Paragraph 51 inconsistent with the foregoing are denied.

52.     Defendants admit that Mr. Pennington on July 27, 2007, sent an undated letter to the general counsel of Finish Line, and that the general counsel of Finish Line sent a letter to Mr. Pennington earlier that day. Each of these letters speaks for itself and Defendants deny all allegations in Paragraph 52 inconsistent with or contrary to the terms of such letters.

53.     Defendants admit that counsel for Finish Line, by letter dated August 7, 2007, responded to Genesco's counsel's letter of July 31, 2007, and that such letter, which speaks for itself, set forth a proposed timetable that was "The Finish Line's current estimate and does not represent an agreement to meet any specific date. Of course, this schedule for the Closing is contingent upon Genesco fulfilling its obligations under the Agreement and all conditions to The Finish Line's obligations being fully complied with on or before Closing." Defendants deny all allegations in Paragraph 53 inconsistent with or contrary to the foregoing or the other terms of the July 31, 2007, letter.

54-56. Denied.

57.     Defendants deny that Finish Line has breached the Merger Agreement in any respect or that Genesco has "excused" Defendants for such breach. Defendants admit that Genesco provided certain information relative to Genesco's ongoing second quarter financial performance as Finish Line continued drafting its offering memorandum, but deny that (a) such information was of the type or in the form that could be used for drafting the debt offering memorandum (a fact known to Genesco) and (b) that such information was sufficient to put Finish Line on notice of the actual decline in second quarter results that would later be issued by Genesco. All remaining allegations in Paragraph 57 inconsistent with the foregoing are denied.

58.     Admitted, with the exception that Defendants are without sufficient knowledge or information to admit or deny the date upon which Genesco mailed its Final Definitive Proxy Statement to its shareholders.

59.     Defendants admit that Genesco released its second quarter earnings of 2007 on August 30, 2007. Genesco's earnings announcement speaks for itself and Defendants deny all allegations in Paragraph 59 inconsistent with or contrary to the terms of such announcement. Defendants admit that Genesco's second quarter earnings were well below analyst expectations and public earnings guidance issued by Genesco. All remaining allegations of Paragraph 59 are denied.

60.     Defendants incorporate by reference their response to Paragraph 57. Defendants admit that Finish Line issued a press release on August 30, 2007, which speaks for itself, and Defendants deny all allegations of Paragraph 60 inconsistent with or contrary to the terms of such press release. Defendants deny the remaining allegations of Paragraph 60.

61.    Defendants admit that UBS wrote a letter to Finish Line on September 11, 2002, which Finish Line forwarded to Genesco pursuant to the terms of the Merger Agreement and which letter speaks for itself. Defendants deny all allegations in Paragraph 61 inconsistent with or contrary to the terms of such letter.  All remaining allegations in Paragraph 61 are denied.

62.    Defendants admit that Finish Line released its second quarter sales figures on September 6, 2007, not September 13, 2007, as alleged.  Such sales figures release speaks for itself and Defendants deny all allegations in Paragraph 62 inconsistent with or contrary to the terms of such release.

63.    Finish Line's September 6, 2007, sales figures release speaks for itself and Genesco's August 30, 2007, earnings release speaks for itself, and Defendants deny all allegations in Paragraph 63 inconsistent with or contrary to the terms of such releases.  All remaining allegations in Paragraph 63 are denied.

64.    Defendants admit that UBS sent a letter to Finish Line on September 13, 2007, which letter Finish Line forwarded to Genesco as per the terms of the Merger Agreement and which letter speaks for itself.  Defendants deny all allegations in Paragraph 64 inconsistent with or contrary to the terms of such letter.

65.    Defendants are without sufficient knowledge or information to admit or deny when Genesco learned the information alleged but admit that certain meetings with the rating agencies were cancelled.  The Commitment Letter speaks for itself and Defendants deny all allegations in Paragraph 65 inconsistent with or contrary to the terms of the Commitment Letter.

66.    Denied.

67.     Defendants admit that Finish Line issued a press release on September 14, 2007, which speaks for itself, and Defendants deny all allegations in Paragraph 67 inconsistent with or contrary to the terms of such release.  The remaining allegations of Paragraph 67 are denied.

68.     Defendants admit that Genesco issued a press release on September 14, 2007, which speaks for itself, and Defendants deny all allegations in Paragraph 68 inconsistent with or contrary to the terms of such release.

69.     Defendants admit on information and belief that Genesco held its special shareholders meeting on September 17, 2007, and that its shareholders voted in favor of the merger.  All remaining allegations or characterizations of Paragraph 69 are denied.

70.     Defendants admit that Finish Line's counsel received an e-mail from UBS on September 18, 2007, and promptly forwarded such e-mail to counsel for Genesco on September 18, 2007, pursuant to the terms of the Merger Agreement.  These e-mails speak for themselves, and Defendants deny all allegations in Paragraph 70 inconsistent with or contrary to the terms of such e-mails.  All remaining allegations and purported legal conclusions in Paragraph 70 are denied.

71.     The definition of a "Company Material Adverse Effect" contained in Section 3.1 of the Merger Agreement speaks for itself, and Defendants deny all allegations in Paragraph 71 inconsistent with or contrary to the terms of the totality of such definition.

72.     Defendants are without sufficient knowledge or information at this time to know if there has been a "Material Adverse Effect" in Genesco's business and deny that Finish Line has ever stated or taken the position that there has been a "Material Adverse Effect" in Genesco's business.  The remaining allegations of Paragraph 72 are denied.

73.    Defendants admit that the Merger Agreement was negotiated at arm's length by the parties and their respective legal and financial advisors. The Merger Agreement speaks for itself, and Defendants deny all allegations in Paragraph 73 inconsistent with or contrary to the terms of such document. All remaining allegations of Paragraph 73 are denied.

74-75. Denied.

76.    Defendants admit that Genesco has provided Finish Line with certain financial and other information, subject to the terms of the Merger Agreement and a confidentiality agreement, but deny that Genesco has provided Finish Line with all information as to which Finish Line has requested and is entitled to pursuant to the terms of the Merger Agreement. All remaining allegations of Paragraph 76 are denied.

77.    Defendants admit that pursuant to the terms of the Merger Agreement and a confidentiality agreement, Genesco executives have conducted meetings with Finish Line executives, including the discussion of business operations and financial matters. All remaining allegations or characterizations of Paragraph 77 are denied.

