UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UBS SECURITIES LLC, and
UBS LOAN FINANCE LLC,

        Plaintiffs/Counter-Defendants,

v.

THE FINISH LINE, INC.,

        Defendants/Counter-Plaintiff,

and

GENESCO INC.,

        Defendant.

No. 07 Civ. 10382 (LAP)

**PLAINTIFFS UBS SECURITIES LLC AND UBS LOAN FINANCE LLC'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION
FOR ENTRY OF JUDGMENT ON COUNTS I-III AND THEIR MOTION TO DISMISS
COUNTS IV-VI OF DEFENDANT THE FINISH LINE, INC.'S COUNTERCLAIMS**

I.  **THE COMMITMENT LETTER REQUIRES THAT UBS BE SATISFIED WITH THE TERMS IN THE MERGER AGREEMENT, AND UBS WOULD NOT BE SATISFIED WITH A PURCHASE PRICE REDUCTION**

The Commitment Letter's Conditions to Closing could not be clearer:

> UBS shall have reviewed, *and be satisfied with*, the final structure of the Acquisition and *the terms and conditions* of the [Merger] Agreement (it being understood that UBS is satisfied with the execution version of the [Merger] Agreement received by UBS at 9:19 p.m. Los Angeles time on June 16, 2007 and the structure of the Acquisition reflected therein and the disclosure schedules to the Acquisition Agreement received by UBS at 7:47 a.m. Los Angeles time on June 17, 2007).

(Declaration of Alexandra A.E. Shapiro, dated Feb. 6, 2008, Ex. 2: Commitment Letter, Annex IV ¶ 1 (emphasis supplied).) Finish Line argues that because UBS was satisfied with the Merger Agreement's terms as they existed on June 17, 2007, which included a severability clause, UBS does not have the contractual right to withhold its satisfaction over renegotiated terms, including a new price. That argument finds no support in the Commitment Letter. The Commitment Letter is exceedingly clear—UBS must approve or not approve of the terms and structure of the final agreement between Finish Line and Genesco. UBS was satisfied with the original terms and structure, but has not approved any revised deal.

Indeed, UBS has stated several times that it will stand by the obligations of the Commitment Letter on the terms as set forth in the Merger Agreement (including the price of $54.50) assuming all of the closing conditions (*e.g.*, including solvency) are satisfied. If Genesco and Finish Line, however, restructure their transaction or change the price term, UBS intends to exercise its contractual right and decline to approve any such new agreement. As a consequence, the closing conditions to the Commitment Letter would fail *as a matter of law* if the merger were to proceed at a price lower than $54.50. *See Nat'l Kinney Corp. v. Webbe*, No. 80 Civ. 1607 (LBS), 1981 U.S. Dist. LEXIS 10277, at *11-12 (S.D.N.Y. Jan. 9, 1981).

1

Finish Line and Genesco grumble about the reasons why UBS would object to a reduction in the contract price. (Genesco Mem. of Law in Opp'n to UBS's Mot., dated Feb. 9, 2008 ("Genesco Br.") at 7-8; Finish Line Opp'n to the Mot. to Dismiss, dated Feb. 9, 2008 ("Finish Line Br.") at 7-8.) But the Commitment Letter contains no requirement that either Defendant agree with UBS's reasons and, under New York law, no such requirement may be implied. *State St. Bank and Trust Co. v. Inversiones Errazuriz*, 374 F.3d 158, 170 (2d Cir. 2004) ("Where a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent."); *Teachers Ins. & Annuity Assoc. of Am. v. Wometco Enters., Inc.*, 833 F. Supp. 344, 348 (S.D.N.Y. 1993) (party may withhold consent pursuant to its contractual rights "for any reason or no reason").[1]

## II. ANY AMENDMENT TO THE PURCHASE PRICE WOULD BE MATERIAL AND ADVERSE TO UBS

As a separate condition to closing, the Commitment Letter requires that there be no amendments to the Merger Agreement that are "material and adverse" to UBS unless "consented to by UBS in its reasonable discretion." (Commitment Letter, Annex IV ¶ 1.) UBS explained in its opening memorandum, and Finish Line does not dispute, that a change in price to cure the insolvency of the combined entity would be material and adverse to UBS's interests.[2]

---

[1] Finish Line also is incorrect that the Tennessee Court's order prohibits UBS from withholding its consent to fund a renegotiated transaction. The Tennessee Court specifically declined to adjudicate anything that is the subject of this Action. The Court's decision is not yet final and does not have *res judicata* effect. *See Corder v. Corder*, 231 S.W.3d 346, 358 (Tenn. Ct. App. 2006) (where an order specifically reserved an issue, it was not a final order, and lacked preclusive effect). Indeed, UBS notes that Finish Line is seeking interlocutory appeal of the Tennessee Order in part because it believes the evidence proved that it was defrauded by Genesco.

