UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UBS SECURITIES LLC, and
UBS LOAN FINANCE LLC,

                Plaintiffs,          07-CV-10382 (LAP/MHD)

v.

THE FINISH LINE, INC., and
GENESCO INC.,

                Defendants.

---

## GENESCO'S RESPONSE TO THE COURT'S FEBRUARY 13, 2007 ORDER REGARDING JUSTICIABILITY OF FINISH LINE'S COUNTS IV AND V

BASS, BERRY & SIMS, PLC
Overton Thompson III (*pro hac vice*)
Britt Latham (*pro hac vice*)
Bryan Larson (*pro hac vice*)
315 Deaderick Street
Suite 2700
Nashville, TN 37238
Tel: (615) 742-7730
Fax: (615) 742-2804

BOIES, SCHILLER & FLEXNER LLP
James P. Denvir (*pro hac vice*)
Michael A. Brille (*pro hac vice*)
William C. Jackson
Jonathan M. Shaw (*pro hac vice*)

5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel:(202) 237-2727
Fax: (202) 237-6131

Adam R. Shaw (AS-7671)
575 Lexington Avenue
7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendant Genesco, Inc.*

The Court asked the parties to "brief the issue of whether the issues presented in [Finish Line] counterclaims IV and V are presently justiciable." February 13, 2007 Order, at 2. The Court correctly noted that, "[a]s it stands, Genesco and The Finish Line have not negotiated an amendment to the Acquisition Agreement, and thus, UBS has neither given nor withheld its consent to such an amendment." *Id.* Genesco's view is that, given UBS's stated position that, to escape its funding obligations entirely, it will not consent to *any* modification of the Merger Agreement because *every* modification would be "adverse" to UBS, both counts are justiciable so long as the Court abstains from deciding the issues raised in the paragraphs of those counts that intrude on the Tennessee Court's exclusive jurisdiction over the Merger Agreement.

As Genesco argued in its Motion to Dismiss or Abstain, all issues under the Merger Agreement are not properly before this Court. Nevertheless, Genesco and Finish Line, the only parties to the Merger Agreement, certainly have *the right* to renegotiate the merger price and effect a corresponding amendment the Merger Agreement, if they so desire. Accordingly, Genesco's position is that, even if the Court abstains (as it should) from deciding the issues under the Merger Agreement improperly raised by Finish line, Counts IV and V are justiciable to the extent they seek declarations regarding the terminability of the Commitment Letter – declarations that would be helpful to the parties and would "define the legal relationships and adjust the attendant rights and obligations at issue between the parties so as to avoid the dispute escalating into additional wrongful conduct." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002); *aff'd*, 346 F.3d 357 (2d Cir. 2003).[1]

## ARGUMENT

Finish Line agreed to purchase all Genesco shares for $54.50 per share. Finish Line's

---

[1] As Genesco argues in its Motion to Dismiss or Abstain, Finish Line's Count V should be dismissed for the separate reason that it seeks a declaration regarding the severability clause and a renegotiation of the price at which the combined entity would be solvent. Genesco Memorandum in support of Motion to Dismiss or Abstain, p. 6. The severability clause and price term are issues "arising out of or relating to" the Merger Agreement and are thus before the Tennessee Court. Merger Agreement § 9.8.

1

obligation to do so is not conditioned on the sources of money Finish Line uses to pay for those shares. In fact, the Merger Agreement expressly states that "[f]or the avoidance of doubt, it shall not be a condition to Closing for [Finish Line] to obtain the Financing [under the Commitment Letter from UBS] or any alternative financing." Merger Agreement § 4.6.[2] Thus, under the Merger Agreement, Finish Line could pay $54.50 per share using borrowed money, cash generated by issuing new equity or selling assets, or funds from any other source or combination of sources.

UBS, who acted as both Finish Line's financial advisor and lender in the transaction, committed to lend Finish Line the money to acquire Genesco. UBS agreed to lend Finish Line "up to" $1.84 billion through different tranches: a Revolving Credit Facility of "up to" $450 million, a Term Loan Facility of "up to" $690 million, and either Notes or a Bridge Loan of "up to" $700 million. Commitment Letter, pp. 1-2. The total debt available under the Commitment Letter is significantly higher than the $1.5 billion amount that UBS identifies as being needed for the transaction, assuming Finish Line pays $11 million of its own cash. UBS Amended Complaint ¶ 2. If Finish Line chooses to fund the transaction with alternative sources of cash (*e.g.*, from an equity infusion or any other source), it could borrow even less from UBS.

I.  **This Court Should Limit Finish Line's Count IV and V To Issues Under The Commitment Letter.**

Count IV seeks a declaration "that UBS's obligations under the Commitment Letter do not terminate if the Combined Entity is insolvent at $54.50 per Genesco share." Finish Line Count IV. And Finish Line's Count V seeks a declaration "that, if the Combined Entity would be insolvent at a price of $54.50 per Genesco share, UBS may not terminate is [*sic*] obligations under the Commitment Letter while Genesco and Finish Line negotiate a purchase price at which

---

[2] Genesco identifies this provision merely for background purposes. As explained in Genesco's Motion to Dismiss or Abstain, the Merger Agreement has an exclusive jurisdiction provision requiring that all disputes "arising out of or relating to" that agreement be litigated in Tennessee.

the Merger Agreement would be enforceable." Finish Line Count V. As written, these counts seek declarations that are beside the point. Whatever the price per share, if Finish Line paid it entirely with non-borrowed cash – whether raised by issuing new equity or otherwise – the merged entity ("Combined Entity") would be solvent. Solvency does not depend on how much Finish Line pays for Genesco's shares – it depends on how much Finish Line borrows to purchase those shares, and whether the Combined Entity is able to meet the resulting interest payment obligations to UBS. The more Finish Line borrows, the greater the debt level of the Combined Entity, which is a factor to consider in assessing the solvency of the Combined Entity, although Genesco believes that the Combined Entity will be solvent even if Finish Line borrows the entire purchase price.

