UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS SECURITIES LLC, and<br>UBS LOAN FINANCE LLC,<br><br>       Plaintiffs/Counter-Defendants<br><br>v.<br><br>THE FINISH LINE, INC.,<br><br>       Defendant/Counter-Plaintiff<br><br>and<br><br>GENESCO INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 07 Civ. 10382 (LAP)<br><br>Judge Loretta A. Preska |

**DEFENDANT AND COUNTER-PLAINTIFF THE FINISH LINE, INC.'S RESPONSE
TO COURT'S REQUEST FOR A BRIEF
IN SUPPORT OF JURISDICTION OVER COUNTERCLAIMS IV AND V**

*Redacted Version—Original To Be Filed Under Seal Upon Court Order*

Dewey & LeBoeuf LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

Dewey & LeBoeuf LLP
Alan N. Salpeter (*pro hac vice*)
Vincent P. Schmeltz III (*pro hac vice*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL 60601-6710
Tel: 312-794-8000
Fax: 312-794-8100

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 3

    A.    Counterclaims IV and V present cases of "actual controversy." ............................ 4

    B.    Exercising jurisdiction over Counterclaims IV and V will clarify and settle the parties' legal rights and duties arising under the Commitment Letter. .............. 7

    C.    Exercising jurisdiction over Counterclaims IV and V will provide relief from the uncertainty and insecurity caused by UBS's threatened termination of the Commitment Letter. ........................................................................ 8

    D.    The Court should not abstain from hearing Counterclaims IV and V. ................... 9

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTORITIES

Page

**CASES**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) .............................. 1

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ........................................................ 9

*Cont'l Casualty Co. v. Coastal Savs. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) ........................... 3, 9

*Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269,
   *17 (S.D.N.Y. March 30, 2007) ............................................................................................ 3, 4, 8

*Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) ...................... 6

*Lynchburg Foundry Co. v. United Steel Workers of Am. AFL-CIO*, 409
   F. Supp. 773, 775 (W.D. Va. 1976) .............................................................................................. 7

*MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) .................................................. 4

*Troiano v. Mardovich*, 2006 WL 2320517 (S.D.N.Y. Aug. 10, 2006) ............................................ 9

*Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835,
   839 (5th Cir. 2003) ..................................................................................................................6-7

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) ................................................................9-10

**STATUTES**

28 U.S.C. § 2201(a) ......................................................................................................................... 3

**MISCELLANEOUS**

Federal Practice and Procedure § 2757 (3rd ed. 1998) .................................................................... 1

Defendant/Counter-Plaintiff The Finish Line, Inc. ("Finish Line") submits this memorandum in response to the Court's February 13, 2008 Order requesting the parties to brief the issue of whether Counts IV and V of Finish Line's Counterclaims are "presently justiciable." These claims are ripe and, therefore, Finish Line requests that the Court exercise jurisdiction over them pursuant to the Declaratory Judgment Act.

## INTRODUCTION

Courts routinely exercise jurisdiction over cases like this, where Finish Line seeks a determination of the parties' rights and obligations under a contract. Indeed, for over 70 years, the United States Supreme Court has held that the federal courts may declare judgment as to parties' contractual rights.[1] Such cases are ripe for adjudication, even though liability for breach of the contract may depend on future events. For instance, courts frequently declare judgment as to an insurer's duty to indemnify where future events—such as dismissal of a suit against the insured or a finding of no liability—may affect the insurer's actual duty to indemnify.[2] Thus, this case is not unique. Rather, Counterclaims IV and V seek the routine relief of declaring the parties' rights and obligations under the "Commitment Letter"[3] between Finish Line and Plaintiffs/Counter-Defendants UBS Loan Finance LLC and UBS Securities LLC (together, "UBS"). In fact,

---

[1] *See, e.g., Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) (holding that a dispute relating to "legal rights and obligations arising from the contracts" was "definite and concrete, not hypothetical or abstract.").

[2] *See* 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2757 (3rd ed. 1998) ("It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real.").