78-80. Denied.

81-87. The first sentence of Paragraph 81 contains legal assertions to which no response is required. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations in Paragraphs 81-87, except that to the extent any such allegations are intended to allege or imply wrongdoing on the part of Finish Line or to entitle Genesco to relief in this matter, such allegations are denied.

## CLAIM FOR RELIEF:
## DEMAND FOR SPECIFIC PERFORMANCE

88.    Defendants hereby incorporate their responses to Paragraphs 1-87 above.

89-90.  The Merger Agreement speaks for itself, and Defendants deny any allegations and/or legal conclusions in Paragraphs 89-90 inconsistent with or contrary to the terms of the agreement.

91.     Denied.

### Count 1: Breach of Section 1.2 of the Merger Agreement

92.     Defendants hereby incorporate their responses to Paragraphs 1-91 above.

93.     Denied.

94.     The first sentence of Paragraph 94 is admitted.  All remaining allegations of Paragraph 94 are denied.

95-96.  Denied.

### Count 2:  Breach of Section 6.4(d) of the Merger Agreement

97.     Defendants hereby incorporate their responses to Paragraphs 1-96 above.

98.     Denied.

99.     Section 6.4(d) of the Merger Agreement speaks for itself, and Defendants deny all allegations or legal conclusions in Paragraph 99 inconsistent with or contrary to the terms of that section.

100-102.  Denied.

### Count 3:  Breach of Section 6.7 of the Merger Agreement

103.    Defendants hereby incorporate their responses to Paragraphs 1-102 above.

104.    Denied.

105.    Section 6.7 of the Merger Agreement speaks for itself and Defendants deny all allegations or legal conclusions in Paragraph 105 inconsistent with or contrary to the terms of that section.

11

106-108.  Denied.

### Count 4:  Breach of Section 6.8(a) of the Merger Agreement

109.    Defendants hereby incorporate their responses to Paragraphs 1-108 above.

110.    Denied.

111.    Section 6.8(a) of the Merger Agreement speaks for itself, and Defendants deny all allegations or legal conclusions in Paragraph 111 inconsistent with or contrary to the terms of that section.

112-113.  Denied.

All allegations in Genesco's Complaint not specifically admitted above are hereby denied.

### Third Defense
### (Ripeness)

Genesco's claims are not ripe for adjudication.

### Fourth Defense
### (Failure to Join Indispensable Parties)

Genesco has failed to join persons necessary and indispensable to just adjudication of this matter, namely UBS Securities LLC and UBS Loan Finance LLC.

### Fifth Defense
### (Failure Conditions Precedent / Breaches of Representations and Warranties)

Genesco's claims for specific performance fails due to the failure of one or more conditions precedent to Defendants' obligations to closing; including, but not limited to Genesco's failure to meet or comply with one or more material covenants, representations, other agreements or other conditions to closing set forth in the Merger Agreement.

### Seventh Defense
### (Change of Circumstances)

Genesco's claim for specific performance fails because it would work an unjust and unreasonable hardship and/or loss on Defendants in the absence of financing for the transaction.

### Eighth Defense
### (Impossibility of Performance)

One or more of Genesco's claims may be barred by the doctrine of impossibility of performance.

### Ninth Defense
### (Unclean Hands)

Genesco is not entitled to the equitable relief sought herein because it comes into this proceeding with unclean hands.

WHEREFORE, Defendants demand that Genesco's Complaint be dismissed with prejudice, with costs and fees, including any attorneys fees awardable, taxed to Genesco, and for such other and further relief as the Court deems just and proper.

### DEFENDANTS' COUNTERCLAIM AND
### THIRD-PARTY CLAIM FOR DECLARATORY JUDGMENT

Having responded to the Complaint filed against them, Defendants assume the position of Counter-Plaintiffs/Third-Party Plaintiffs and file this counterclaim and third-party claim for declaratory relief regarding the rights and obligations of Finish Line, Headwind, Genesco, and UBS Securities LLC and UBS Loan Finance LLC (collectively "UBS"), under the Agreement and Plan of Merger ("Merger Agreement") (Merger Agreement attached as Exhibit 2 to Genesco's Complaint) dated as of June 17, 2007. In support of its claim, Defendants allege the following:

## PRELIMINARY STATEMENT

Defendants have not breached the Merger Agreement. Rather, Genesco has manufactured a premature claim of breach and has unilaterally insisted on a closing date not contemplated by the parties, nor required by the Merger Agreement, to deflect appropriate and anticipated scrutiny of its disappointing financial results for the second quarter of 2007, and to avoid having to produce relevant information explaining these results. There is no basis for this Court to order specific performance when Genesco has failed to perform all of its legal obligations to Finish Line under the Merger Agreement to help Finish Line secure financing.

Section 1.2 of the Merger Agreement provides that the "closing of the Merger (the "Closing") will take place at 11:00 a.m. (New York time) on a date to be specified by the parties, such date to be no later than the second business day *after satisfaction or waiver of all of the conditions set forth in Section 7* capable of satisfaction prior to the Closing. . . ." (emphasis added). In turn, Section 7.2 provides that Genesco's compliance with "all material covenants" in the Merger Agreement is a condition to closing. Genesco has not complied with all of its "material covenants." Instead, faced with reasonable and expected inquiries into its serious second quarter financial losses, Genesco has pulled back, refused to comply with its material covenants in both sections 6.3 and 6.8 of the Merger Agreement concerning its required cooperation in obtaining financing, and has demanded an earlier closing date than the Merger Agreement contemplates.

Genesco's behavior in this regard is regrettable and disturbing. Simply by complying fully with its covenants under the Merger Agreement, Genesco would allow Finish Line and UBS to evaluate Genesco's financial condition, and assuming there had been no breach of the Merger Agreement, to go forward with the required steps toward closing. Either way, the

14

alleged delays about which Genesco purportedly complains would end.  By refusing to comply with its material covenants under the Merger Agreement, however, and by filing its groundless lawsuit, Genesco has breached the Merger Agreement, halted the process, and sent up a red flag to the public market, thus inviting even more intensified scrutiny of its disappointing financial results.  Genesco's lawsuit is its latest attempt to rush to a closing while avoiding full compliance with its financial disclosure duties under the Merger Agreement, and while reasonable questions about the nature and cause of its disappointing financial performance go unanswered.  Genesco's lawsuit and its behavior in refusing to cooperate fully with Finish Line in connection with obtaining the financing is particularly puzzling given its recognition of the critical nature of the financing and the fact that there can be no closing without financing.  In its recently filed Proxy Statement to its shareholders, Genesco specified several factors that could cause the company materially adverse results, including, "the failure of the merger to close for any reason, including . . . *the failure of Finish Line to obtain the necessary debt financing arrangements set forth in the commitment letter* received in connection with the merger." (Genesco Proxy Statement, p. 12) (emphasis added)

Defendants seek herein to bring all necessary parties before the Court so that the Court may order Genesco to comply immediately with its obligations under the Merger Agreement to make requested financial information and personnel available to Finish Line and UBS (or, failing that, be held in breach), and to declare whether a Company Material Adverse Effect, as defined in the parties' agreements, and as suggested by UBS and denied by Genesco, has in fact occurred.