[2] Genesco evidently agrees that UBS will suffer a considerable loss if required to finance the transaction at a lower purchase price. (*See* Genesco Br. at 6) At the same time,

Finish Line argues, however, that it and Genesco can change the price term without amending the Merger Agreement. (Finish Line Br. at 6.) Not surprisingly, Finish Line has no contractual or legal authority for this novel argument. The price Finish Line agreed to pay Genesco shareholders was heavily negotiated, agreed to by the parties, approved by Genesco shareholders, and cannot simply be changed without consequence.

Finish Line and Genesco contend that UBS has already agreed to finance the transaction even at a merger price lower than the one set forth in the agreement UBS previously approved because the loan facilities may be provided "up to" the specified amounts. (Genesco Br. at 5-6; Finish Line Br. at 6.) The Commitment agreement itself, however, demonstrates the fallacy of this argument. As explained in UBS's Opposition to Genesco's Motion to Dismiss or Abstain, dated February 9, 2008 (at 8-9), the true meaning of the "up to" provisions appears within the four corners of the Commitment agreement.

The Commitment Letter uses the phrase "up to" in order to allow allocation between the various tranches of financing. For example, financing would be extended under the Bridge Facility only to the extent that the Notes are not issued. Similarly, Term Loan and Revolver Financing would be used to extinguish the Defendants' existing debt – debt that was expected to fluctuate between signing and closing.

The Fee Letter provides that UBS, in its discretion, may shift the fixed total amount of debt between these tranches. (Declaration of Alexandra A.E. Shapiro, dated Feb. 9,

---

Genesco argues that a purchase price reduction would be "facially more favorable" to UBS. (*Id.* at 7.) Yet, by definition, UBS would not incur *any* losses if the Commitment Letter were terminated due to insolvency, whereas Genesco acknowledges that UBS *would* incur losses on a recut deal. Although Genesco may contend that a recut deal would involve "facially" more favorable terms, the Commitment Letter's closing conditions instead require only that an amendment be "adverse" to UBS in order to require UBS's consent. A substantial risk of loss versus no risk of loss plainly is adverse to UBS.

3

2008, Ex. 7: Bank and Bridge Facilities Fee Letter, dated June 17, 2007, at 3.) Pursuant to the Fee Letter, UBS may "reallocat[e]" specified amounts from "the Term Loan Facility to the Bridge Facility" and from "the Revolving Credit Facility to the Term Loan Facility." (*Id.*) If the Commitment Letter did not provide for "up to" the maximum amount of each facility and instead provided only set amounts, this reallocation between facilities would be impossible.

The Commitment Letter also provides that "to the extent that the Borrowing Base Amount (as defined in the Revolver Term Sheet) as of the Closing Date is not sufficient to fund . . . the amount of the Term Loan Facility . . . shall be increased on a dollar-for-dollar basis by the amount of the Funding Shortfall and the Revolving Credit Facility shall be reduced on a dollar-for-dollar basis by the amount of the Funding Shortfall." (Commitment Letter at 2.) Finally, the facilities in the Commitment Letter were intended to cover any fees, commissions and expenses that are incurred in connection with the merger and financing. (Commitment Letter at 1-2.) As of the signing date of the Commitment Letter, the commissions and expenses were expected to be "approximately $70.5 million." (*Id.* at 1.) Because these amounts may fluctuate between signing and closing, the dollar amount of the financing vehicle used to retire them also was made subject to "up to" phrasing.[3]

---

[3] The remainder of Finish Line's arguments are meritless. First, Finish Line will find no solace in the Commitment Letter's provisions governing syndication. UBS does not contend that it may exit the commitment because syndication will not occur, but instead that UBS will lose money in the process of syndicating and that such a generally acknowledged loss is relevant to UBS in deciding whether or not accept the Merger Agreement and/or to consent to any amendment. Nowhere does the Commitment Letter state that such a risk of loss is not "material" to UBS under the conditions to closing. Second, contrary to Finish Line's assertions, UBS does not attempt to invoke the Commitment Letter's Material Adverse Effect ("MAE") provision. That provision conditions closing on the absence of an MAE at Genesco. In this action, UBS invokes an altogether separate condition based on a proposed price reduction that is material and adverse to ***UBS***. Finally, in another *non sequitur*, Finish Line contends the Defendants may renegotiate the contract price because the Revolving Credit Facility can be used for

## III. THE PURCHASE PRICE MAY NOT BE SEVERED FROM THE MERGER AGREEMENT

Finish Line cites no authority supporting its position that price may be severed from an agreement because there is no such authority. Finish Line's reliance on an illustration from the Restatement of Contracts (in which a court modified the applicable interest rate) is misplaced. The interest rate in that example was not a material term to the contract and the Restatement plainly provides that "[i]f the performance as to which the agreement is unenforceable is an essential part of the agreed exchange . . . the entire agreement [is] unenforceable." Restatement (Second) of Contracts § 184 cmt. A.