This Court can decide the properly justiciable issues under the Commitment Letter that are contained within Finish Line Counts IV and V – namely, issues regarding the terminability of the Commitment Letter – while still avoiding any decision on issues under the Merger Agreement that are not properly before this Court. Ignoring the intervening paragraphs that identify Finish Line's legal argument, *see* Finish Line Counterclaim ¶¶ 36-39, 42-45, Counts IV and V, at bottom, involve the circumstances under which UBS may terminate the Commitment Letter. *See* Finish Line Count IV (seeking declaration "that UBS's obligations under the Commitment Letter do not terminate" in certain circumstances); Count V (seeking declaration that "UBS may not terminate is [*sic*.] obligations under the Commitment Letter" during a certain period). If the Court were to limit these Counts to a declaration regarding the terminability of the Commitment Letter, the resulting declaration would be both consistent with the Merger Agreement's exclusive forum selection clause and helpful to the parties in understanding their rights and obligations under the Commitment Letter.[^]

---

[^] Second Circuit law is settled that such provisions "will be enforced." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.*, 22 F.3d 51, 53 (2d Cir. 1994).

3

## II. Assuming They Are Limited To Issues Under the Commitment Letter, Finish Line Counts IV and V Present Justiciable Claims.

The purpose of a declaratory judgment action is to "create[] a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986). The contingent nature of the right or obligation in issue does not itself preclude declaratory relief. The issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) (test is whether under the facts and circumstances substantial controversy exists between the parties having adverse legal interests).

If Counts IV and V are limited to a declaration regarding the terminability of the Commitment Letter, that dispute would meet *Maryland Casualty*'s test of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *Maryland Cas. Co.*, 312 U.S. at 273; *see also E.R. Squibb & Sons, Inc. v. Lloyd's & Co.s*, 241 F.3d 154, 177 (2d Cir. 2001) ("Like any other action brought in federal court, a declaratory judgment is available to resolve a real question of conflicting legal interests."). UBS and Finish Line disagree as to the circumstances under which UBS may terminate the Commitment Letter. Finish Line's position, as described in the headings of Count IV and V, is that UBS may not terminate its obligations under the Commitment Letter. *See* Finish Line Count VI, V. UBS, on the other hand, obviously would like to terminate the Commitment Letter because UBS is "exposed to risk of substantial losses" as a result of the "credit crunch" and "would be forced to syndicate the debt [it issued] at a value well below par." UBS Memorandum in Support of its

4

Motion to Dismiss, pp. 5-6.[3] A declaration regarding the circumstances under which UBS may terminate its obligations under the Commitment Letter is "of direct and immediate impact and . . . is sufficiently likely to occur, so as to render the issue appropriate for judicial review." *Dow Jones*, 237 F. Supp. 2d at 407. As such, it would fall within the routine type of declaratory judgment action "where one party to an agreement seeks a determination of the respective rights and liabilities under the contract terms. In those cases, declaratory relief is appropriate without requiring the parties to commit a breach or sustain damages." *Lundquist v. Sec. Pac. Automotive Fin. Serv. Corp.*, No. 5:91-cv-00754 (TFGD), 1992 WL 475651, at *6 (D. Conn. June 9, 1992)

## CONCLUSION

Stripped of the requests for declarations involving the Merger Agreement, Counts IV and V present justiciable claims because they seek to resolve the dispute between Finish Line and UBS regarding the terminability of the Commitment Letter.

Respectfully Submitted,

February 15, 2008

BOIES, SCHILLER & FLEXNER LLP

By: _____
James P. Denvir (*pro hac vice*)
Michael A. Brille (*pro hac vice*)
William C. Jackson
Jonathan M. Shaw (*pro hac vice*)
5301 Wisconsin Avenue, N.W.
Suite 800
Washington, D.C. 20015
Tel: (202) 237-2727
Fax: (202) 237-6131

---

[3] UBS first sought to put a halt to the merger alleging that Genesco had suffered a Material Adverse Effect. The Tennessee Court rejected that claim. UBS next alleged that it had been defrauded by Genesco. The Tennessee Court rejected that claim too, holding that any fault regarding that issue lay with UBS. UBS now alleges that the Combined Entity would not be able to pay their debts when due. The fact that UBS also now seeks to escape its funding obligations by alleging that a reduction in its funding obligation would be "adverse" to it under the provision quoted in the Court's February 13 Order makes clear that UBS is not acting reasonably or in good faith.

Adam R. Shaw (AS-7671)
575 Lexington Avenue
7th Floor
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

BASS, BERRY & SIMS, PLC
Overton Thompson III (*pro hac vice*)
Britt Latham (*pro hac vice*)
Bryan Larson (*pro hac vice*)
315 Deaderick Street
Suite 2700
Nashville, TN 37238
Tel: (615) 742-7730
Fax: (615) 742-2804

*Attorneys for Defendant Genesco Inc.*