[3] "Commitment Letter" shall refer to a certain Bank and Bridge Facilities Commitment Letter by and among UBS and Finish Line, dated June 17, 2007, attached as Exhibit B to the Complaint. All capitalized terms regarding the Commitment Letter shall have the same meaning here as they do in the Commitment Letter.

1

although both UBS and Defendant Genesco, Inc. ("Genesco") moved to dismiss these claims at least in part, neither argued lack of jurisdiction.[4]

UBS likely did not move to dismiss Counts IV and V for lack of jurisdiction because those claims and UBS's claims are two sides of the same coin. Both ask the Court to decide their rights and obligations if the Court determines that the "Combined Entity" is insolvent at a price of $54.50 per Genesco share. If the Court finds insolvency, UBS wants to walk away from the Commitment Letter immediately. In contrast, Finish Line says UBS must wait at least until the time comes for the merger to close before trying to terminate because, until then, no condition permits UBS to walk away from the deal. Thus, Finish Line's Counterclaims are as ripe as UBS's Amended Complaint.

The Court has suggested that Counts IV and V are contingent upon an amendment to the Merger Agreement; however Count IV is in no way contingent upon such an amendment. Further, neither Count IV nor V is speculative because UBS has indicated its unequivocal intent to reject *any* change to the Merger Agreement price, whatever it is.

The Court should hear these claims for three reasons. **First**, they present an actual controversy between adverse parties. **Second**, resolving that controversy would clarify and settle the parties' contractual rights and responsibilities. **Third**, addressing Counts IV and V would resolve existing uncertainty, insecurity and controversy. Congress enacted the Declaratory Judgment Act so that parties facing imminent but not

---

[4] UBS moved to dismiss Counts IV and V for failure to state a claim under Rule 12(b)(6) only. Genesco asked the Court to abstain from exercising jurisdiction under the *Brillhart* factors given the pending litigation in Tennessee, but did not argue that the Court lacked jurisdiction. In fact, Genesco's Response to UBS's motion to dismiss expressly states that "Finish Line's Count IV need not be dismissed . . . ." (Genesco's Memo. Of Law Opp. UBS's Mot. Dis., at 5, n. 3.)

yet completed harms need not guess, to their peril, at their rights and duties.[5] Finish Line's Counterclaims thus present a paradigmatic case for declaratory relief.

Furthermore, the Court should not abstain from hearing the Counterclaims because they are not being litigated elsewhere.

## ARGUMENT

Counterclaims IV and V ask the Court merely to preserve the status quo between UBS and Finish Line should the Court find that the Combined Entity will be insolvent at a merger price of $54.50 per share. No provision or condition in the Commitment Letter permits UBS to terminate the contract upon such a finding, and the Court should decline UBS's invitation to invent one. Rather, the Court should entertain Counterclaims IV and V, which will give Finish Line and Genesco breathing room to negotiate a new price.

The Declaratory Judgment Act grants the Court discretion to hear Counterclaims IV and V because each presents a "case of actual controversy." 28 U.S.C. § 2201(a). In fact, the Court "must" entertain these Counterclaims because they both (i) "serve a useful purpose in clarifying and settling the legal relations in issue" and (ii) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Casualty Co. v. Coastal Savs. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.

---

[5] *See* S.Rep. No. 1005, 73d Cong., 2d Sess., 2-3, 6 (1934) (declaratory judgments "ha [ve] been especially useful in avoiding the necessity ... of having to act at one's peril ... or abandon one's rights because of a fear of incurring damages.").

[6] The Court may consider affidavits when it decides subject matter jurisdiction. *See Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269, *5 (S.D.N.Y. March 30, 2007) (Preska, J.).

1969)). "[F]ailure to do so is error." *Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269, *17 (S.D.N.Y. March 30, 2007) (Preska, J.).

### A. Counterclaims IV and V present cases of "actual controversy."

The Supreme Court has no bright-line test for determining whether an actual controversy exists. *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007). "Basically, the question . . . is whether the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" *Id.* (holding district court properly exercised jurisdiction over declaratory judgment action where plaintiff "has alleged a contractual dispute") (internal quotation omitted). Counterclaims IV and V surpass these threshold requirements.