## PARTIES

1.      Headwind, Inc., is a wholly owned subsidiary of Finish Line, and is a corporation organized under the laws of the state of Tennessee.  It was formed to effectuate the merger between Finish Line and Genesco.

2.      The Finish Line, Inc., is a corporation organized under the laws of the state of Indiana, with its principal place of business in Indianapolis, Indiana.  Finish Line is a large mall-based specialty retailer of footwear and apparel.

3.      Genesco Inc. is a corporation organized under the laws of the state of Tennessee with its principal place of business in Nashville, Tennessee.  Genesco is a specialty retailer of footwear, headwear, and accessories with over 2,000 retail stores in the United States and Canada.

4.      UBS Securities LLC is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York.  Its registered agent for service of process in Tennessee is Corporation Service Company in Nashville, Tennessee.

5.      UBS Loan Finance LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the parties and subject matter of this action pursuant to T. C. A. §§ 16-11-101 and 29-14-102.

7.      Venue is proper in this Court pursuant to T.C.A. § 20-4-101(a).

8.      In addition, this action concerns the rights and obligations of the parties under the Merger Agreement.  In Section 9.8 of that agreement, Genesco, Finish Line, and Headwind

agreed that any action arising out of or relating to that agreement could be brought solely in a Tennessee state or federal court.

## FACTS

### The Merger Agreement

9.      In the spring of 2007, Finish Line and Genesco began negotiating over a possible merger of the two companies.  Under the proposed agreement, Genesco would become a wholly owned subsidiary of Finish Line, and Finish Line would purchase all of Genesco's outstanding shares of common stock.

10.      At the same time it was negotiating with Genesco, Finish Line was working on a parallel track to secure necessary financing for the merger.  While in its Complaint Genesco repeatedly emphasizes that "financing . . . is not a condition to closing" (¶ 30, Complaint), that simplistic assertion ignores that both Genesco and Finish Line recognized and expressly agreed that absent financing, Finish Line would not have the necessary funds to complete the merger. The Merger Agreement provides that the UBS financing is "*necessary to consummate the transactions contemplated hereby.*"  (Merger Agreement, § 4.6) (emphasis added).

11.      By mid-June 2007, Genesco and Finish Line had agreed to most of the terms of the merger, and Finish Line had substantially finalized a financing commitment agreement (the "Commitment Letter") with UBS.  Genesco was provided with a copy of the Commitment Letter and in fact helped negotiate parts of it.  As confirmed in Genesco's proxy statement, "*advisors of Genesco and Finish Line* negotiated the terms of the proposed merger agreement *as well as the related debt financing commitment letter.*"  (Proxy, p. 24) (emphasis added).  The Commitment Letter is referenced throughout the Merger Agreement.

12.     On June 17, 2007, Finish Line, Headwind, and Genesco executed the Merger

Agreement.  Genesco will merge with Headwind and become the surviving wholly owned

subsidiary of Finish Line, while Finish Line will acquire all of Genesco's outstanding common

shares for $54.50 per share in cash.  Finish Line's offer price represented a 37.7% premium over

Genesco's three-month average stock price ending March 9, 2007, while the total value of the

transaction is approximately $1.5 billion.

13.     In addition to these general terms, the Merger Agreement imposes *specific*

*requirements on Genesco as a condition to closing*.  In particular, Genesco is required under the

Merger Agreement to cooperate with Finish Line in obtaining the necessary financing for the

merger.

14.     As quoted above, Section 1.2 of the Merger Agreement states that the closing will

take place no later than the second business day *"after satisfaction or waiver of all of the*

*conditions set forth in Section 7. . . ."*  (emphasis added).

15.     In turn, Section 7.2 requires Genesco to comply with all material covenants under

the Merger Agreement as a condition to closing:

> The obligations of Parent [Finish Line] and Merger Sub [Headwind] to
> consummate and effect the Merger *shall be subject to* the additional
> conditions . . . that:
>
> The representations and warranties of the Company [Genesco] contained in this
> Agreement (other than the representations and warranties set forth in Sections 3.2
> and 3.3), disregarding all qualifications and exceptions contained therein relating
> to materiality or Company Material Adverse Effect, shall be true and correct as of
> the Closing Date as if made on and as of the Closing Date (or, if given as of a
> specific date, at and as of such date), except where the failure or failures of any
> such representations and warranties to be so true and correct have not had,
> individually or in the aggregate, a Company Material Adverse Effect. . . . *The*
> *Company shall have performed and complied in all material respects with all*
> *material covenants* and agreements required by this Agreement to be performed
> or complied with by it on or prior to the Closing Date.

18

(§ 7.2(a)) (emphasis added).  Together, sections 1.2 and 7.2(a) condition Finish Line's obligation to close on Genesco's compliance with all of Genesco's material covenants.

16.     Those material covenants include Genesco's promise to assist Finish Line in securing financing.  Under Section 6.8 of the Agreement, Genesco agreed "to provide all reasonable cooperation in connection with the arrangement of the financing as is customary and may be reasonably requested by Parent [Finish Line]. . . ."  Section 6.8 goes on to identify a broad range of assistance Genesco is to provide, including participating in marketing meetings and cooperating in the preparation of financing documents and other related materials.