Even if price were a severable term (which it is not), the Merger Agreement's severability clause itself does not permit the parties to renegotiate the price term once severed. The severability clause provides that "[a]ny provision of this Agreement held invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable. The parties further agree to negotiate in good faith to replace such invalid or unenforceable provision of this Agreement . . . with a valid and enforceable provision *that will achieve, to the extent possible, the economic, business and other purposes of such invalid or unenforceable provision or portion thereof*." (Merger Agreement § 9.6 (emphasis supplied).) The provision of Merger Agreement that would be unenforceable in the event of insolvency is the price term contained in § 2.1(a). It would be impossible—indeed, nonsensical—to replace the $54.50 price term with a price that would achieve the same "economic, business and other purposes" of $54.50. That price term has *only one* such purpose, which is obviously to consummate the merger at $54.50.

---

allegedly broad purposes. UBS does not object to the purposes for which Finish Line will use the financing. UBS instead objects to any amendment to the Merger Agreement's price term by Defendants.

5

Additionally, Genesco contends that this Court should dismiss Counts IV through VI, or should abstain from ruling on those counts, so that the Tennessee court may address the issue of severability. It is true that this Court need not reach that issue if it determines, as it should, that a purchase price reduction would violate conditions to closing under the Commitment Letter (*see supra* Sections I-II.) Regardless, as explained in UBS's Opposition to Genesco's Motion to Dismiss or Abstain (at 6), this Court need not refrain from deciding the severability issue merely because it entails an analysis under the Merger Agreement, because the ultimate issue is whether the Commitment Letter's terms and conditions have been violated.

### IV.   COUNT VI REQUESTS AN ADVISORY OPINION

Finish Line purports to defend the justiciability of Count VI by arguing that the claim is based upon the terms of a contract that are presently enforceable. (Finish Line Br. at 10.) Yet even Finish Line concedes that this claim arises only if the combined entity is insolvent at a merger price of $54.50. In that situation, the contract is not enforceable, nor is the price. Thus, the Court is being asked to advise the parties of a price to which they could agree at some future time that would not render the combined entity insolvent. That would be an advisory opinion of the purest type. *See N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 04 Civ. 9949 (KMK), 2005 WL 646350, at *10 (S.D.N.Y. Mar. 21, 2005).

### V.   THE COURT SHOULD ENTER JUDGMENT ON COUNTS I-III

Genesco opposes UBS's motion to enter judgment with respect to Counts I-III on the ground that there is no actual controversy. Even assuming that there was no controversy before Genesco filed its brief, there is a controversy ***now***, because Genesco opposes UBS's motion. This is sufficient adversity to allow the granting of judgment on these counts. *See Nautilus Ins. Co. v. 8160 S. Mem'l Dr., LLC*, 436 F.3d 1197, 1200-01 (10th Cir. 2006) (finding

entry of declaratory judgment proper where adversity remained only between original plaintiff and two defendants not in privity of contract to the insurance contract at issue).

Genesco fails to provide *any* substantive basis for why judgment should not be entered. That is not surprising, because if the combined entity were insolvent, the UBS-Finish Line financing indisputably would constitute an unenforceable fraudulent transfer. *See, e.g., Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 997-99 (S.D.N.Y. 1991) (holding that a lender's provision of financing in connection with a merger transaction that would result in an insolvent entity violates fraudulent transfer statutes). Similarly, the Finish Line-Genesco merger would constitute an illegal distribution to Genesco shareholders. *See, e.g., McAlister v. Peregrine Enters., Inc.*, No. 02A01-9610-CH-00262, 1997 WL 746373, at *5 (Tenn. Ct. App. Dec. 4, 1997) (holding that a distribution to shareholders that would render a corporation insolvent violates Tenn. Code Ann. § 48-16-401(c)(1)).

An adjudication of the issues raised by Counts I-III of Finish Line's Counterclaim (and also raised directly by UBS's Amended Complaint) is central to UBS's claim that insolvency of the combined entity would violate the terms of the Commitment Letter's requirement that the contemplated transactions comply with "applicable law". (Commitment Letter, Annex IV ¶ 3.) UBS's Amended Complaint alleges that, as a consequence of any fraudulent transfer or illegal distribution, conditions to closing under the Commitment Letter would fail. Because determination of the fraudulent conveyance and illegal distribution issues is fundamental to UBS's claims arising under the Commitment Letter, the determination of those issues is necessary to the judgment in this action.[4]

---

[4]   Genesco's additional contention that this Court should abstain from ruling on Counts I-III fails for the reasons set forth in UBS's Opposition to Genesco's Motion to Dismiss or Abstain.

## CONCLUSION

For the reasons set forth above and in UBS's opening Memorandum of Law, the Court should enter judgment on Counts I-III and dismiss Counts IV-VI of the Counterclaims.

Dated: February 11, 2008
       New York, New York

Respectfully submitted,

By: _____
Alexandra A.E. Shapiro (AS-4816)
Joseph J. Frank (JF-0669)
Blair Connelly (BC-0237)
Jennifer L. Heil (JH-4290)
Eric S. Olney (EO-7324)
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1316

J. Christian Word (admitted *pro hac vice*)
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304

*Attorneys for Defendants UBS Securities LLC and UBS Loan Finance LLC*