**First**, they present a "substantial controversy" regarding UBS's duty to perform a $1.5 billion funding obligation under the Commitment Letter. UBS has taken the unequivocal position that it can walk away from the deal if and as soon as the Court finds the Combined Entity would be insolvent at $54.50 per Genesco share. Finish Line contends that UBS cannot do so while it tries to negotiate a new price with Genesco.

Thus, the controversy is real and substantial.

**Second**, the claims are among parties with adverse legal interests. A side-by-side comparison of UBS's Amended Complaint and Finish Line's Counterclaims shows that they are mirror images of one another. UBS seeks a declaratory judgment that the

4

Commitment Letter will be void or voidable immediately upon an insolvency finding, whereas Finish Line contends that UBS cannot escape its funding obligations upon such a finding.[7] The fact that UBS is trying to void its funding obligation while Finish Line is trying to enforce it shows that the parties are diametrically adverse.

**Third**, the Counterclaims are of "sufficient immediacy" as to warrant relief. The Court has agreed to resolve the insolvency question upon an expedited schedule at a trial set to start in a matter of weeks. Thus, UBS's threat to terminate is both real and imminent—not hypothetical or academic. Moreover, given the Tennessee court's order requiring Finish Line to use its best efforts to obtain financing, UBS's promised termination will cause Finish Line substantial harm given the current credit environment. It will be no easier for Finish Line to find a new lender than for UBS to syndicate the existing Commitment Letter, which UBS has said will be nearly impossible. (UBS Mot. Dis. at 6.) If permitted, UBS's immediate termination may expose Finish Line to contempt proceedings for failure to comply with the Tennessee order and other damages.

The Court has noted that Genesco and Finish Line "have not negotiated an amendment to the [Merger] Agreement, and thus, UBS has neither given nor withheld its consent to such an amendment." (Feb. 13, 2008 Order at 2.) This fact does not change the above analysis. Indeed, Count IV does not turn on this fact at all because it seeks merely a declaration that UBS cannot immediately terminate the Commitment Letter upon a finding of insolvency—regardless of whether Genesco and Finish Line negotiate a new price. Moreover, UBS has stated **unequivocally** that it will oppose "*any* such new agreement," even if the price is reduced thereby reducing UBS's exposure on the loan.

---

[7] *See* Amended Complt. ¶¶ 42-43 (requesting declaratory judgment that contract is "void or voidable" because Combined Entity "will be insolvent.").

(UBS Reply re Mot. Dis. at 1.) Thus, UBS's rejection of a new price is not a contingent act, but one that has already occurred.

Even if UBS's rejection of a new price term could be construed as a contingent fact (and it is not), it would not deprive this Court of jurisdiction. *See Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) (affirming declaratory judgment that plaintiff was not liable to defendant under securities laws even though defendant promised not to sue; the mere possibility that the defendant "could" do so warranted relief). That is because "the very nature of relief in a declaratory context is *ex ante*." *Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835, 839 (5th Cir. 2003). It affords "plaintiff equitable relief when legal relief is not yet available to him so as to avoid inequities which might result from a delay in assessing the parties' legal obligations." *Id.* at 839-40.

In *Venator*, a tenant sought a declaratory judgment that a lease requiring it to construct internal walls within a building at the landlord's request was impossible, impractical, and illegal. *Id.* at 837. The district court dismissed for lack of jurisdiction, reasoning that the case would not be ripe unless and until the landlord requested plaintiff to construct such walls. *Id.* at 839. The Fifth Circuit reversed, holding that the district court should have assessed "the likelihood that future events will occur" but should not have "require[d] those contingencies to have occurred at the time relief is sought." *Id.* at 840. Based on the landlord's past attempts to enforce similar contracts, the Fifth Circuit held the case was ripe because "the suspensive condition identified by the district court as

6

barring justiciability is significantly likely to occur . . . ." *Id.*[8] Here, the Court need not speculate as to the likelihood that UBS will reject a new price—UBS has stated its unequivocal intent to do so multiple times. Thus, the controversy is real and imminent.