17.     Most importantly, Genesco also promised to provide Finish Line *and its lender, UBS*, access to a wide array of Genesco's financial materials and personnel.  Specifically, Section 6.3(a) states that:

> the Company [Genesco] shall, and shall cause the Company Subsidiaries to,
> afford to Parent [Finish Line], Merger Sub and their directors, employees,
> representatives, financial advisors, consultants, lenders, legal counsel, accountants
> and other advisors and representatives, to have such access to the books and
> records, financial, operating and other data, assets, properties, facilities, plants,
> offices, auditors, authorized representatives, business and operations of the
> Company and the Company Subsidiaries as is reasonable necessary or appropriate
> in connection with Parent's investigation of the Company and the Company
> Subsidiaries with respect to the transactions contemplated hereby.

18.     Section 4.6 of the Merger Agreement specifies that the financing contemplated by the parties is the UBS Commitment Letter also executed by UBS and Finish Line on June 17, 2003.  Genesco acknowledged that the financing was necessary to consummation of the transaction.

> Parent [Finish Line] has delivered to the Company [Genesco] a true and complete
> copy of the Debt Commitment Letter, dated as of the date hereof (the
> "Commitment Letter"), made by UBS Loan Finance LLC and UBS Securities
> LLC (together, the "Lender"), and accepted by Parent, pursuant to which the
> Lender has committed to provide the debt financing (the "Financing") to Parent
> that is necessary to consummate the transactions contemplated hereby. . . .

(Merger Agreement, § 4.6)

19.     As described in its Proxy, Genesco actually helped Finish Line negotiate the

Commitment Letter, and thus was well aware of the terms of the Commitment Letter and the

necessity of such financing to close the deal, prior to executing the Merger Agreement.

Similarly, the Commitment Letter itself cross-referenced the Merger Agreement and actually

required that certain language be included in the Merger Agreement.  The Commitment Letter

provided that the merger transaction would be financed with up to $1.14 billion in senior secured

credit facilities and up to $700 million in unsecured senior notes that would be marketed and

offered for sale by Finish Line.  In other words, approximately $700 million of the financing is to

be accomplished through the sale, pursuant to an offering memorandum, of high-yield unsecured

notes in the public market.  If Finish Line is unable to complete a sale of the unsecured notes by

the date of closing, UBS agreed to step in and provide a temporary bridge loan of up to $700

million.

### Genesco's Attempts to Accelerate the Closing

20.     Within days of the execution of the Merger Agreement, representatives of

Genesco and Finish Line met to devise an informal schedule for closing the merger.  Finish Line

circulated a UBS-prepared preliminary timeline (attached to Genesco's Complaint as Exhibit 4)

containing the steps necessary to secure financing.  The timeline anticipated a closing for the last

week of September 2007 and, consistent with the requirements in the Commitment Letter, the

circulation of the draft offering memorandum in late July 2007.

21.     This informal timeline was based on the understanding that Genesco would timely

provide financial statements and other financial information and discussion concerning the

company's performance in the second quarter of fiscal 2007 necessary to complete the required draft offering memorandum.

22.    Finish Line did not receive all of the information required for the offering memorandum until early September, necessitating a rollback of the preliminary timeline. Nonetheless, Genesco ignored the impact of its own delays, and in late July Genesco began insisting on an even more accelerated timeline for closing than that discussed in June.  Genesco scheduled a shareholder vote on the Merger Agreement for September 17, 2007, and now insisted, for the first time, that the merger close within two days of the shareholder vote, assuming the merger was approved.

23.    While it was unclear at that time, subsequent events have made clear that Genesco's rush toward closing was obviously fueled by its concern that its anticipated heavy losses in the second quarter might constitute a "Company Material Adverse Effect" under the Merger Agreement, or, at a minimum, cause increased scrutiny of that issue by UBS and/or Finish Line.  The Merger Agreement defines "Company Material Adverse Effect" in Section 3.1(a).  The Commitment Letter contains an identical definition.

24.    If Genesco experienced a "Company Material Adverse Effect" that could not be timely cured, the Merger Agreement would terminate under Section 8.1(d) as a result of Genesco's inability to satisfy the closing condition of Section 7.2(b).  In addition, the Commitment Letter contains a nearly identical "Company Material Adverse Effect" provision releasing UBS from its duty to fund should Genesco suffer such an incurable event.

25.    In response to Genesco's demands to speed up the transaction, Finish Line explained that Genesco's proposed schedule was inconsistent with the parties' agreement and understanding of the steps needed to secure financing.  Finish Line reminded Genesco that the

ability to obtain bridge financing from UBS was necessary to closing and required an offering

memorandum, which in turn could not be completed until Genesco provided its second quarter

financials. Ultimately, Finish Line circulated a revised timeline that pushed back the closing a

month to October 23, 2007. While Genesco refused to concede its view of the timing of the

parties' obligations, it agreed to comply with its obligations under the Merger Agreement and

assist Finish Line going forward with regard to financing.

### Genesco's Disappointing Financial Losses and Refusal to Cooperate

26.    Genesco finally released its second quarter results on August 30, 2007. The

company had suffered significant losses that were undisclosed beforehand. In the second

quarter, Genesco suffered a loss before discontinued operations of $2.9 million, or $0.13 per

share as compared to earnings per share before discontinued operations of $0.34 per share in the

same period for the prior year.

27.    Finish Line and the public markets were surprised by these results. But while

Finish Line publicly expressed disappointment with Genesco's second quarter numbers and

indicated that it was evaluating options under the terms of Merger Agreement, Finish Line

continued to take the necessary steps toward completion of the merger, while at the same time

submitting pertinent requests for financial information to Genesco.

28.    Just over a week after Genesco released its second quarter results, Finish Line

received two separate letters from UBS on September 11 and 13, 2007. UBS stated that it was

"extremely concerned about [Genesco's] apparent deteriorating financial position" and that

based on Genesco's poor performance, it was "not yet satisfied Genesco has not experienced a

Material Adverse Effect." UBS further stated that it would need additional financial information

from Genesco in order to determine whether a Material Adverse Effect had occurred. Finish

Line forwarded these letters to Genesco immediately and sought Genesco's full cooperation as required by the Merger Agreement.

29.    On September 18, 2007, UBS provided to Finish Line a list of the additional financial information it needed to assess Genesco's financial condition and satisfy itself that Genesco had not suffered a Material Adverse Effect. (UBS request for additional information attached hereto as Exhibit A). This was also immediately provided to Genesco. In a separate communication to Finish Line that same day – also immediately forwarded to Genesco – UBS stressed the overriding importance of its analysis of Genesco's current financial position. UBS stated its intent to focus all its efforts on this analysis while deferring further work on the remaining closing documents pending the results of its analysis. UBS indicated that once it had a better understanding of Genesco's financial condition, those remaining closing documents could be quickly completed.