    **B.**    **Exercising jurisdiction over Counterclaims IV and V will clarify and settle the parties' legal rights and duties arising under the Commitment Letter.**

Although a related case is currently pending in Tennessee regarding the enforceability of the Merger Agreement, that court expressly deferred to this Court on the question of insolvency. (Dec. 27, 2007 Ten. Ch. Ct. Op. at 42.) Furthermore, while the Tennessee court ordered Finish Line to use its "reasonable best efforts" to obtain financing, it did not order UBS to provide it. (*Id.* at 3.) That question was not before the Tennessee court. Rather, by UBS's Amended Complaint and Finish Line's contested Counterclaims, that issue is squarely before this Court. Indeed, Finish Line is contractually bound to bring such claims in this jurisdiction.[9]

If the Court dismisses Counterclaims IV and V (or VI for that matter), the parties will be left in limbo. UBS assuredly will—as it has told the Court many times—attempt to terminate the Commitment Letter immediately upon an insolvency determination. That will cause Finish Line to seek immediate judicial relief. The parties will be back to court again to determine the very issues now presented by Counterclaims IV and V. That is, can UBS immediately terminate the Commitment Letter? Addressing these issues now will resolve the entire dispute in a judicially economic manner.

---

[8] *See also Lynchburg Foundry Co. v. United Steel Workers of Am. AFL-CIO*, 409 F. Supp. 773, 775 (W.D. Va. 1976) (granting declaratory relief where parties differed "over the existence of the rights" under a collective bargaining agreement).

[9] *See* Am. Complt., Ex. B, Commitment Ltr. at 9 (requiring Finish Line to "submit to the exclusive jurisdiction of the federal and New York State courts [in] The City of New York.").

Furthermore, there is no rational basis on which to proceed with UBS's Amended Complaint, which seeks a declaration that the Commitment Letter is "void or voidable" upon an insolvency determination, but not with Finish Line's Counterclaims. If the Court denies UBS's requested relief (as it should), the parties will have to return to court again to rule on Finish Line's claims. If the Court grants UBS's requested relief without affording Finish Line an opportunity to be heard, the Court will effectively deny Finish Line its day in court. Even if a future court entertained Finish Line's counterclaims separately (which is doubtful given Rule 13's compulsory counterclaim provisions), separate suits would waste judicial and party resources, and create the potential for disparate results.

### C. Exercising jurisdiction over Counterclaims IV and V will provide relief from the uncertainty and insecurity caused by UBS's threatened termination of the Commitment Letter.

Given that a declaratory judgment on Counterclaims IV and V will clarify and settle the parties' rights under the Commitment Letter, Finish Line need not show that such relief will also relieve uncertainty and insecurity—but it can. *Kensington Int'l Ltd.*, 2007 WL 1032269 at * 18 (exercising jurisdiction over claim that met "one if not both of the objectives of declaratory relief").

UBS's imminent threat to terminate is causing considerable uncertainty and insecurity.

Finish Line does not know if it will have to try to find alternate funding for the merger.

8

In turn, Genesco does not know whether it should look for another merger partner. And UBS does not know whether it will have to reserve money to fund the obligation. A declaratory judgment will resolve all of these unknowns.

### D. The Court should not abstain from hearing Counterclaims IV and V.

The Second Circuit deems it "well settled" that "the mere pendency of another action involving the same set of facts does not in and of itself preclude the existence of the declaratory jurisdiction." *Cont'l Casualty Co.*, 977 F.2d at 737 (internal quotation omitted); *see also id.* at 738 (holding that federal court need not "decline to entertain a declaratory judgment action because a declaratory remedy may exist in the state court."). That is particularly true where, as here, the state court litigation raises different legal and factual issues. *Id.* at 737.