30.    Finish Line, in order to pursue its best efforts to secure the necessary financing as required under the Merger Agreement, asked Genesco to gather the materials requested by UBS, as Genesco was required to do under the Merger Agreement. Finish Line further made clear that while it would continue evaluating its options under the Merger Agreement, it also would continue working on the closing documents.

31.    Despite promising in sections 6.3 and 6.8 of the Merger Agreement to assist in the financing and to provide materials to Finish Line and UBS, Genesco quickly announced the next day – on September 19, 2007 – that it would not comply with UBS's and Finish Line's requests, calling them a "fishing expedition." Genesco further issued a series of demands, including that Finish Line immediately close the merger with Genesco and deliver to it a substantially completed draft offering memorandum for the high-yield unsecured notes.

32.    Finish Line responded to Genesco on September 21, 2007, and reaffirmed its commitment to fulfill its obligations under the Merger Agreement. Finish Line took issue, however, with Genesco's refusal to comply with the requests for additional financial information, noting this refusal was patently inconsistent with Genesco's obligations under the Merger Agreement. Finish Line further noted that it had the previous day sent Genesco a draft of the offering memorandum and reiterated its request that Genesco provide comments so the draft could quickly be turned around and sent to UBS. (Letter attached as Exhibit B).

33.    Finish Line's reaffirmation of the Merger Agreement and its promise to continue working on the closing documents were not enough for Genesco. Instead of changing course and cooperating with Finish Line, as the Merger Agreement requires as a condition to closing, Genesco filed its complaint against Defendants on September 21, 2007.

34.    On September 24, 2007, Finish Line formally notified Genesco, under Section 6.10 of the Merger Agreement, that Genesco's refusal to cooperate with Finish Line and UBS by providing the requested financial data is a breach of the Merger Agreement. Genesco continues to refuse to provide the required financial information.

## FIRST CLAIM FOR DECLARATORY RELIEF
## THAT GENESCO MUST COMPLY WITH THE REQUESTS
## FOR FINANCIAL INFORMATION

35.    Defendants hereby incorporate by reference paragraphs 1 through 34.

36.    Genesco is obligated under its material covenants in the Merger Agreement to provide Finish Line with requested financial information and to assist Finish Line in its efforts to secure financing. Genesco is expressly required to provide financial documents and other relevant information and personnel to Finish Line and Finish Line's lender, UBS. (*See* § 6.3, Merger Agreement).

24

37.    Genesco's refusal to cooperate fully with the requests for financial information violates its duties and material covenants under the Merger Agreement, which are conditions to closing.

38.    Defendants are permitted to seek declaratory relief, pursuant to the provisions of T.C.A § 29-14-101, *et seq.*, that Genesco is required under the Merger Agreement to comply with these requests for financial information. In seeking such relief, Defendants are required under T.C.A. § 29-14-107 to join as parties all persons with any interest which would be affected by the declaration sought. Finish Line, Headwind, Genesco, and UBS are all necessary parties whose interests are directly affected by the declaratory relief sought.

## SECOND CLAIM FOR DECLARATORY RELIEF
## REGARDING UBS's ASSERTION OF A MATERIAL ADVERSE EFFECT

39.    Defendants hereby incorporate by reference paragraphs 1 through 38.

40.    Genesco has recently suffered substantial financial losses that have yet to be explained. Despite (or perhaps because of) Genesco's disappointing financial performance, Genesco has refused to turn over financial documents and other information requested by Finish Line pursuant to the Merger Agreement.

41.    UBS has asserted that without the requested information and access to personnel, it is impossible for the parties to determine whether Genesco has suffered a "Material Adverse Effect." The definition of "Material Adverse Effect" is the same in the Merger Agreement and Commitment Letter, and the terms were intended to be identical and co-extensive. That way, a finding of a Material Adverse Effect would both relieve UBS of its obligations under the Commitment Letter while at the same time relieving Finish Line of its obligations under the Merger Agreement.

42.     UBS has indicated it believes a Material Adverse Effect may have occurred; Genesco denies this, and, thus, an actual case or controversy exists.  A resolution of this issue is a prerequisite to the closing of the merger.

43.     Defendants are permitted to seek a declaratory judgment, pursuant to the provisions of T.C.A § 29-14-101, *et seq.*, regarding whether Genesco has suffered a "Material Adverse Effect," thus terminating the Merger Agreement.  In seeking such relief, Defendants are required under T.C.A. § 29-14-107 to join as parties all persons with any interest which would be affected by the declaration sought.  Finish Line, Headwind, Genesco, and UBS are all necessary parties whose interests are directly affected by the declaration sought.

**WHEREFORE**, Defendants request:

(a)     a declaration that Genesco must comply immediately with sections 6.3 and 6.8 of the Merger Agreement and provide all requested financial data and access to personnel, and that its failure to do so in a timely manner be declared a material breach of the Merger Agreement;

(b)     a declaration of whether a "Company Material Adverse Effect" has occurred, as UBS contends and Genesco denies; and

(c)     such other relief to which Defendants may be entitled.

Respectfully submitted,

Robert J. Walker (#2498)
J. Mark Tipps (#11700)
John C. Hayworth (#16133)
John L. Farringer IV (#22783)
WALKER, TIPPS & MALONE
2300 One Nashville Place
150 Fourth Avenue, North
Nashville, Tennessee 37219
(615) 313-6000
*Attorneys for Defendants and Third-Party Plaintiffs*

## Certificate of Service

I certify that a true and exact copy of the foregoing was served by hand delivery upon Overton Thompson, III, Britt K. Latham, W. Brantley Phillips, Jr., Brian D. Roark, and Russell E. Stair, BASS, BERRY & SIMS PLC, Suite 2700, 315 Deaderick Street, Nashville, Tennessee 37238-3001, and by United States mail, first-class postage prepaid Jonathan D. Schiller, James P. Denvir, Michael A. Brille, William C. Jackson, and Jonathan M. Shaw, BOIES, SCHILLER & FLEXNER LLP, Suite 800, 5301 Wisconsin Avenue, N.W., Washington, D.C. 20015, on the _23th_ day of September, 2007.