Genesco has moved the Court to abstain from hearing Count IV in part and all of Count V, relying largely on the *Brillhart* abstention doctrine[10] and *Troiano v. Mardovich*, 2006 WL 2320517 (S.D.N.Y. Aug. 10, 2006) (Preska, J.). But neither the *Brillhart* abstention doctrine nor *Troiano* merit the result Genesco requests.

The Court should not abstain first and foremost because the Tennessee litigation involves different claims under a different contract. It deals only with the separate Merger Agreement. Finish Line did not assert its Counterclaims in the Tennessee litigation and, in fact, is contractually bound to bring them in this Court. Thus, the Tennessee court has not and will not address the parties' rights under the Commitment Letter. Accordingly, there is no risk of inconsistent factual findings or legal holdings, and *Brillhart* has no application here whatsoever. *See Wilton v. Seven Falls Co.*, 515

---

[10] *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

U.S. 277, 283 (1995) (suggesting that district courts defer to parallel state court proceeding only where it presents "the same state law issues" as the federal case).

*Troiano* is inapposite as well. In that case, this Court declined to exercise jurisdiction over a fact pattern better suited to state courts—a best interest of the children analysis. Here, however, the Court is asked to resolve contract questions under New York law—the forum in which it sits. This Court is as well-suited, if not better, to address New York contract claims as the Tennesee state court.

## CONCLUSION

For all the foregoing reasons, Finish Line respectfully requests that the Court exercise jurisdiction over Counts IV and V.

Respectfully submitted,

THE FINISH LINE, INC.

By: ___s/ Harvey Kurzweil___

Dewey & LeBoeuf LLP
Harvey Kurzweil
1301 Avenue of the Americas
New York, NY 10019-6092
Tel: (212) 259-8000
Fax: (212) 259-6333

Dewey & LeBoeuf LLP
Alan N. Salpeter (*pro hac vice*)
Vincent P. Schmeltz III (*pro hac vice*)
Two Prudential Plaza
180 North Stetson Ave, Suite 3700
Chicago, IL 60601-6710
Tel: 312-794-8000
Fax: 312-794-8100

*Attorneys for The Finish Line, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing *Defendant and Counter-Plaintiff The Finish Line, Inc.'s Response to Court's Request For a Brief In Support of Jurisdiction over Counterclaims IV and V* was served by Electronic mail on this 15th day of February 2008 upon the following individuals:

| | |
|---|---|
| Joseph John Frank<br>Alexandra A.E. Shapiro<br>Latham & Watkins LLP<br>885 Third Avenue, Suite 1000<br>New York, NY 10022 | joseph.frank@lw.com<br>alexandra.shapiro@lw.com |
| J. Christian Word<br>Latham & Watkins LLP<br>555 Eleventh Street, N.W.<br>Washington, D.C. 20004 | christian.word@lw.com |

| | |
|---|---|
| David R. Boyd<br>Jonathan D. Schiller<br>Boies, Schiller & Flexner LLP<br>575 Lexington Avenue<br>New York, NY 10022 | dboyd@bsfllp.com<br>jschiller@bsfllp.com |
| Adam Reese Shaw<br>Boies, Schiller & Flexner LLP<br>10 North Pearl Street, 4th Floor<br>Albany, NY 12207 | ashaw@bsfllp.com |
| Michael Brille<br>James P. Denvir, III<br>Jonathan Shaw<br>Boies, Schiller & Flexner LLP<br>5301 Wisconsin Avenue, N.W.<br>Washington D.C. 20015 | mbrille@bsfllp.com<br>jdenvir@bsfllp.com<br>jshaw@bsfllp.com |

| | |
|---|---|
| Overton Thompson, III<br>Bryan E. Larson<br>Britt King Latham<br>W. Brantley Phillips, Jr.<br>Paul G. Jennings<br>Bass, Berry & Sims PLC<br>315 Deaderick Street, Suite 2700<br>Nashville, TN 37238 | othompson@bassberry.com<br>blarson@bassberry.com<br>blatham@bassberry.com<br>bphillips@bassberry.com<br>pjennings@bassberry.com |

*/s/ Jennifer Opheim Whitener*