## Layne, Jonathan K.

| | |
|---|---|
| **From:** | John.Mendez@lw.com |
| **Sent:** | Tuesday, September 18, 2007 5:48 PM |
| **To:** | Layne, Jonathan K.; Feuer, Joel A. |
| **Cc:** | Joseph.Frank@lw.com; Mark.Stegemoeller@lw.com |
| **Subject:** | Information request |
| **Attachments:** | 1773372_1.DOC |

Gentlemen:

Further to our letter of September 13th, and the various conversations and exchanges we've had since then, enclosed please find UBS' request for information, meant to assist in understanding the circumstances at Genesco. It should be understood that the request may have to be supplemented with additional requests if the information or interviews suggest other areas are of concern. If TFL intends to supplement this list with its own requests, we'd appreciate a copy so that our representative can be forewarned about other areas that may be covered.

We would like to set up a discussion as soon as possible with Genesco's financial staff to walk through the requested information and understand timing for satisfying the request. We had requested a discussion on the 19th with Genesco's CFO, but we certainly understand if Genesco wants to put the initial call off a day or two to digest and process the request.

Please advise when the initial discussions can commence. Also advise who from your side will be participating. Our goal is to be as efficient as possible, and respectful of the other time commitments the senior officers have. We will do our best to work with whatever scheduling issues your client or Genesco need us to accommodate.

We look forward to your response.

Thank you.

**John E. Mendez**

**LATHAM & WATKINS** LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Direct Dial: +1.213.891.8181
Fax: +1.213.891.8763
Email: john.mendez@lw.com
http://www.lw.com

<<1773372_1.DOC>>

*********************

To comply with IRS regulations, we advise you that any discussion of federal tax issues in this email was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any

transaction or matter addressed herein.

For more information please go to http://www.lw.com/docs/irs.pdf

*******************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

Genesco Due Diligence List
9/18/07

1. FY08 monthly business plan [Income Statement (including gross margins), Balance Sheet and Cash Flow statement] by banner which ties to the business plan submitted in May 2007
2. EBITDA bridge and MD&A for FY08 vs. FY07 to date (September 1, 2007).
3. Detailed merchandising plan for FY08. Please provide commentary regarding fashion trends for each banner in FY08 and how they differed from FY07. Please provide your view of the remainder of 2008 and FY09.
4. For FY06, FY07 and YTD FY08 (on a monthly basis), the top 10 vendors of each banner, on a comp store basis: units sold and gross margins (including initial markup and markdowns) for Journey's, Hat World and Underground Station.
5. For FY06, FY07 and YTD FY08 (on a monthly basis), comp store shoe sales dollars, units, transaction counts, and gross margin by footwear category (sandal, skate, etc.)
6. For FY06, FY07 and YTD FY08 (on a monthly basis), comp store non-footwear sales dollars
7. For FY06, FY07 and YTD FY08 (on a monthly basis), by banner, comp store unit and dollar sales of product by price point (under $15, $15-25, $25-35, $35-45, $45-$55, $55-65, over $65)
8. For FY06, FY07 and YTD FY08 (on a monthly basis), by banner, percentage of sales and percentage of units sold at less than original retail price.
9. On a quarterly basis for FY06 to FY08 to date, by banner, comparable store rent and employee costs.
10. Quantify sales and EBIT shift from 2Q08 to 3Q08 as a result of (i) later back to school and (ii) sales tax holiday shift of Florida and Texas and how such a shift will manifest itself in the 3Q.
11. For FY06, FY07 and YTD FY08 (on a monthly basis), by banner, "urban" and "non urban" comp shoes dollars, units and accessories
12. For FY06, FY07 and YTD FY08 (on a monthly basis), Hat World, sales, units, margins of old authentic hat and new authentic hat.
13. For August FY07 and August FY08, by banner, an inventory aging and reserve analysis.
14. For FY06, FY07 and YTD FY08 (on a monthly basis), by banner, a detailed inventory turnover analysis.
15. For August FY07 and August FY08, an accounts payable aging report.
16. August 2007 (1st month of 3Q08) balance sheet and statement of cash flow; same for all future months when available.
17. If applicable, for FY06, FY07 and YTD FY08 (on a monthly basis), borrowing base certificates.
18. For FY06, FY07 and YTD FY08 (on a monthly/quarterly basis), industry benchmarking of sales and operating income of each major competitor, to the extent such information is available to you.
19. Any other material information necessary or appropriate to understand the performance and financial condition of Genesco.

Please note that additional information may be required after initial evaluations and interviews have been completed.



3308 N. Mitthoeffer Road
Indianapolis, IN 46235

317.899.1022 Ext. 6520
317.895.2884 Fax

Alan H. Cohen
Chairman & CEO

September 21, 2007

Mr. Hal N. Pennington
Genesco Inc.
Genesco Park, Suite 490
1415 Murfreesboro Pike
Nashville, Tennessee 37217

Dear Hal:

I received your letter of September 19.

First, understand The Finish Line, Inc. will fulfill its obligations in accordance with the terms of the June 17, 2007 Merger Agreement. Second, UBS, our financing source for the transaction, has requested from The Finish Line and we in turn asked Genesco to provide certain information from Genesco as well as access to Genesco's Chief Financial Officer. Your letter inconsistently treats this request; on the one hand, you indicate you will not allow a "fishing expedition"; on the other hand, you advise Genesco will continue to provide to both The Finish Line and UBS information related to Genesco in accordance with the Merger Agreement. We believe the "Access to Information" and "Financing" sections of the Merger Agreement require Genesco to fully cooperate with the UBS request for information and access to your senior management team. Is Genesco refusing to provide information requested by UBS? Is Genesco refusing to ask its CFO to hold a discussion with UBS and TFL regarding UBS' requested information?

Finally, we forwarded to your counsel on Thursday, for comments, the latest draft of the Offering Memorandum. We need your comments to that draft in order for us to deliver to UBS a substantially completed initial draft of an Offering Memorandum.

Sincerely,

Alan H. Cohen
Chairman of the Board and
Chief Executive Officer

CC:     James H. Cheek, III, Esq.
        Bass, Berry & Sims, PLC
        315 Deaderick Street, Suite 2700
        Nashville, TN  37238

        Jonathan K. Layne
        Gibson, Dunn & Crutcher LLP
        2029 Century Park East
        Los Angeles, CA  90067-3026

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER 07-2137-II |
|---|---|---|
| **PLAINTIFF** Genesco, Inc. | **DEFENDANT/THIRD-PARTY PLAINTIFF** The Finish Line, Inc., *et al.* | **THIRD-PARTY DEFENDANT** **UBS Securities LLC and UBS Loan Finance LLC** |

| TO: (NAME AND ADDRESS OF DEFENDANT) | |
|---|---|
| **UBS Loan Finance LLC** *c/o* **Corporation Service Company** **80 State Street** **Albany, New York 12207-2543** | Method of Service: ☐  Certified Mail ☐  Davidson Co. Sheriff ☐  *Comm. of Insurance ☒  *Secretary of State ☐  *Out of County Sheriff ☐  Private Process Server ☐  Other |
| List each defendant on a separate summons. | *Attach Required Fees |

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF, THE FINISH LINE, INC. (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Robert J. Walker (#2498) J. Mark Tipps (#11710) John C. Hayworth (#16133) WALKER, TIPPS & MALONE 2300 One Nashville Place 150 Fourth Avenue, North Nashville, Tennessee  37219 (615) 313-6000 | CRISTI SCOTT, Clerk and Master By:  _____ **Deputy Clerk & Master** |

### NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 07-2137-II |
|---|---|---|
| **PLAINTIFF** Genesco, Inc. | **DEFENDANT/THIRD-PARTY PLAINTIFF** The Finish Line, Inc., *et al.* | **THIRD-PARTY DEFENDANT** UBS Securities LLC and UBS Loan Finance LLC |

**TO: (NAME AND ADDRESS OF DEFENDANT)**

UBS Loan Finance LLC
*c/o* Corporation Service Company
80 State Street
Albany, New York 12207-2543

Method of Service:
- ☐ Certified Mail
- ☐ Davidson Co. Sheriff
- ☐ *Comm. of Insurance
- ☒ *Secretary of State
- ☐ *Out of County Sheriff
- ☐ Private Process Server
- ☐ Other

List each defendant on a separate summons.                    *Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF, THE FINISH LINE, INC. (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Robert J. Walker (#2498) J. Mark Tipps (#11710) John C. Hayworth (#16133) WALKER, TIPPS & MALONE 2300 One Nashville Place 150 Fourth Avenue, North Nashville, Tennessee  37219 (615) 313-6000 | CRISTI SCOTT, Clerk and Master By: _____ **Deputy Clerk & Master** |

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
|  | Sheriff |

***Submit one original plus one copy for each defendant to be served.

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 07-2137-II |
|---|---|---|
| PLAINTIFF Genesco, Inc. | DEFENDANT/THIRD-PARTY PLAINTIFF The Finish Line, Inc., *et al.* | THIRD-PARTY DEFENDANT UBS Securities LLC and UBS Loan Finance LLC |

| TO: (NAME AND ADDRESS OF DEFENDANT) | |
|---|---|
| **UBS Loan Finance LLC** *c/o* **Corporation Service Company 80 State Street Albany, New York 12207-2543** | Method of Service: ☐  Certified Mail ☐  Davidson Co. Sheriff ☐  *Comm. of Insurance ☒  *Secretary of State ☐  *Out of County Sheriff ☐  Private Process Server ☐  Other |
| List each defendant on a separate summons. | *Attach Required Fees |

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF, THE FINISH LINE, INC. (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Robert J. Walker (#2498) J. Mark Tipps (#11710) John C. Hayworth (#16133) WALKER, TIPPS & MALONE 2300 One Nashville Place 150 Fourth Avenue, North Nashville, Tennessee  37219 (615) 313-6000 | CRISTI SCOTT, Clerk and Master By: _____ Deputy Clerk & Master |

### NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br><br>**07-2137-II** |
|---|---|---|
| **PLAINTIFF**<br><br>Genesco, Inc. | **DEFENDANT/THIRD-PARTY PLAINTIFF**<br><br>**The Finish Line, Inc.,** *et al.* | **THIRD-PARTY DEFENDANT**<br><br>**UBS Securities LLC and UBS Loan Finance LLC** |

| TO:  (NAME AND ADDRESS OF DEFENDANT) | |
|---|---|
| **UBS Loan Finance LLC**<br>*c/o* **Corporation Service Company**<br>**80 State Street**<br>**Albany, New York 12207-2543** | Method of Service:<br>☐   Certified Mail<br>☐   Davidson Co. Sheriff<br>☐   *Comm. of Insurance<br>☒   *Secretary of State<br>☐   *Out of County Sheriff<br>☐   Private Process Server<br>☐   Other |
| List each defendant on a separate summons. | *Attach Required Fees |

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF,<br>THE FINISH LINE, INC.<br>(Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Robert J. Walker (#2498)<br>J. Mark Tipps (#11710)<br>John C. Hayworth (#16133)<br>WALKER, TIPPS & MALONE<br>2300 One Nashville Place<br>150 Fourth Avenue, North<br>Nashville, Tennessee  37219<br>(615) 313-6000 | **CRISTI SCOTT, Clerk and Master<br>By:**<br><br>_____<br>**Deputy Clerk & Master** |

| NOTICE OF DISPOSITION DATE |
|---|
| The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.<br><br>If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist. |

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
|  | |
|  | Sheriff |

***Submit one original plus one copy for each defendant to be served.



**WALKER TIPPS & MALONE**
2300 ONE NASHVILLE PLACE
150 4TH AVENUE NORTH
NASHVILLE, TN 37219

25852

87-863/640

9/26/2007

PAY TO THE
ORDER OF ___ Tennessee Secretary of State

Twenty and 00/00******************************************************************************* $ ***20.00

****************************************************************************************** DOLLARS

Tennessee Secretary of State
1800 James K. Polk Building
Nashville, TN 37243-0306

*Louis A Pluckett*

MEMO  Process fee for summons

⑈"0 2 5 8 5 2⑈"  ⑈:0 6 4 0 0 8 6 3 7⑈:  ⑈" 1 1 1 8 5 8 9⑈"

---

WALKER TIPPS & MALONE

Tennessee Secretary of State                                                                 9/26/2007

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 09/26/2007 | Bill | process fee | 20.00 | 20.00 | | 20.00 |
| | | | | | Check Amount | 20.00 |

25852

Pinnacle Operating Accoun   Process fee for summons                                          20.00

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br><br>**07-2137-II** |
|---|---|---|
| **PLAINTIFF**<br><br>Genesco, Inc. | **DEFENDANT/THIRD-PARTY PLAINTIFF**<br><br>**The Finish Line, Inc.,** *et al.* | **THIRD-PARTY DEFENDANT**<br><br>**UBS Securities LLC and UBS Loan Finance LLC** |

**TO:  (NAME AND ADDRESS OF DEFENDANT)**

**UBS Securities LLC**
*c/o* **Corporation Service Company**
**2908 Poston Avenue**
**Nashville, Tennessee 37203**

Method of Service:
☐   Certified Mail
☐   *Davidson Co. Sheriff
☐   *Comm. of Insurance
☐   *Secretary of State
☐   *Out of County Sheriff
☒   Private Process Server
☐   Other

List each defendant on a separate summons.               *Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF,<br>THE FINISH LINE, INC.<br>(Name, address & telephone number)<br><br>Robert J. Walker (#2498)<br>J. Mark Tipps (#11710)<br>John C. Hayworth (#16133)<br>WALKER, TIPPS & MALONE<br>2300 One Nashville Place<br>150 Fourth Avenue, North<br>Nashville, Tennessee  37219<br>(615) 313-6000 | FILED, ISSUED & ATTESTED<br><br><br>**CRISTI SCOTT, Clerk and Master**<br>**By:**<br><br><br>———————————————<br>**Deputy Clerk & Master** |

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
|  | Sheriff |

***Submit one original plus one copy for each defendant to be served.

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER **07-2137-II** |
|---|---|---|
| **PLAINTIFF** Genesco, Inc. | **DEFENDANT/THIRD-PARTY PLAINTIFF** **The Finish Line, Inc.,** *et al.* | **THIRD-PARTY DEFENDANT** **UBS Securities LLC and UBS Loan Finance LLC** |

**TO: (NAME AND ADDRESS OF DEFENDANT)**

**UBS Securities LLC**
*c/o* **Corporation Service Company**
**2908 Poston Avenue**
**Nashville, Tennessee 37203**

Method of Service:
- ☐ Certified Mail
- ☐ *Davidson Co. Sheriff
- ☐ *Comm. of Insurance
- ☐ *Secretary of State
- ☐ *Out of County Sheriff
- ☒ Private Process Server
- ☐ Other

List each defendant on a separate summons.                    *Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF, THE FINISH LINE, INC. (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Robert J. Walker (#2498) J. Mark Tipps (#11710) John C. Hayworth (#16133) WALKER, TIPPS & MALONE 2300 One Nashville Place 150 Fourth Avenue, North Nashville, Tennessee 37219 (615) 313-6000 | CRISTI SCOTT, Clerk and Master By: _____ **Deputy Clerk & Master** |

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br><br>**07-2137-II** |
|---|---|---|
| **PLAINTIFF**<br><br>Genesco, Inc. | **DEFENDANT/THIRD-PARTY PLAINTIFF**<br><br>**The Finish Line, Inc.,** *et al.* | **THIRD-PARTY DEFENDANT**<br><br>**UBS Securities LLC and UBS Loan Finance LLC** |

**TO: (NAME AND ADDRESS OF DEFENDANT)**

**UBS Securities LLC**
*c/o* **Corporation Service Company**
**2908 Poston Avenue**
**Nashville, Tennessee 37203**

Method of Service:
☐   Certified Mail
☐   *Davidson Co. Sheriff
☐   *Comm. of Insurance
☐   *Secretary of State
☐   *Out of County Sheriff
☒   Private Process Server
☐   Other

List each defendant on a separate summons.                    *Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| **ATTORNEY FOR THIRD-PARTY PLAINTIFF,<br>THE FINISH LINE, INC.**<br>(Name, address & telephone number)<br><br>Robert J. Walker (#2498)<br>J. Mark Tipps (#11710)<br>John C. Hayworth (#16133)<br>WALKER, TIPPS & MALONE<br>2300 One Nashville Place<br>150 Fourth Avenue, North<br>Nashville, Tennessee  37219<br>(615) 313-6000 | **FILED, ISSUED & ATTESTED**<br><br>**CRISTI SCOTT, Clerk and Master<br>By:**<br><br>_____<br>**Deputy Clerk & Master** |

| **NOTICE OF DISPOSITION DATE** |
|---|

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| **TO THE SHERIFF:** | **DATE RECEIVED**<br><br>**Sheriff** |
|---|---|

***Submit one original plus one copy for each defendant to be served.

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 07-2137-II |
|---|---|---|
| PLAINTIFF Genesco, Inc. | DEFENDANT/THIRD-PARTY PLAINTIFF The Finish Line, Inc., *et al.* | THIRD-PARTY DEFENDANT UBS Securities LLC and UBS Loan Finance LLC |

**TO: (NAME AND ADDRESS OF DEFENDANT)**

UBS Securities LLC
*c/o* Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203

Method of Service:
☐  Certified Mail
☐  *Davidson Co. Sheriff
☐  *Comm. of Insurance
☐  *Secretary of State
☐  *Out of County Sheriff
☒  Private Process Server
☐  Other

List each defendant on a separate summons.

*Attach Required Fees

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| ATTORNEY FOR THIRD-PARTY PLAINTIFF, THE FINISH LINE, INC. (Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Robert J. Walker (#2498) J. Mark Tipps (#11710) John C. Hayworth (#16133) WALKER, TIPPS & MALONE 2300 One Nashville Place 150 Fourth Avenue, North Nashville, Tennessee 37219 (615) 313-6000 | CRISTI SCOTT, Clerk and Master By: _____ Deputy Clerk & Master |

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
|  | Sheriff |

***Submit one original plus one copy for each defendant to be served.



WALKER TIPPS & MALONE
2300 ONE NASHVILLE PLACE
150 4TH AVENUE NORTH
NASHVILLE, TN 37219

Pinnacle
NATIONAL BANK

87-863/640

25852

9/26/2007

PAY TO THE
ORDER OF ___ Tennessee Secretary of State                                    $ **20.00

Twenty and 00/100********************************************************************* DOLLARS

Tennessee Secretary of State
1800 James K. Polk Building
Nashville, TN 37243-0306

MEMO    Process fee for summons

Louis H Prewett

⑆0 2585 2⑆  ⑆0640086 37⑆  ⑆ 11 1858 9⑆


WALKER TIPPS & MALONE                                                          25852

Tennessee Secretary of State                        9/26/2007

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 09/26/2007 | Bill | process fee | 20.00 | 20.00 | | 20.00 |
| | | | | | Check Amount | 20.00 |


Pinnacle Operating Accoun    Process fee for summons                          20.00